UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

MITSUI SUMITOMO INSURANCE CO. LTD.    :    ECF CASE

                       Plaintiff,    :    07 Civ. 3874 (CM)

       - against -    :    Judge McMahon

EVERGREEN MARINE CORPORATION;    :
UNION PACIFIC RAILROAD COMPANY;
                          :
             Defendants.

------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR
## PARTIAL SUMMARY JUDGMENT

**Law Office**
**DAVID L. MAZAROLI**
**11 Park Place – Suite 1214**
**New York, NY 10007**
**Tel. 212-267-8480**
**Fax: 212-732-7352**
**e-mail: dlm@mazarolilaw.com**

**Table of Contents**

Table of Authorities………………………….………………………………………i

Preliminary Statement…………………………………………………………….1

Summary of Argument…………………………………………………………1

The Relevant Facts………………………………………...…………………..2

Points and Authorities:

      Point I:      The Carmack Amendment, a rail carriage statute,
                    governs defendants' liability for this rail carriage loss…...………4

      Point II:     Carmack applies to UP and the multimodal carrier Evergreen,
                    who provided railroad transportation for compensation..………..5

      Point III:    Because defendants failed to comply with conditions
                    precedent for limitation, they are accountable for
                    the full amount of plaintiff's damages……………..……….……..6

      Point IV:    *Sompo* is binding precedent:  (a) the *Kirby* uniformity
                    issues were addressed by the Second Circuit;
                    (b) *Regal-Beloit* is inapposite…………...………………………....10

      Point V:     Liability having been admitted by UP,
                    plaintiff is entitled to judgment as a matter of law……………....12

      Point VI:    The rule of *contra proferentum* provides
                    an alternative basis for full recovery by plaintiff……….…….…13

Conclusion…………………………………….………………………………14

Addendum:

*Sompo Japan Insurance of America v. Union Pacific Railroad Co.,*
No. 02 Civ. 9523(DAB)(SDNY Sept. 26, 2007)

# Table of Cases

**Cases:**                                                                                         **Page**

*Allied Chemical v. C.N. Lloyd Brasiliero*,  775 F.2d 476 (2d Cir. 1985)....................7

*Asahi America, Inc. v. M/V Arild Maersk*,  602 F.Supp. 25 (S.D.N.Y. 1985)...............6

*Canon USA, Inc. v. Nippon Liner Sys., Ltd.,* 1992 WL 82509 (N.D.Ill.1992)..........…..6

*Carmana Designs Ltd. v. North American Van Lines Inc.,*
943 F.2d 316 (3 Cir. 1991)……………………………………………………..7

*Francosteel Corp. v. M/V Pal Marinos*, 885 F.Supp. 86 (S.D.N.Y. 1995)…………..…13

*Hartford v. M/V OOCL Bravery*, 230 F.3d 549 (2d Cir. 2000)………………………10

*Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9 (2 Cir. 1986)…………………………….…13

*Kyodo U.S.A., Inc. v. Cosco North America Inc.,*
2001 WL 1835158 (C.D. Cal. Jan. 17, 2001)……………………………………..6

*Mississippi Valley Barge Line Co. v. United States,*
 285 F.2d 381 (8th Cir.1960)……………………………………………………...6

*Neptune Orient Lines, Ltd. v. Burlington N. & Santa Fe Ry. Co.,*
 213 F.3d 1118 (9th Cir. 2000) ...........................................................................…..4

*Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14,
125 S.Ct. 385, 160 L.Ed.2d 283 (2004)..................................................................10

*Project Hope v. M/V IBN SINA,* 250 F.3d 67(2d Cir. 2001)………………………….6

*Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.,*
462 F. Supp. 2d 1098 (C.D. Cal. 2006)(appeal filed Dec. 12, 2006)……………………11

*Rexroth Hydraudyne B.V. Ocean World Lines, Inc.,*
 2007 WL 541958 (S.D.N.Y. Feb. 14, 2007)……………………………………..……6

*Rupp v. International Terminal Operating Co*.,
479 F. 2d 674 (2d Cir. 1973)…………..………………………………………….7

*Schoenmann Produce Co. v. Burlington Northern and Santa Fe Ry. Co.,*
420 F.Supp.2d 757 (S.D.Tex. 2006)………………………………………..………...12

*Sompo Japan Ins. Co. of America v. Union  Pacific R. Co.,*
456 F.3d 54 (2 Cir. 2006)……………………………………………….……*passim*

*Sompo Japan Insurance of America v. Union Pacific Railroad Co.,*
02-9523(DAB)(SDNY Sept. 26, 2007)(appeal filed)
(copy in addendum)………………………….…………….…………………..2,7

*Sompo Japan Insurance Co. of America v. Union Pacific Railroad Co.,*
*No. 03-1604(CM),*  2007 WL 2230091(S.D.N.Y. Aug. 2, 2007)
(McMahon, J)(appeal filed)………………………………………...………..1,7,9

*Swift Textiles, Inc. v. Watkins Motor Lines, Inc.,*
799 F.2d 697 (11th Cir. 1986). …………………………………….…….…..4

*Tai Ping Insurance Co. v. Northwest Airlines, Inc.,*
94 F. 3d 29 (2d Cir. 1996)………………………………………...………….8

*Tamini Transformatori S.R.I.  v. Union Pacific Railroad,*
 2003 WL 135722  (S.D.N.Y. Jan. 17, 2003)……………………………….……8, 12

*The Starsin*, 2003 AMC 91,
976 (Eng. H.L. 2003), [2003] 2 WLR 711 (HL)………………………….....………6

*Toyomenka v. S/S TOSHARU MARU*, 523 F.2d 518 (2d Cir. 1975)…………….………7

*U.S. v. Santos*, 1996 WL 617329 (S.D.N.Y. Oct. 25, 1996)………………….………11

**Statutes:**

Carmack Amendment to the Interstate Commerce Act of 1887,
Act of June 29, 1906, ch. 3591, 34 Stat. 584 (1906)
(current version at49 U.S.C. § 11706)………………………………….……..*passim*

Staggers Rail Act of 1980,
Pub.L. No. 96-448, 94 Stat. 1895 (codified at 49 U.S.C. §  11706)………..…….………8

United States Carriage of Goods by Sea Act, 46 U.S.C. §§ 30701 *et seq.*
(previously codified at 46 U.S.C. app. §§  1301-1315).................................………4

**Preliminary Statement**

This partial summary judgment motion follows the footprint of the Honorable Colleen McMahon's decision in *Sompo Japan Insurance Co. of America v. Union Pacific Railroad Co.*,  No. 03-1604(CM*),* 2007 WL 2230091(S.D.N.Y. August 2, 2007)(appeal filed).   Liability for the cargo damage in suit having been admitted, plaintiff Mitsui Sumitomo Insurance Co. Ltd. ("Mitsui") respectfully moves for an order pursuant to Rule 56 Fed. R. Civ. P.  holding that the Carmack Amendment[1] governs  defendants' liability; and striking and dismissing any defenses which seek to limit such liability. Also submitted with this memorandum of law is Plaintiff's Statement Pursuant to  Local Civil Rule 56.1,   the declarations of Chikara Yokoi ("Yokoi Decl.") and David Clifton ("Clifton Decl."), and the affidavit of David L. Mazaroli ("Maz. Aff.").   References herein to the transcript of the deposition of Daniel Hartmann, included in Maz. Aff. Ex. 11, are preceded by "Hartmann Dep."

**Summary of Argument**

In *Sompo Japan Insurance Co. of America v. Union Pacific Railroad Co.*, 456 F.3d 54 (2d Cir. 2006),    the Court of Appeals for the Second Circuit held that cargo damage arising during the domestic rail segment of intermodal carriage under a through bill of lading is governed by the Carmack Amendment. In the same case on remand, Judge McMahon held that Union Pacific Railroad Co.'s liability for cargo damage was unlimited. *See Sompo,*  2007 WL 2230091.  Shortly thereafter, in a case involving similar facts, the Second Circuit's rationale was applied by Judge Batts to hold the same railroad

---

[1] Carmack Amendment to the Interstate Commerce Act of 1887 ("Carmack"), Act of June 29, 1906, ch. 3591, 34 Stat. 584 (1906) (current version at 49 U.S.C. §  11706).

liable in full for cargo damage arising in intermodal rail carriage. *See Sompo Japan Insurance of America v. Union Pacific Railroad Co.,* 02-9523(DAB)(SDNY Sept. 26, 2007)(appeal filed)(not officially reported, copy included in addendum of this brief). Based on these  holdings, plaintiff respectfully submits that as a matter of law the liability herein of defendants Union Pacific Railroad Company ("UP") and Evergreen Marine Corporation ("Evergreen") is governed by Carmack and said liability is unlimited.

### The Relevant Facts[2]

In March 2006 Evergreen was hired to transport a 165-carton shipment of automotive motors and parts ("the shipment")  from Shimizu, Japan, to Statesville, North Carolina. (Clifton Decl. ¶¶ 8-9; Maz. Aff. Exs. 12, 15) Evergreen issued a through sea waybill which covered the entire transport from start to finish, including the ocean and land legs.  (Maz. Aff. Ex. 5 ¶ 22; Ex. 12; Ex. 11 ("Hartmann Dep.") pp. 57-58) Clifton Decl. Ex. 4)  Evergreen provided shipping containers TRIU5559381 and UGMU8062288 for the intermodal transport and carried the shipment loaded in said containers from Shimizu to Los Angeles, California, aboard one of its ocean vessels. (Maz. Aff. Ex. 1 ¶¶ 12, 14; Ex. 3 ¶¶ 12, 14) At Los Angeles the Shipment was transferred to  a UP train   for the rail segment of the intermodal transport. (Maz. Aff. Ex. 4 Admissions no. 3-4; Ex. 5 Admissions no. 3-4) Although the train consisted of UP cars and locomotive units, it was a "dedicated" Evergreen train, i.e.   loaded by Evergreen and carrying only Evergreen shipments. (Maz. Aff.  Ex. 11 (Hartmann Dep.) pp. 29-32 )

---

[2] The Court's attention is respectfully directed to plaintiff's Rule 56.1 statement which sets forth in detail the facts relevant to this motion.

UP formulated electronic waybills for the shipment. (Maz. Aff. Ex. 1 ¶ 15; Ex. 2 ¶ 15; Ex. 11 (Hartmann Dep.) pp. 50-52) However, these remained in electronic form and were not issued or otherwise transmitted to the shipper, consignee or owner of the cargo. (Maz. Aff. 11 (Hartmann Dep.) pp. 50-52)  Similarly, although Evergreen and UP claim to be parties to an Exempt Rail Transportation Agreement ("ERTA"), and rely in this litigation on a UP Master Intermodal Transportation Agreement ("MITA-2A"), the terms of those documents were not disclosed  to the actual shipper,  consignee or owner of the shipment prior to the rail transport. (Maz. Aff. Ex. 7 Admissions No. 3, 4, 7, 8; Ex. 8 Admission No. 47)   En route to North Carolina the UP  train derailed near Higginson, Arkansas, causing damage and loss to the shipment as well as other cargoes. (Maz. Aff. Ex. 11 (Hartmann Dep.) pp. 25, 28, 41-42; Maz. Aff. Ex. 4 Admissions No. 7, 8, 10, 11, 12)   As a result of the damage to the shipment plaintiff's subrogor,  Asmo North Carolina, Inc. ("Asmo-NC"), the FOB purchaser,  sustained damages in the amount of $385,105.70 based on the invoice value of the automotive motors and parts plus certain expenses. (Clifton Decl. ¶ 11; Yokoi Decl. ¶ 6 and Ex. 1 pp. 0104-0107) Mitsui paid Asmo-NC's insurance claim and commenced this action against Evergreen and UP. (Clifton Decl. ¶ 12, Ex. 5; Yokoi Decl. ¶ 7-8 and Exs. 2, 3; Maz. Aff. Ex. 1)  UP has admitted liability to plaintiff for the damage to the shipment caused by the  derailment. (Maz. Aff. Ex. 6 Admission No. 9; Ex. 7 Admission no. 9; Ex. 1¶ 18; Ex. 2 ¶ 18)  UP has also assumed the defense of Evergreen. (Maz. Aff. Ex. 10; see also docket entry no. 17 substitution of  counsel)

**Points and Authorities**

**POINT I**

**THE CARMACK AMENDMENT,
A RAIL CARRIAGE STATUTE,
GOVERNS DEFENDANTS' LIABILITY
FOR THIS RAIL CARRIAGE LOSS**

Like this case, *Sompo Japan Insurance Co. of America v. Union Pacific Railroad Co.*, 456 F.3d 54 (2d Cir. 2006), involved a cargo claim arising from a derailment during the domestic rail stage of intermodal carriage under a through bill of lading. In *Sompo* the through bill of lading stated that the land stage was governed by a salty water statute, i.e. the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §§ 30701 *et seq.* (previously codified at 46 U.S.C. app. §§ 1301-1315), which applies *ex proprio vigore* only from the time when cargo is loaded on the ship to the time when it is discharged from the ship. *See Sompo,* 456 F.3d at 58. The defendant in *Sompo* contended that its liability was limited to $500 per package under COGSA even though the loss occurred during interstate rail carriage.

In reversing the district court, the Second Circuit held that, even in the absence of a separate rail bill of lading, the domestic rail segment of a multimodal carriage originating in a foreign country is governed by Carmack. *See Sompo,* 456 F.3d at 69; *see also Neptune Orient Lines, Ltd. v. Burlington N. & Santa Fe Ry. Co.,* 213 F.3d 1118, 1119 (9th Cir.2000). In its well-reasoned decision the Second Circuit analyzed Carmack's history and the evolution of conflicting decisions in other circuits. The Second Circuit rejected the line of decisions which evolved from imprecise *dicta* in *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697 (11th Cir. 1986). *See Sompo,* 456 F. 3d at 61. *Sompo* makes clear that Carmack applies *ex proprio vigore* herein and

trumps the type of extended ocean carriage bill of lading terms which defendants rely on. *Sompo*, 456 F.3d at 6, 15, 57. For reasons stated herein, because Carmack's conditions precedent for limitation were not complied with, defendants should be held accountable for the full extent of plaintiff's damages without limitation.

### POINT II

### CARMACK APPLIES TO UP AND TO THE MULTIMODAL CARRIER, EVERGREEN, WHO PROVIDED RAILROAD TRANSPORTATION SERVICES FOR COMPENSATION

In addition to applying to UP, who owned the rail tracks and provided the locomotives and rail cars, Carmack also applies to the multimodal carrier Evergreen who issued the through waybill. Evergreen was at all material times an intermodal and multimodal carrier who wore many hats. (Maz. Aff. Ex. 11 (Hartmann Dep.) pp. 14-16; 31-32; 57-58; 61, 73-74; Maz. Aff. Exs. 12, 16, http://www.evergreen-marine.com/tbi1/html/CorporateProfile.pdf) For compensation it provided multiple forms of transportation services including carriage by water, rail and road. (*Id*.) For the train in question Evergreen provided the intermodal equipment and loaded the railcars. (Maz. Aff. Ex. 11 (Hartmann Dep.) pp. 29-32) UP's director of international intermodal business testified as follows:

| | |
|---|---|
| (Mazaroli) | Q. ….Union Pacific is in the business of providing transportation services for a profit; isn't that correct? |
| (Hartmann) | A. That's correct. |
| | Q. Okay. And Evergreen provides transportation services to its customers, including the services which Union Pacific performs during the rail stage of international intermodal shipments; is that correct? |
| | A. Yes. |

(Maz. Aff. Ex. 11 (Hartmann Dep.) p. 73, lines 23-25; p. 74, lines 1-8)

The Second Circuit has held that Carmack applies to an ocean carrier in analogous circumstances. See *Project Hope v. M/V IBN SINA,* 250 F.3d 67, 74-75 & n. 7 (2d Cir.2001) (NVOCC and trucker jointly and severally liable under Carmack). Other courts have reached the same conclusion. *See e.g. Kyodo U.S.A., Inc. v. Cosco North America Inc.,* 01 CV 00499, 2001 WL 1835158 at *4-6 (C.D. Cal. Jan. 17, 2001); *Canon USA, Inc. v. Nippon Liner Sys., Ltd.,* No. 90-C-7350, 1992 WL 82509 at *6-8 (N.D.Ill. 1992) (under Carmack "the receiving carrier is responsible for the shipment over the entire route.") (citing *Mississippi Valley Barge Line Co. v. United States,* 285 F.2d 381, 389 (8th Cir.1960)); *contra Rexroth Hydraudyne B.V. Ocean World Lines, Inc.,* No. 06 Civ. 5549(LAK), 2007 WL 541958 (S.D.N.Y. Feb. 14, 2007)(appeal filed); *see also Asahi America, Inc. v. M/V Arild Maersk*, 602 F.Supp. 25, 26 (S.D.N.Y. 1985)(liability of trucker is imputable to multimodal carrier principal). In the case at bar the overall evidentiary record supports a holding that Evergreen's liability is also governed by Carmack.

## POINT III

### BECAUSE DEFENDANTS FAILED TO COMPLY WITH CONDITIONS PRECEDENT FOR LIMITATION, THEY ARE LIABLE FOR THE FULL AMOUNT OF PLAINTIFF'S DAMAGES

Like bills of lading, waybills contain boilerplate fine-print terms and conditions which are not the subject of negotiation or amendment by the cargo owner; they are pre-printed terms which the cargo owner is required to accept; the wording is chosen by the issuer of the waybill. *See The Starsin*, 2003 AMC 913, 976 (Eng. H.L. 2003), [2003] 2

WLR 711 (HL);  *see also Allied Chemical v. C.N. Lloyd Brasiliero*,  775 F.2d 476,482 (2d Cir. 1985) ("[B]ills of lading are contracts of adhesion and…. are strictly construed against the carrier"). Where a carrier relies on bill of lading clauses in an effort to limit liability,  such  clauses are subject to strict rules of construction since the effect of limitation is to reduce the recovery of an innocent shipper whose goods have been lost or damaged through no fault of his own.  *See Toyomenka v. S/S TOSHARU MARU*, 523 F.2d 518, 520 (2d Cir. 1975).[3]  If the clauses relied on are unclear or ambiguous, they should be interpreted in favor of the cargo claimant and against the party who seeks to avoid responsibility for cargo loss or damage.  *See  e.g.  Rupp v. International Terminal Operating Co*., 479 F. 2d 674, 676-77 (2d Cir. 1973); *Carmana Designs Ltd. v. North American Van Lines Inc.,* 943 F.2d 316, 319   (3 Cir. 1991)(burden is on carrier to establish compliance with Carmack conditions precedent for limitation).

The Second Circuit held that the bill of lading in *Sompo* did not satisfy conditions precedent for limitation of liability under the Carmack Amendment and remanded the case for further proceedings. *See Sompo*, 456 F.3d at 76.  On remand this Court found that the multimodal bill of lading did not comply with Carmack Amendment requirements for limitation and held the defendant fully accountable for the cargo damage. *See Sompo Japan Ins. Co. v. Union Pacific R. Co.,* 03 CV 1604(CM), 2007 WL 2230091  (S.D.N.Y., August 2, 2007).   A similar ruling was issued by Judge Batts in an unrelated case involving an analogous fact pattern.  *See  Sompo Japan Ins. Co. v. Union Pacific R. Co.,* No.  02CV9523(DAB) (S.D.N.Y. Sept. 26, 2007)(copy in addendum).

The situation is the same herein. The Evergreen waybill has a clause paramount

---

[3]  UP has not specifically pleaded COGSA affirmative defenses. (Maz. Aff. Ex.  2).

and a period of responsibility clause. (Maz Aff. Ex. 13 ¶ 5) In addition it has a Himalaya

Clause extending to subcontractors the limitations and exemptions of the through waybill.

(Maz. Aff. Ex. 13 ¶ 4(2)) *See Sompo*, 456 F.3d at 56-57.    Although such provisions

arguably comply with the prerequisites for limitation under COGSA, if that  statute

applied,  the Evergreen waybill does not satisfy the Carmack conditions precedent for

limitation of liability.  *See Sompo*, 456 F. 3d at 76.

        The Second Circuit's decision makes clear that to qualify for limitation, a

common carrier providing rail  services must  offer the  shipper an opportunity, consistent

with the Staggers Act, *see* 49 U.S.C. § §  10502(e);  11706(a), (c)(3), to receive full

Carmack liability coverage. *See Sompo* 456 F.3d at 75; *see also Tamini Transformatori

S.R.I.  v. Union Pacific Railroad,* 02 Civ. 129(AGS), 2003 WL 135722  *4 (S.D.N.Y.

Jan. 17, 2003). Neither UP nor Evergreen have complied with this condition precedent.

There is no language in the Evergreen sea waybill which specifically mentions Carmack.

There is no term or provision in the sea waybill offering the cargo shipper  full Carmack

coverage.  Accordingly, limitation is precluded in this case.

        The Court should reject any argument by defendants that the ERTA and MITA-

2A are applicable to plaintiff's claim. UP and Evergreen have admitted that the terms of

ERTA and MITA-2A were not disclosed to cargo interests.  (Maz. Aff. Ex. 7 Admissions

No. 3, 4, 7, 8; Ex. 8 Admission No. 47)  There is no valid incorporation of ERTA and

MITA-2A into the Evergreen waybill.  *See  Tamini Trasformatori S.R.L. v.  Union

Pacific Railroad*, 2003 WL 135722 at *5 (holding that non-Carmack terms were

inapplicable where exempt circular is not mentioned in carrier's waybill);     *Tai Ping

Insurance Co. v. Northwest Airlines, Inc.,* 94 F. 3d 29, 32-33 (2d Cir. 1996) (discussing

invalidity of imprecise incorporation by reference).

Finally, even assuming *arguendo* that MITA-2A applies to plaintiff, its terms in any event do not comply with the mandatory conditions precedent for limitation of liability under Carmack. There is no dispute that the shipment in suit was a foreign shipment originating outside the United States. (Maz. Aff. Ex. 11 (Hartmann Dep.) pp. 32 and 66) UP's Mr. Hartmann admitted this during his deposition:

| | | |
|---|---|---|
| (Mazaroli) | Q. | The two shipments of auto parts that are the subject of this court case originated outside the borders of the United States; is that correct? |
| (Hartmann) | A. | That's correct. |

(Maz. Aff. Ex. 11 (Hartmann Dep.) p. 87 lines 22-25). While MITA-2A purports to offer Carmack coverage for "domestic shipments which originate in the United States," no such language is stated with respect to foreign shipments. (Maz. Aff. Ex. 14 p. 7022 MITA-2A, Item 310 ¶ A(4)). Instead of offering full Carmack coverage for foreign shipments, UP's MITA-2A expressly excludes its application by stating as follows:

> Carmack liability coverage is **not** available for any Shipments that originate outside the borders of the United States of America.

(Maz. Aff. Ex. 14 p. 7027 (MITA-2A, Item 320 ¶ D (emphasis added)). Because UP's MITA precludes Carmack coverage for this foreign origin shipment, there is no compliance with the Staggers Act conditions precedent for limitation. Thus the facts herein are analogous to those in *Sompo* on remand. *See Sompo,* 2007 WL 2230091 at *5. The same rationale which resulted in denial of limitation to UP in that case should apply herein to preclude limitation by defendants.

## POINT IV

### *SOMPO* IS BINDING PRECEDENT –
### (A) THE *KIRBY* UNIFORMITY ISSUES WERE
### ADDRESSED BY THE SECOND CIRCUIT;
### (B) *REGAL-BELOIT* IS INAPPOSITE

It is anticipated that defendants will cite *Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004), and make the illogical argument that the interests uniformity require that a blue water ocean carriage statute (COGSA) apply to a derailment in Arkansas while Carmack, a rail carriage statute, is to be ignored. Recognizing that in *Kirby* the cargo owner failed to raise the issue of Carmack's applicability, the Second Circuit has already rejected this contention:

> We cannot read *Kirby* so broadly. In *Kirby,* the Court was primarily concerned with the lack of uniformity and consistency that would result if *state* law were applied to contracts extending COGSA's terms inland.
> * * * *
> To apply COGSA here to the exclusion of Carmack would be to contradict well-established circuit precedent holding that period of responsibility provisions do not have statute-like status and would undermine the text of the statute itself, which explicitly states that COGSA does not affect laws governing the carriage of goods prior to loading and after discharge. 49 U.S.C. app. § 1311. We cannot interpret the *Kirby* Court's language concerning the policy underlying COGSA--language that at most merely supported, but was far from central, to the Court's holding that federal law should apply instead of *state* law--as implying that a contract extending COGSA inland should supersede an otherwise applicable *federal* law. Without further guidance from the Supreme Court or from Congress, we must rely on precedent and the plain language of the statutory scheme.

*Sompo,* 456 F.3d at 73-75;    s*ee also Hartford v. M/V OOCL Bravery*,    230 F.3d 549 (2d Cir. 2000)(applying European road carriage statute to multimodal carrier's liability for truck theft in Belgium).    This Court should follow *Sompo* and disregard defendants' uniformity arguments based on *Kirby.*

Similarly, the Court should reject any argument by defendants based on *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*, 462 F. Supp. 2d 1098 (C.D. Cal. 2006)(appeal filed Dec. 12, 2006).    This decision is not binding precedent. *See U.S. v. Santos*, No. 91 cr 0724 (CSH), 1996 WL 617329 * 2 (S.D.N.Y. Oct. 25, 1996)("District Courts are free to disagree with one another").  *Sompo*, which is not mentioned in *Regal-Beloit*,  is binding precedent.

*Regal-Beloit* involved a venue challenge motion in the context of an imprecise evidentiary record and less-than-candid advocacy by the defendants.  The defendants initially represented that Carmack applied and on this basis induced the California state court to remand the case to federal court. Then they shifted tactics. In a pre-discovery motion to dismiss based on a Japan forum selection clause,  they argued in chameleonic fashion that Carmack did not apply.  The suggestion that the transportation  was governed by  49 U.S.C. § 10709 is based on a factually distinguishable record and a legal analysis which failed to recognize *Sompo's* determination that Carmack's conditions precedent must be complied with even in the   context   of so-called exempt transportation.  *See Sompo,* 456 F.3d at 60 ("…rail carriers that wish to limit their liability must offer the shipper the option of full Carmack coverage which includes both the Carmack version of strict liability and full coverage for loss")

There is no basis to apply section 10709 to plaintiff's claim  against UP and Evergreen. Defendants have admitted that the terms and conditions of ERTA and MITA-2A were not disclosed to the shipper, consignee, or owner of the cargo. There is no express mention of section 10709 in the Evergreen sea waybill or in the UP electronic waybill (which remained in UP's electronic data system and was never issued). Thus any

convoluted incorporation by reference argument should be rejected.   *See Sompo,* 2007
WL 2230091 at *5 (discussing failed  incorporation by reference in analogous context);
*Schoenmann Produce Co. v. Burlington Northern and Santa Fe Ry. Co.,* 420 F.Supp.2d
757, 758-9 (S.D.Tex. 2006)(to invoke section 10709, a contract must specifically
incorporate it);  *Tamini Trasformatori S.R.L. v. Union Pacific R.R.,* 2003 WL 135722, at
*7 (holding that contract was not a section 10709 contract, even though it contained a
statement that it was entered pursuant to section 10709, because it failed to offer full
Carmack liability as an option).  Whatever relevance  section 10709 may arguably have
to Evergreen's contractual claim against UP under their ERTA, the provision has no
application to, or effect on, plaintiff's claim against defendants.

**POINT V**

**LIABILITY HAS BEEN ADMITTED BY UP;
PLAINTIFF IS ENTITLED TO JUDGMENT
AS A MATTER OF LAW**

Carmack is essentially a strict liability statute.  *See Sompo*, 456 F.3d at 59 & n. 8.
Under  Carmack a carrier is relieved of liability only  if it can prove (1) that it was free
from negligence, *and* (2) that the damage to the cargo was caused by one of five
excusable factors:  (a) act of God, (b) act of the public enemy, (c) act of the shipper
himself, (d) act of the public authority, or (e) the inherent vice or nature of the goods.  *Id.*
It is undisputed that none of the Carmack exceptions to liability apply herein. (Maz. Aff.
Ex. 4 Admissions No. 14-17)  Moreover, UP has admitted liability to plaintiff in its
answers to the complaint and in response to plaintiff's requests for admissions.  (Maz.
Aff. Ex 6 Admission No. 9; Ex. 7 Admission No. 9; Ex. 1 ¶ 18; Ex. 2 ¶ 18; Docket No. 6
UP answer to initial complaint  ¶ 18) UP  has also  assumed the defense of Evergreen.

(Maz. Aff. Ex. 10; docket No. 17 substitution of  counsel stipulation) Accordingly,
plaintiff is entitled to judgment as a matter of law on the issue of defendants' liability for
the claimed cargo damage.

**POINT VI**

**THE RULE OF *CONTRA PROFERENTUM*
PROVIDES AN ALTERNATIVE BASIS
FOR FULL RECOVERY BY PLAINTIFF**

As previously discussed plaintiff's position is that MITA-2A is not applicable to
the cargo claim in suit. Assuming *arguendo* that the terms of the undisclosed MITA-2A,
govern,  the rule of *contra proferentum* should be applied to give plaintiff the benefit of
the higher stated default limitation of "the origin value of  the commodity, plus
transportation costs or two hundred fifty thousand dollars ($250,000.00)"  per container,
instead of the COGSA limitation of $500 for each of the 165 cartons. (Maz. Aff. Ex. 14
p. 7023   (MITA-2A, Item 310 ¶ C(3))  *See  e.g.  Monica Textile Corp. v. S.S. Tana*, 952
F.2d 636, 643 (2d Cir. 1991) (ambiguities in carrier-drafted adhesion contracts must be
resolved against the carrier); *Francosteel Corp. v. M/V Pal Marinos*, 885 F.Supp. 86, 90
(S.D.N.Y. 1995)(construing ambigous bill of lading terms to give plaintiff benefit of
higher limitation).

**Conclusion**

The Second Circuit has encouraged summary judgment resolution of civil actions
where  there is no genuine issue as to any material fact. *See Knight v. U.S. Fire Ins. Co.,*
804 F.2d 9, 11 (2 Cir. 1986).   Herein, there is no genuine issue as to any material fact
relevant to the determination that Carmack applies to plaintiff's  cargo claim arising from

13

the derailment.  The undisputed facts fall squarely in line with those in the *Sompo* line of cases.  As liability is uncontroverted and admitted, this action is ripe for resolution on summary judgment. Plaintiff respectfully requests that the Court issue an order, judgment and decree holding that (a) defendants are jointly and severally liable for the claimed cargo damage and loss; (b) said liability is governed by Carmack; (c) defendants have not complied  with conditions precedent for limitation under Carmack or the Staggers Act; and (d) any and all limitation defenses are stricken and dismissed.  In the alternative, if MITA-2A is deemed applicable, plaintiff should be awarded full recovery based on the value of the shipment or $250,000.00 per container.  Plaintiff respectfully requests such other and further relief as warranted by justice.

Dated:  New York, New York
      February 4, 2008

                               LAW OFFICES,
                              DAVID L. MAZAROLI

                              */s/ David L. Mazaroli*
                              _____
                              David L. Mazaroli (DM 3929)
                              Attorney for Plaintiff
                              11 Park Place - Suite 1214
                              New York, New York 10007
                              Tel.: (212)267-8480
                              Fax.: (212)732-7352
                              E-mail: dlm@mazarolilaw.com
                              File Nos.: 7MSI-1491

**ADDENDUM**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
SOMPO JAPAN INSURANCE OF AMERICA,

        Plaintiff,

      -against-

UNION PACIFIC RAILROAD COMPANY,

        Defendant.
----------------------------------------X
DEBORAH A. BATTS, United States District Judge.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sept. 26, 200

ORDER
02 Civ. 9523 (DAB)

     Sompo Japan Insurance Company of America ("Sompo") and
Olympus America, Inc. ("Olympus") (collectively, "Plaintiffs")
bring this action against Union Pacific Railroad Company ("UP" or
"Defendant"), seeking damages for a stolen shipment of digital
cameras.

     Pending before the Court is Plaintiffs' Motion for Summary
Judgment regarding the limitation of damages in this action.  For
the reasons that follow, Summary Judgment is GRANTED in favor of
Plaintiffs.

## I. Background

A. Procedural History

     On November 21, 2005, this Court granted Defendant's Motion
for Partial Summary Judgment, in favor of Defendant.  In that
ruling, the Court found a contractual extension of the United
States Carriage of Goods by Sea Act (COGSA), and limited UP's

liability to $500.00 per package.  This decision was vacated on December 15, 2006, in light of the Second Circuit's ruling in Sompo Japan v. Union Pacific R.R., 456 F.3d 54 (2d Cir. 2006) (hereinafter, "Sompo II"); the Second Circuit held that the Carmack Amendment and the Staggers Act should be applied to the domestic rail portion of a continuous intermodal shipment originating in a foreign country, and that an ocean carrier could not trump Carmack requirements by contractually extending COGSA's terms to a domestic rail subcontractor.  Given the undecided Summary Judgment Motion before the Court, the Court's December 15, 2006 Order also referred the matter to Magistrate Judge for a damages inquest.

On January 16, 2007, this Court received a letter request from Defendant, asking the Court to stay action in this case pending the outcome of another matter granted cert by the United States Supreme Court, Altadis USA, Inc. V. Sea Star Line, et al., 458 F.3d 1288 (11th Cir. 2006).  By letter dated January 19, 2007, Plaintiffs objected to a stay in this case.  On January 24, 2007, this Court found that a Supreme Court ruling in Altadis might have an impact on the instant case.  Accordingly, the Court issued an Order that stayed all action in this case, including an ongoing damages inquest, pending the outcome of a Supreme Court ruling in Altadis.

On February 13, 2007 this Court received correspondence from Plaintiff, informing the Court that <u>Altadis</u> settled, and the petition in the Supreme Court withdrawn. Plaintiff requested that the stay be lifted and that the matter be set down to complete the damages inquest. The Court granted Plaintiff's request, entering a referral to Magistrate Judge Dolinger for a damages inquest on February 22, 2007.

On March 9, 2007, Plaintiff Sompo wrote to the Court, asking that the Court So Order the Parties' Stipulation on Damages, and asking that the Court grant Summary Judgment in favor of the Plaintiff for the stipulated amount, plus prejudgment interest. The letter enclosed a Proposed Order on behalf of Plaintiff. On March 13, 2007, the Court entered an Order of Stipulation on Damages, under which the parties agreed that the value of the lost/damaged cargo was $422,246.02.[1]

By letter dated March 22, 2007, Defendant UP objected to entry of the Proposed Order, arguing that it went well beyond the scope of this Court's December 15, 2006 Order of vacatur, which made no new findings of fact or law other than determining that the Second Circuit decision in <u>Sompo II</u> was controlling in this

---

[1]    Contrary to Defendant's suggestion, this Order did not include language indicating that "the only thing remaining [in this case is] for the Clerk to enter judgment for this amount plus interest." (Def. Letter of August 15, 2007).

3

action.   Instead, Defendant asks the Court to enter merely a
Judgement against it, in the amount of stipulated damages,
without setting forth any reasoning or findings. (See e.g. Def.
Letters of March 22, 2007 and March 26, 2007).

On July 30, 2007, Plaintiff again wrote to the Court,
enclosing a copy of the District Court's summary judgment ruling
on remand from Sompo II.  In that decision, Judge McMahon found
that, on facts quite similar to those at issue in this action,
that UP did not have a limit of liability for damage occurring
during the rail portion of an international shipment under an
intermodal bill of lading. Sompo Japan Insurance Company v. Union
Pacific Railroad Company, 2007 WL 2230091 (S.D.N.Y. 2007).
Plaintiff suggests that the Court adopt Judge McMahon's reasoning
and enter summary judgment in Plaintiff's favor. (Pl. Letter of
July 30, 2007).

In response, by letter dated August 15, 2007, Defendant UP
objects to Plaintiff's suggestion.  Curiously, Defendant does not
contest Sompo's suggestion that summary judgment should be
entered in Plaintiff's favor; however, Defendant does object to
the Court adopting Judge McMahon's reasoning.  Although the
parties and exempt rail circulars in this case and in the case
before Judge McMahon were identical, Defendant argues that the

4

cases are factually distinct because they involve different ocean
carriers, different bills of lading, electronic waybills and
exempt transport agreements. (Def. Letter of August 15, 2007).
In a reply dated August 16, 2007, Plaintiff Sompo reiterates that
the factual distinctions highlighted by Defendant are not
material, and that, in this case, there can be no limitation on
liability.

B.   Factual Background

        The undisputed material facts in this action were thoroughly
detailed in this Court's original Order of Summary Judgment.
(Order of November 21, 2007, at 1-4).   The Court presumes the
Parties' familiarity with these facts.   Here the Court only
summarily reviews the facts most relevant to the instant action.

        All portions of the carriage of digital cameras at issue in
this action were part of an international shipment.   (Complaint ¶
8).   This shipment originated in Tokyo, Japan.   (Def.'s Rule 56.1
Stmt ¶ 2).   The cargo was discharged from the M/V Hudson Bridge
ship in Tacoma, Washington for interstate transport by UP rail
delivery to Woodbury, New York.   (Def.'s Rule 56.1 Stmt ¶¶ 1-2;
Pls.' Response to Def.'s Rule 56.1 Stmt ¶¶ 1-2).   The shipment
traveled under a through bill of lading ("B/L").   (Order of
November 21, 2007, at n.1 and n.2).   This through B/L extended

liability provisions of the United States Carriage of Goods by Sea Act (COGSA), stating that if COGSA applies, the carrier shall be liable for up to $500.00 per package, "unless the nature and value of such Goods have been declared by the shipper before receipt of Goods by Carrier and inserted into this Bill of Lading." (Sheldon Aff. Ex. A).

The inland rail transport was further governed by two additional documents; an Exempt Rail Transport Agreement that UP entered into with K-Line and Rail Bridge Corporation, and an EDI waybill which UP issued to Rail Bridge. (Def.'s Rule 56.1 Stmt ¶¶ 10-11). The Exempt Rail Transport Agreement states, in pertinent part, "Liability for freight loss and damage to lading while under the control of UP shall be governed by applicable rules circulars." (Sheldon Aff. ¶ 15). The EDI waybill does not cite the rules circulars, and it miscites the Exempt Rail Transport Agreement contract number. (Sheldon Aff. Ex. C).

According to Defendant, the applicable Rules Circular for this shipment is UP Exempt Circular 20-B, which limits liability for damages to $500.00 per package, pursuant to COGSA, 46 U.S.C. § 1304(5). (Sheldon Aff. ¶¶ 16-17). Also, according to Defendant, Item 143-B of the Rules Circular offers full value Carmack liability by explaining:

6

> 49 U.S.C. Section 11706 [the Carmack Amendment]
> provides for full value and other liability terms for
> the carrier and the shipper.  To make a shipment
> pursuant to the terms of 49 U.S.C. Section 11706, the
> 7. [sic] must comply with the following provisions...

(Sheldon Aff. ¶ 22 and Ex. F).  Plaintiffs do not dispute the

accuracy of the Item 143-B writing.  However, Plaintiffs allege

that Olympus America was never presented with Circular 20-B and

its option of declaring Carmack liability.  (Pls.' Response to

Def.'s Rule 56.1 Stmt ¶ 20).  While Item 143-B explains the

requirements for making a shipment pursuant to Carmack,  Item

142-B(1) sets out the "General Application" for Cargo Loss and

Damage Provisions.  (Sheldon Aff. Ex. E).  The only  term among

these provisions which informs shippers of their option to choose

liability under Carmack is Item 142-B(1)(C).  Id.  That term

reads, in relevant part: "On domestic moves that originate in the

United States, Shippers may, at their option, select the

liability provisions set forth in 49 U.S.C. Section 11706

(Carmack) as explained in Item 143."  Id.

## II.  DISCUSSION

### A.  The Summary Judgment Standard

A district court should grant summary judgment when there is

"no genuine issue as to any material fact," and the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); see also Hermes Int'l v. Lederer de Paris Fifth Ave.,

Inc., 219 F.3d 104, 107 (2d Cir. 2000). Genuine issues of
material fact cannot be created by mere conclusory allegations;
summary judgment is appropriate only when, "after drawing all
reasonable inferences in favor of a non-movant, no reasonable
trier of fact could find in favor of that party." Heublein v.
United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing
Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S.
574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

      In assessing when summary judgment should be granted, "there
must be more than a 'scintilla of evidence' in the non-movant's
favor; there must be evidence upon which a fact-finder could
reasonably find for the non-movant." Id. (citing Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L.
Ed. 2d 202 (1986)). While a court must always "resolv[e]
ambiguities and draw[ ] reasonable inferences against the moving
party," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir.
1986) (citing Anderson), the non-movant may not rely upon "mere
speculation or conjecture as to the true nature of the facts to
overcome a motion for summary judgment." Id. at 12. Instead,
when the moving party has documented particular facts in the
record, "the opposing party must 'set forth specific facts
showing that there is a genuine issue for trial.'" Williams v.
Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Fed. R. Civ. P.

8

56(e)).  Establishing such facts requires going beyond the
allegations of the pleadings, as the moment has arrived "'to put
up or shut up.'"  <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41
(2d Cir. 2000) (citation omitted).  Unsupported allegations in
the pleadings thus cannot create a material issue of fact.  <u>Id.</u>

B.  <u>Carmack Liability</u>

        At the outset, the Court notes that it is true, as
Defendant observes in its March 22, 2007 letter to the Court,
that the Court made no specific findings in its Order of vacatur.
However, it is not true that the Court has not made findings of
fact or law in the long history of this case.  The Court's
original ruling on summary judgment necessarily made numerous
findings, and only one of these, that the Carmack Amendment and
Staggers Act requirements were inapplicable to this case, was
overruled by the Second Circuit.  Among the other determinations
that the Court made in this case, the Court found, as the parties
largely conceded, that the cargo at issue in this case was
burglarized during the domestic rail portion of an international
shipment traveling under a through bill of lading that extended
COGSA liability provisions to subcontractors, including domestic
carriers. (Order of November 21, 2007, at 1-4).

        Accordingly, it is clear to the Court that the Circuit

9

Court's ruling precludes any argument that Carmack does not apply
to this action.  As the Circuit Court unambiguously ruled:

> ...[W]e have determined that Carmack applies to
> the domestic rail portion of an international shipment
> originating in a foreign country and traveling under a
> through bill of lading, even where the parties have
> extended COGSA's liability provisions to domestic rail
> carriers..."

Sompo II, 456 F.3d at 75.  Because the Court has already
determined that the background of this case precisely mirrors
these circumstances, Defendant cannot now contest the
applicability of Carmack.  See also, Sompo Japan Insurance Company
v. Union Pacific R. Co., 2007 WL 2230091, *4 (S.D.N.Y. 2007)
(finding, on facts analogous to the case at bar, that the Second
Circuit ruling in Sompo II is detminative and precludes any
argument that Carmack does not govern).

## C. Compliance with Carmack

In Sompo II, the Court remanded the action to the District
Court for consideration of arguments that Defendant complied with
the requirements of Carmack and Staggers.  Sompo II citation.
Because Carmack applies in this action, on summary judgment this
Court must determine likewise whether Defendant complied with
Carmack in the instant case.  The issue of compliance with
Carmack was originally briefed in the parties' moving papers but,
having concluded that Carmack was inapplicable, the Court

10

declined to consider the parties' arguments.  The Court considers
these arguments now.

Aside from its argument that the K-Line B/L satisfied
Carmack because it offered alternate rates under COGSA, Defendant
Sompo offers two reasons why it complied with Carmack.  First
Defendant argues that the shipper could have requested full value
Carmack liability in the K-Line B/L.  (Def. Mem. Law at 6).
Second, Defendant argues that it complied with Carmack because
the UP Exempt Circular 20-B offered alternate rates for full
liability under item 143-B.  (Def. Mem. Law at 5).

The Court turns to UP's argument that Clause 4 of the B/L
complied with Carmack. According to UP, the shipper had an
opportunity to avoid the $500.00 per package limitation because
clause 4 of the B/L states, in relevant part, that if COGSA
applies, the carrier will not be liable for damage in an amount
exceeding $500.00 per package, "unless the nature and value of
such goods have been declared by the shipper before receipt of
such goods and inserted in this bill of lading."  (Def. Mem. Of
Law at 5; Sheldon Aff. Ex. A).  Defendant essentially argues that
if the shipper wanted full value liability under Carmack, the B/L
put the shipper on notice that all it had to do was ask.

Well-settled law and the Circuit Court's ruling in Sompo II

11

foreclose this argument.  It is established that the burden to offer full Carmack liability is on the rail carrier.  <u>See</u> <u>Tokio Marine and Fire Ins. Co., Ltd. v. Amato Motors, Inc.</u>, 996 F.2d 874, 879 (7th Cir. 1993) ("rail carriers still must offer full value rates").  Moreover, the Court in <u>Sompo II</u> found that bills of lading which offer full coverage under COGSA alone cannot satisfy the Staggers Act.

As the Second Circuit explains, COGSA and Carmack respectively rely on negligence and strict liability regimes. <u>Sompo II</u>, 456 at 76.  A bill of lading which offers alternative terms solely under COGSA does not comply with Carmack: "[T]he Court cannot assume a shipper was properly given the opportunity to choose among types of liability coverage and chose not to pay higher rates for full coverage under a strict liability regime." <u>Id</u>.  As the Second Circuit makes clear, "[r]ail carriers that wish to limit their liability must offer the shipper the option of full Carmack coverage, which includes both the Carmack version of strict liability and full coverage for loss." <u>Sompo II</u>, 456 at 60.

For purposes of assessing whether clause 4 of the K-line B/L offered full Carmack coverage, its language cannot be relevantly distinguished from the B/L at issue in <u>Sompo II</u>.  There, the

12

operable B/L provided that, if COGSA applies, neither the carrier

nor the vessel will not be liable for damage in an amount

exceeding $500.00 per package, "unless the value of the Goods has

been declared and inserted in the declared value box on the face

hereof." Id. The K-line B/L in the instant case likewise failed

to make mention of the Carmack Amendment's actual full liability

terms, and they are never offered as an option for the shipper to

choose. Accordingly, Defendant cannot maintain that the K-Line

B/L complied with Carmack under the terms of Clause 4.

Defendant's second argument, that UP offered full Carmack

coverage under the UP Exempt Circular 20-B, also fails as a

matter of law. Defendant argues that Circular 20-B offered

alternate rates for full Carmack liability under Item 143-B.[2]

(Def. Mem. Law at 5). Section 27 of the Exempt Rail Transport

Agreement entered into by Rail Bridge and UP provides that

"Liability for freight loss and damage to lading while under the

control of UP shall be governed by applicable rules circulars."

Defendant maintains that the applicable rules circular here was

Circular 20-B, which in turn offered Carmack liability under Item

---

[2] UP also argues that because Item 142-B(3)(L) of the Circular
recognizes that the shipper may opt for alternative liability rates, it is
further evidence of compliance with Carmack. (Def. Mem. Law at 3). However
these terms merely refer the shipper to the K-Line B/L, which as described
herein, cannot alone satisfy the requirements of Carmack and the Staggers
Amendment.

13

143-B.   Id. Plaintiffs dispute whether the Exempt Rail Transport
Agreement and Circular 20-B are binding on Plaintiff Olympus, the
shipper.   (Pl. Mem. Law at 13).   Plaintiffs further disputes
whether the shipper was properly on notice of either of these
documents, compellingly arguing that Defendant relies on too many
incorporation by reference steps to properly charge the shipper
with notice. (Pls.' Mem. Law at 18).

        However, even if Plaintiff Olympus were on notice of the
Exempt Rail Transport Agreement and Circular 20-B, and these
agreements were binding upon the shipper, the Court cannot find
that the Circular offered full Carmack liability for this
international intermodal shipment.   The Circular includes only
one term which recognizes a shipper's option to chose full
Carmack liability, Item 142-B(1)(C); that term clearly limits the
availability of this option to "domestic moves that originate in
the United States."   (Sheldon Aff. Ex. E).   Accordingly, even
assuming that the shipper was on notice of the terms of the
Exempt Rail Transport Agreement and Circular 20-B, Defendant
failed to offer Plaintiff Olympus full Carmack liability for
their international shipment.   See also, Sompo Japan Insurance
Company v. Union Pacific R. Co., 2007 WL 2230091, *5 (S.D.N.Y.
2007) (considering the same Rules Circular language and finding
that it limited the offer of Carmack liability to domestic

shipments).

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's partial motion for summary judgment seeking to limit Defendant's liability for stolen goods to $500.00 per package.

Liability in this action is not contested and the parties have stipulated to actual damages. Accordingly, the Clerk of Court is hereby directed to enter judgment in the amount of $422,246.02, plus prejudgment interest at the rate of 9% from November 29, 2001 until the date of entry of this judgment, in favor of Plaintiffs and against Defendant.

The Clerk of Court is also directed to close this case.


SO ORDERED.

Dated:    New York, New York
          September 2ℓ, 2007

                                        Deborah A. Batts
                                United States District Judge

15