# EXHIBIT 5

MAZ. AFF.

8966/PMK
CICHANOWICZ, CALLAN, KEANE, VENGROW & TEXTOR
61 BROADWAY, SUITE 3000
NEW YORK, NEW YORK 10006
212-344-7042



COPY
MAZAROLI
AUG 6 2007
LAW OFFICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MITSUI SUMITOMO INSURANCE CO., LTD.

    Plaintiff,

against

EVERGREEN MARINE CORPORATION and UNION PACIFIC RAILROAD CO.

    Defendants.

07 CV 3874
ECF

EVERGREEN MARINE CORPORATION
RESPONSE TO PLAINITFF'S REQUESTS FOR ADMISSIONS

Defendant Evergreen Marine Corporation (hereinafter EMC) by its attorneys, Cichanowicz, Callan, Keane Vengrow & Textor, Answers Plaintiff's Requests for Admissions upon information and belief as follows:

1.    During the ocean carriage stage of the intermodal transportation which is the subject of this litigation, the shipment in suit (hereinafter "The Shipment") was carried aboard the M/V EVER UNION, and/or other vessel(s) operated by or on behalf of defendant Evergreen Marine Corporation ("Evergreen").

**RESPONSE** EMC admits that a shipment of cargo carried in containers TRIU5559381 and UGMU8062288 was carried from a foreign port to a US port aboard an Evergreen vessel pursuant to the terms and conditions of the bill of lading contract EISU025643005523.

2.    The Shipment was carried in containers TRIU5559381 and UGMU8062288 which were provided to the shipper by or on behalf of Evergreen.

**RESPONSE** EMC admits it provided the containers TRIU5559381 and UGMU8062288 (hereinafter the "Containers") which were said to contain the Shipment in question to the bill of lading shipper.

3. At or near Los Angeles, California, The Shipment was transferred from the Evergreen ocean vessel into the custody of defendant Union Pacific Railroad Co. ("UP") for the rail carriage stage of the transportation which is the subject of the litigation.

**RESPONSE** EMC admits that the aforesaid Containers arrived at the port of Los Angeles on time and in external good order and condition. EMC further admits that the Shipment was delivered into the custody of the Union Pacific Railroad Co. (UPRR) for inland transport to Statesville, N.C.

4. The Shipment was received into the custody of UP at or near Los Angeles, California.

**RESPONSE** EMC admits that the Containers were delivered into the custody of the Union Pacific Railroad Co. (UPRR) for inland transport to Statesville, N.C.

5. When the Shipment was received by UP at or near Los Angeles, California, no exceptions as to damage were noted as to The Shipment or the containers in which it was transported.

**RESPONSE** Denied expect EMC admits that the Containers were discharged at the port of Los Angeles in external good order and condition.

6. The Shipment was carried by UP aboard a train which was intended to move from Los Angeles, California, to a destination in or near Statesville, NC.

**RESPONSE** EMC admits that it contracted with UPRR to transport the Containers from Los Angeles, CA to Statesville, N.C.

7. On or about April 5, 2006 the UP train carrying The Shipment derailed at or near Higginson, Arkansas.

**RESPONSE** EMC admits that on April 5, 2007 the UPRR train that was reported to have been carrying the Containers was derailed in Arkansas.

8. As a result of the derailment of the subject UP train cargo shipments carried aboard the train sustained damage.

**RESPONSE** Denied.

9. During the subject rail transportation The Shipment was carried in containers TRIU5559381 and UGMU8062288.

**RESPONSE** EMC can neither admit nor deny that the Shipment was loaded in containers TRIU5559381 and UGMU8062288 since it was not present when the containers were loaded.

10. As a result of the derailment of the subject UP train containers TRIU5559381 and UGMU8062288 sustained damage.

**RESPONSE** Admits that containers TRIU5559381 and UGMU8062288 sustained external damage while in the care and custody of UPRR.

11. The cargo carried in container TRIU5559381 sustained damage as a result of the aforementioned derailment of the UP train.

**RESPONSE** Denied.

12. The cargo carried in container UGMU8062288 sustained damage as a result of the aforementioned derailment of the UP train.

**RESPONSE** Denied.

13. The claimed damage to The Shipment which is the subject of this action was caused by the aforementioned derailment of the UP train.

RESPONSE  EMC can neither admit nor deny since it has no knowledge of the pre-shipment condition.

14. The derailment of the subject UP train was not caused by events which would constitute an "Act of God" defense or exception to liability.

RESPONSE  Denied.

15. The derailment of the subject UP train was not caused by events which would constitute an "Act of Public Enemy" defense or exception to liability.

RESPONSE  Denied.

16. The derailment of the subject UP train was not caused by events which would constitute an "Act of Public Authority" defense or exception to liability.

RESPONSE  Denied.

17. The derailment of the subject UP train was not caused by the fault of the shipper or owner of The Shipment.

RESPONSE  Denied.

18. At all material times UP was engaged in the business of providing common carrier railroad transportation services for compensation.

RESPONSE  Admits.

19. At all material times Evergreen was engaged in the business of providing common carrier intermodal transportation services for compensation including transportation of cargo from foreign ports to inland destinations in the United States.

**RESPONSE** Denied except EMC admits that, at all material times, it was a vessel operating common carrier as defined by the Ocean Shipping Reform Act of 1998.

20. At all material times the intermodal transportation services provided by Evergreen included ocean transportation from the port of vessel loading to the port of vessel discharge.

**RESPONSE** Denied except EMC admits that, at all material times, it was a vessel operating common carrier as defined by the Ocean Shipping Reform Act of 1998 providing ocean carriage from the bill of lading port of loading to the bill of lading port of discharge.

21. At all material times the intermodal transportation services provided by Evergreen included rail transportation from the port of vessel discharge to inland destinations in the United States.

**RESPONSE** Denied except EMC admits that it contracted with UPRR to transport the Shipment from the bill of lading port of discharge to the bill of lading place of delivery.

22. For The Shipment Evergreen issued an "intermodal" through bill of lading meaning that it contemplated multiple modes of transportation, including ocean and rail carriage.

**RESPONSE** Denied except EMC admits that it issued a non-negotiable Sea Waybill of Lading No. EISU025643005523 covering the shipment of two containers, stuffed and sealed by the shipper, from Shimisu to Statesville, N.C.

23. For The Shipment Evergreen charged freight fees which covered the ocean and rail stages of the intermodal transportation.

**RESPONSE** Denied expect EMC admits that its freight fee covered shipments from Shimisu to Statesville, N.C.

Dated: New York, New York
August 1, 2007

                              CICHANOWICZ, CALLAN, KEANE,
                                VENGROW & TEXTOR, LLP
                              *Attorneys of Defendant EMC*

                              By: __S/ Paul M. Keane (PMK-5934)

## CERTIFICATE OF SERVICE BY ECF and US MAIL

The undersigned declares under penalty of perjury that the following is true and correct:

1. I am over the age of eighteen years and I am not a party to this action.

2. On August 1, 2007, I served by ECF a complete copy of EVERGREEN MARINE CORPORATION'S Responses to Plaintiff's Request for Admissions to the following attorneys at the registered addresses:

Barry N. Gutterman & Associates, P.C.
The Lincoln Building
60 East 42nd Street, 46th Floor
New York, New York 10165
*Attorneys for Union Pacific Railroad*
Your file: UP-2718
212-983-1466

David L. Mazaroli
11 Park Place – Suite 1214
New York, New York 10007
*Attorney for Plaintiff*
212-267-8480


DATED:      August 1, 2007
            New York, New York


                                            S/ Jessica De Vivo    (JAD/6588)