# EXHIBIT 6

MAZ. AFF.

Barry N. Gutterman, Esq. (BG6410)
Robert Briere Esq. (RB6080)
Barry N. Gutterman & Associates, P.C.
Attorneys for Defendants
Union Pacific Railroad Company
and Evergreen Marine Corporation
60 East 42nd Street, 46th Floor
New York, New York 10165
(212) 983-1466

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MITSUI SUMITOMO INSURANCE CO., LTD.<br><br>Plaintiffs<br><br>v.<br><br>EVERGREEN MARINE CORPORATION and UNION PACIFIC RAILROAD COMPANY<br><br>Defendants. | ECF Case<br><br>07 CV 3874<br>(Judge McMahon) |

### DEFENDANTS EVERGREEN MARINE CORPORATION AND UNION PACIFIC RAILROAD COMPANY'S RESPONSE TO PLAINTIFF'S SECOND REQUEST FOR ADMISSIONS

Defendants Evergreen Marine Corporation ("Evergreen") and Union Pacific Railroad Company ("UP"), by their attorneys, Barry N. Gutterman & Associates, P.C., Answer Plaintiff's Second Request for Admissions upon information and belief as follows:

1. Prior to the subject derailment Evergreen did not inform the shipper, consignee or owner of the Shipment, or any one of them, of the terms and conditions of the Master Intermodal Transport Agreement ("MITA").

**RESPONSE:**

Denied. Evergreen objects to this question because COGSA is the controlling statute. In this regard, under 8(5)(c)(1) & (2) of the terms and conditions of the Evergreen bill of lading,

Exhibit 6

COGSA is also applied to the inland portion of transit. If COGSA is held inapplicable, under 5(c) 2 of the terms and conditions of the Evergreen bill of lading, the shipper, consignee or owner of the Shipment, or any one of them, could have requested a copy of the Master Intermodal Transport Agreement ("MITA"). No such request was ever made.

2. In this litigation no documents have been disclosed or produced by Evergreen showing that it informed the shipper, consignee or owner of the Shipment, or any one of them, of the terms and conditions of MITA at any time prior to the subject derailment.

**RESPONSE:**

Denied. The Evergreen bill of lading and its terms and conditions have been produced. Under 5(c) 2 of the terms and conditions of the Evergreen bill of lading, the shipper, consignee or owner of the Shipment, or any one of them, could have requested a copy of the Master Intermodal Transport Agreement ("MITA"). No such request was ever made.

3. Prior to the subject derailment Evergreen did not inform the shipper, consignee or owner of the Shipment, or any one of them, of the terms and conditions of the Exempt Rail Transportation Agreement or any Addendum of the Exempt Rail Transportation Agreement (collectively referred to herein as "ERTA").

**RESPONSE:**

Denied. Evergreen objects to this question because COGSA is the controlling statute. In this regard, under 8(5)(c)(1) & (2) of the terms and conditions of the Evergreen bill of lading, COGSA is also applied to the inland portion of transit. If COGSA is held inapplicable, under 5(c) 2 of the terms and conditions of the Evergreen bill of lading, the shipper, consignee or owner of the Shipment, or any one of them, could have requested a copy of the Exempt Rail Transportation Agreement or any Addendum of the Exempt Rail Transportation Agreement. No such request was ever made.

4. In this litigation no documents have been disclosed or produced by Evergreen showing that it informed the shipper, consignee or owner of the Shipment, or any one of them, of the terms and conditions of ERTA at any time prior to the subject derailment.

**RESPONSE:**

Denied. The Evergreen bill of lading and its terms and conditions have been produced. Under 5(c) 2 of the terms and conditions of the Evergreen bill of lading, the shipper, consignee or owner of the Shipment, or any one of them, could have requested a copy of the Exempt Rail Transportation Agreement or any Addendum of the Exempt Rail Transportation Agreement. No such request was ever made.

5. Prior to the subject derailment UPRR did not inform the shipper, consignee or owner of the Shipment, or any one of them, of the terms and conditions of MITA.

**RESPONSE:**

UP refers plaintiff to UP Master Intermodal Transportation Agreement in effect at the time of the shipment, available on line at www.up.com. The MITA 2-A is readily available to the public including shippers, consignees, or owners of shipments on an international basis. The shipper, consignee or owner of the shipment was aware of the terms or the Master Intermodal Transportation Agreement and could have requested a copy or obtained such Agreement on-line.

6. In this litigation no documents have been disclosed or produced by UPRR showing that it informed the shipper, consignee or owner of the Shipment, or any one of them, of the terms and conditions of MITA at any time prior to the subject derailment.

RESPONSE:

    UP refers plaintiff to UP Master Intermodal Transportation Agreement in effect at the time of the shipment, available on line at www.up.com. The MITA 2-A is readily available to the public including shippers, consignees, or owners of shipments on an international basis. The shipper, consignee or owner of the shipment was aware of the terms or the Master Intermodal Transportation Agreement and could have requested a copy or obtained such Agreement on-line.

7.   Prior to the subject derailment UPRR did not inform the shipper, consignee or owner of the Shipment, or any one of them, of the terms of and conditions of the ERTA.

RESPONSE:

    Admit in part, denied in part. UP admits Request No. 7, with the exception that the shipper was aware of the terms and conditions of the ERTA.

8.   In this litigation no documents have been disclosed or produced by UPRR showing that it informed the shipper, consignee or owner of the Shipment, or any one of them, of the terms and conditions of ERTA at any time prior to the derailment which is the subject of this action.

RESPONSE:

    Admits in part, denied in part. UP admits request No. 8, with the exception that the shipper was aware of the terms and conditions of the ERTA.

9.   UPRR is liable to plaintiff for the damage to the Shipment which was caused by the subject derailment.

**RESPONSE:**

Admits that UP is liable to the plaintiff for damages to the shipment but denies that damages are $385,105.70. Answering further, UP's damages are limited to $82,500.

10. Evergreen is liable to plaintiff for the damage to the Shipment which was caused by the subject derailment.

**RESPONSE:**

Denied.

11. UPRR and Evergreen are jointly and severally liable to plaintiff for the damage to the Shipment which was caused by the subject derailment.

**RESPONSE:**

Denied.

Dated: New York, New York
October 12, 2007

By: /s/ Barry N. Gutterman
Barry N. Gutterman, Esq. (BG6410)
Robert Briere, Esq. (RB6080)
Barry N. Gutterman & Associates, P.C.
60 East 42nd Street, 46th Floor
New York, New York 10165
Phone: (212) 983-1466
Fax: (212) 983-1229

Attorneys for Defendants
Union Pacific Railroad Company
and Evergreen Marine Corporation

5

To:	David L. Mazaroli (DM-2929)
	11 Park Place – Suite 1214
	New York, New York 10007-2801
	Phone: (212) 267-8480
	Fax: (212) 732-7352
	Attorneys for Plaintiff

UP2718.UP.Response to 2nd Request for Admissions