# EXHIBIT 13

MAZ. AFF.

RECEIVED by the Carrier from the Merchant in apparent good order and condition unless otherwise indicated herein, the Goods, or the Container(s) or other package(s) or unit(s) said by the Merchant to contain the cargo herein mentioned, to be carried subject to all the terms and conditions contained or incorporated in this Bill (defined hereinafter at Clause 1(1) including both front and back pages where issued in paper form and Carrier's Tariff rules and regulations by the vessel named herein or any substitute at the Carrier's option and/or other means of transport, including the use of feeder ships, barges, trucks or rail cars, from the place of receipt or the loading port to the port of discharge or place of delivery shown herein and there to be delivered unto order or assigns.

If issued in paper form and if required by the Carrier, this Bill duly endorsed must be surrendered in exchange for the Goods or Delivery Order.

In accepting this Bill, whether in paper or electronic form, the Merchant agrees to be bound by all the stipulations, exceptions, terms and conditions contained or incorporated in this Bill whether written, typed, stamped, printed or otherwise, and as well, to be bound by the Carrier's Tariff rules and regulations which are deemed incorporated herein, all of which supersede all previous agreements, including booking notes, dock and mate's receipts and like, any local customs or privileges to the contrary notwithstanding.

The terms of this Bill shall be separable and if any part or term hereof is invalid or unenforceable, the validity and enforceability of any other part or term shall not be affected.

Agents signing this Bill on behalf of the Carrier have only the limited authority at common law of a vessel's master signing a Bill.

An endorsement on this Bill that the Goods are "On Board" shall mean that the Goods are loaded on board the ocean vessel named in this Bill, or loaded on board rail cars, trucks, lorries, feeder ships, barges, or other means of transportation and are in the custody of an Inland or ocean Carrier for Through Transportation in accordance with the terms of this Bill.

1. Definitions.

(1) "Bill" means (a) Bill of Lading if this document is issued as a Bill of Lading, or (b) Sea Waybill if this document is issued as a Sea Waybill. Notwithstanding anything else contained in or incorporated into this Bill, if it is issued as a Sea Waybill, it will not be a document of title to the Goods.

(2) "Carrier" means the party on whose behalf this Bill has been signed, as well as the Ship and/or her Owner, demise charterer (if bound hereby), the time charterer and any substituted or Underlying Carrier whether any of them is acting as Carrier or bailee.

A00158

1



Exhibit 2B

Exhibit 13

(3) "COGSA" means the United States Carriage of Goods by Sea Act, approved April 16, 1936.

(4) "Container" includes any ISO standard container, trailer, transportable tank, flat rack and/or other item of transportation equipment in conformance with ISO standards.

(5) Force Majeure shall include, but not be limited to, work stoppages, civil commotion, strikes, accidents, casualties, lockouts, fire, transportation disasters, acts of God, governmental restraints (including governmental import restrictions and voluntary quotas arising from the threat of governmental restraints), war or hostilities, embargoes or other similar conditions.

(6) "Goods" means the cargo accepted from the Merchant and includes any Container whether supplied by or on behalf of the Carrier or by the Merchant.

(7) "Hague Rules" as used herein refers to the provisions of the International Convention for the Unification of Certain Rules Relating to Bills of Lading signed at Brussels on 25th August 1924 and includes any amendments thereto including the Hague Visby Amendments, 1968.

(8) "Holder" mean any person for the time being in possession of this Bill (if issued as a Bill of Lading) to whom the property in the Goods has passed on or by reason of the consignment of the Goods or the endorsement of this Bill or otherwise.

(9) "Merchant" includes the shipper, Holder, consignee, the receiver of the Goods, any person owning or entitled to the possession of the Goods or this Bill and anyone acting on behalf of any such persons.

(10) "Ship" shall include the vessel named in this Bill, any substituted vessel or feeder vessels, and any vessel, craft, lighter or other means of conveyance whatsoever owned, chartered, operated or controlled and used by the Carrier in the performance of this Contract.

(11) "Through Bill" as used herein refers to the contract evidenced by this Bill when it covers the carriage of the Goods from the place of receipt from the Merchant to the place of delivery to the Merchant by the Carrier plus one or more Underlying Carriers.

(12) "Through Transportation" means carriage of the Goods under this Bill from place of receipt from the Merchant to place of delivery to the Merchant by the Carrier plus one or more Underlying Carriers.

(13) "Underlying Carrier" includes any water, rail, motor, air or other carrier utilized by the Carrier for any part of the transportation of the shipment covered by this Through Bill

ACPLES

2

11/28/2007  15:13   9831229                    GUTTERMAN ASSOCIATES                            PAGE  04

(14) "Sub-contractor" includes owners and operators of vessels (other than the Carrier), stevedores, terminal operators, warehousemen, Underlying Carriers, ocean and rail transport intermediaries and any independent contractor employed by the Carrier in its performance of the transportation of the Goods hereunder. Sub-contractor shall also include direct and indirect sub-contractors and their respective servants and agents.

2. Carrier's Tariff. The terms of the Carrier's applicable Tariff are incorporated herein. If this Bill is issued as a Sea Waybill, the CMI Rules for Sea Waybills excluding Rule 4 are also incorporated herein. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. Copies of the CMI Rules for Sea Waybills can be obtained from the CMI website at www.comitemaritime.org/. In the case of inconsistency between this Bill and the applicable Tariff or CMI Rules, this Bill shall prevail.

3. Merchant's Warranty. The Merchant warrants that in agreeing to the terms hereof he is, or has the authority of, the person owning or entitled to the possession of the Goods and this Bill.

4. Sub-Contracting.
(1) The Carrier shall be entitled to sub-contract on any terms the whole or any part of the carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.

(2) In contracting for the following exemptions and limitation of and exoneration from liability, the Carrier is acting as agent and trustee for all other persons named in this clause. It is understood and agreed that, other than the Carrier, no person, firm or corporation or other legal entity whatsoever (including the Master, officers and crew of the vessel, all agents and all Sub-Contractors) is, or shall be deemed to be liable with respect to the Goods as carrier, bailee or other howsoever. If, however, it shall be adjudged that any one other than the Carrier is carrier or bailee of the Goods or under any responsibility with respect thereto, all exemptions and limitations of and exoneration from liability provided by law or by terms hereof shall be available to such other. It is also agreed that each of these persons and companies referred to above are intended beneficiaries, but nothing herein contained shall be construed to limit or to relieve them from liability to the Carrier for acts arising or resulting from their fault or neglect.

5. Clause Paramount and Responsibility of Carrier.
(A) Clause Paramount - as far as this Bill covers the carriage of Goods by sea either by the Carrier or its Sub-contractor, the contract evidenced in this Bill shall have effect subject to the Hague Rules, if and as enacted in the country of shipment, and any Legislation including COGSA which make those rules compulsory, applicable or effective. The Hague Rules and said Legislation shall be deemed contractually incorporated herein and made a part of this Contract regardless of whether it or they would otherwise be compulsorily applicable and nothing herein contained shall be deemed a surrender by the Carrier or its Sub-contractor of any of its rights and immunities or any increase of any of its responsibilities under said Rules and Act.

A00100

11/26/2007  15:18    9831229           GUTTERMAN ASSOCIATES                    PAGE  05

Notwithstanding anything to the contrary, if the carriage called for in this Bill is a shipment to or from the United States, the liability of the Carrier or its Sub-contractor shall be exclusively determined pursuant to COGSA which is contractually incorporated into this Bill. The provisions cited in the Hague Rules and COGSA (except as may be otherwise specifically provided herein) shall also govern before the Goods are loaded on and after they are discharged from the Ship provided, however, that the Goods at said times are in the actual custody of the Carrier or any Sub-contractor. When no such enactment is in force in the country of shipment, the Hague Rules will apply. If any terms of this Bill are repugnant to the Hague Rules or any other compulsorily applicable International Convention or National Law which cannot be departed from by private contract, then such provision shall be null and void to the extent of such invalidity without invalidating the remaining provisions hereof. The Carrier or its Sub-contractor shall not be liable in any capacity whatsoever for any delay, non-delivery or misdelivery, or loss of or damage to the Goods howsoever caused occurring while the Goods are not in the actual custody of the Carrier.

(B) Responsibility for Port to Port Shipments. Where loss or damage has occurred between the time of receipt of the Goods by the Carrier at the port of loading and the time of delivery by the Carrier at the port of discharge, or during any prior or subsequent period of carriage by Underlying Carriers or period of custody by Sub-Contractors, the liability of the Carrier shall be determined in accordance with the appropriate Hague Rules and /or other Legislation as provided in the provisions of Clause 5A above of this Bill.

(C) Responsibility for Through Transportation. Where the place of receipt or place of delivery as set forth herein are inland points or ports not directly served by the Carrier the responsibility of the Carrier with respect to the Through Transportation of the Goods shall be as follows:

(1) With respect to Through Transportation from, to or within the United States where the Goods are in the custody of a Sub-contractor such Through Transportation will be governed by the provisions of Clause 5B above.

(2) In the event Clause 5B is held inapplicable to such Through Transportation from, to or within the United States then Carrier's liability will be governed by and subject to the terms and conditions of the Sub-contractor's bill of lading or waybill and/or the ICC Uniform Bill of Lading together with the Subcontractor's Tariff which shall be incorporated herein as if set forth at length. Notwithstanding the foregoing, in the event there is a private contract between the Carrier and a Sub-Contractor, responsibility for such Through Transportation will be governed by the terms and conditions of said contract which shall be incorporated herein as if set forth at length and copies of said contract(s) shall be available to the Merchant at any office of the Carrier upon request.

(3) With respect to road carriage between countries in Europe according to the Convention on the Contract for the International Carriage of Goods by Road (CMR),

A00161

11/26/2007 15:18   9831229   GUTTERMAN ASSOCIATES   PAGE 06

dated May 19, 1956, and during rail carriage between countries in Europe according to the International Agreement on Railway Transports (CIM) dated February 25, 1961.

(4) With respect to rail or road carriage within a European country then according to the internal law of such state and/or any International Convention which is compulsorily applicable by the laws of such state. In the absence of such laws or conventions then according to the Sub-contractors contracts of carriage and tariffs, if any. Notwithstanding the above provision, road carriage in the United Kingdom according to the Conditions of Carriage 1998 of Road Haulage Association Limited.

(5) With respect to carriage by road in Japan, according to the Standard Japanese Road Transportation Clauses (SJRTC). With respect to carriage by rail in Japan, according to the Japanese Railway Transportation Business Law and Ministerial Ordinance for Railway Transportation.

(6) With respect to inland transportation of the Goods other than as provided in subparagraphs (1) through (5) supra, then according to the provisions of any International Convention or National Law which is compulsorily applicable in the country where the inland transportation took place or, if no such law or convention is applicable, then according to the Sub-contractor's tariff or any contract existing between the Sub-contractor and the Carrier.

(D) Extent of Liability for Through Transportation. In any event, the liability of the Carrier shall under no circumstances whatsoever be greater than that of the Sub-contractor under said Sub-contractors' contract with the Carrier, and the Carrier shall be entitled to all the rights, defenses, limitations and exemptions from liability contained therein.

(E) Subrogation. When any claims are paid to the Merchant by the Carrier, the Carrier shall be automatically subrogated to all rights of the Merchant against all others, including Underlying Carrier's, on account of such loss or damage.

(F) In the event an action is brought in a jurisdiction in which the relevant provisions of clause 5 (A) - (E) of this Bill which are applicable to such claim are held to be unenforceable pursuant to local law then liability for such claim shall be determined according to the internal law of the jurisdiction in which the action is brought.

6. General Limitations.
(1) The Carrier does not undertake that the Goods shall arrive at the port of discharge or place of delivery at any particular time or to meet any particular market or use and save as provided in Clause 5 the Carrier shall in no circumstances be liable for any indirect or consequential loss or damage caused by delay.

(2) Save as otherwise provided herein, the Carrier shall in no circumstances be liable for direct or indirect or consequential loss or damage arising from any other cause.

A00162

(3) The Carrier shall be entitled to the full benefit of all rights and immunities and all limitations of, or exemptions from, liability provided in the London Convention of 1976. Notwithstanding the foregoing, if local law makes the Brussels Convention of 1957 mandatorily applicable, then said latter Act will be applicable under this Bill. The Carrier shall also be entitled to the full benefit of all rights and immunities and all limitations of, or exemptions from liability contained in any national law of any nation whose laws shall be applicable.

(4) Without waiver or limitation of any exemption from or limitation of liability afforded by law or by this Bill and pursuant to the United States Fire Statute, 46 U.S.C., Sec. 182, neither Carrier nor any corporation owned by, subsidiary to, or associated or affiliated with Carrier shall be liable for any loss or damage wheresoever and whensoever occurring by reason of any fire whatsoever, including that occurring before loading on or after discharge from the Ship or while the Goods are in the custody of an Underlying Carrier, unless such fire shall have been caused by the design or neglect or by the actual fault or privity of Carrier or such corporation, respectively. In any situation where such exemption from liability may not be permitted by law neither Carrier nor such corporation shall be liable for any such loss or damage by fire unless caused by negligence, including that imputed by law, for which Carrier or such corporation is liable, respectively.

7. Amount of Compensation and Limitation of Liability.
(1) All claims for which the Carrier may be liable shall be adjusted and settled on the basis of the net invoice value of the Goods plus freight and insurance. Notwithstanding the foregoing it is agreed that in no event shall this clause operate to increase the extent of the Carrier's liability beyond the applicable market value at the port of discharge or place of delivery, if that be less than the net invoice value plus freight and insurance. In no event shall the Carrier be liable for any loss of profit or any consequential loss.

(2) In the event this Bill covers Goods moving to or from a port or final destination in the United States, the Carrier's limitation of liability in respect to the Goods shall in no event exceed US$ 500 per package or, when the Goods are not shipped in packages, US$500 per customary freight unit. In the event the foregoing would be held inapplicable under the local law of the jurisdiction in which legal proceedings are brought and if the Goods covered by this Bill are subject to the Hague Rules or any amendments thereto, including the Hague Visby Amendments, then Carrier's liability in no event shall exceed the greater of 2 SDRs per kilo of gross weight of the Goods lost or damaged or 667 SDRs per package. The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods, and that higher compensation than that provided herein may not be claimed unless the nature and value of such Goods\ have been declared by the Merchant before shipment and agreed to by the Carrier and inserted in this Bill and any applicable Ad Valorem freight rate, as set out in Carrier's tariff, is paid.

(3) If the actual value of the Goods per package or per customary freight unit exceeds such declared value, the value shall nevertheless be deemed to be the declared value. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value. In

A00163

any case, if the declared value is higher than the actual value, the Carrier shall in no event be liable to pay compensation higher than the net invoice value of the Goods plus freight and insurance.

8. Notice of Claim and Time for Suit. Unless notice of loss or damage and a general nature of such loss or damage be given in writing to the Carrier at the port of discharge or place of delivery before or at the time of delivery of the Goods, or, if the loss or damage be not apparent, within three consecutive days after delivery, the Goods shall be deemed to have been delivered as described in this Bill. In any event, except as provided in the next sentence, the Carrier shall be discharged from all liability in respect of non-delivery, mis-delivery, delay, loss or damage unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered. Where the damage occurs in the custody of a Sub-Contractor during Through Transportation, the Carrier and the Sub-Contractor shall be\ discharged from all liability in respect of non-delivery, mis-delivery, delay, loss or damage unless notice of claim is filed and suit is brought within the time periods prescribed by the local laws set forth in Clause 5 (C) (1) - 5 (C) (6) of this Through Bill.

9. Defence and Limits for the Carrier. The defence and limits of liability provided for in this Bill shall apply in any action against the Carrier for loss or damage to the Goods whether the action be founded in contract or in tort.

10. Shipper-Packed Containers. If a Container has not been filled, packed, stuffed or loaded by the Carrier, the Carrier shall not be liable for loss or damage to the contents and the Merchant shall indemnify the Carrier against any loss, damage, liability or expense incurred by the Carrier, if such loss, damage, liability or expense has been caused by:- (a) the manner in which the Container has been filled, packed, stuffed or loaded; or (b) the unsuitability of the contents for carriage in Containers; or (c) the unsuitability or defective condition of the Container arising without any want of due diligence on the part of the Carrier to make the Container reasonably fit for the purpose for which it is required; or (d) the unsuitability or defective condition of the Container which would have been apparent upon reasonable inspection by the Merchant at or prior to the time when the Container was filled, packed, stuffed or loaded, or (e) the discovery of any drugs, narcotics or other illegal substances within Containers packed by the Merchant or inside Goods supplied by the Merchant, and shall indemnify the Carrier in respect thereof. Any reference in this Bill to Shipped on Board or Clean on Board relates solely to the Containers and not to the contents thereof. This Bill shall be subject to Section 80113 of the U.S. Federal Bills of Lading Act, 49 U.S.C. (The Pomerene Act) and it is agreed that the Carrier is entitled to that section's full protection for the entire period the Goods are in the custody of the Carrier including pre-loading and post-discharge periods.

11. Inspection of Goods. The Carrier shall be entitled, but under no obligation, to open any Container at any time and to inspect the contents. If it thereupon appears that the contents or any part thereof cannot safely or properly be carried further, either at all or without incurring any additional expense or taking any measures in relation to the

A00164

11/26/2007 15:10   9991229   GUTTERMAN ASSOCIATES   PAGE 09

Container or its contents or any part thereof, the Carrier may abandon the transportation thereof and/or take any measures and/or incur any reasonable additional expense to carry or to continue the carriage or to store the same ashore or afloat under cover or in the open, at any place, which storage shall be deemed to constitute due delivery under this Bill. The Merchant shall indemnify the Carrier against any reasonable additional expense so incurred.

12. Description of Goods. The Carrier does not have facilities to weigh sealed Containers at the loading port and has neither inspected the contents of nor weighed the Containers. Any statements on this Bill relating to marks and numbers, number and kind of packages, description, quantity, quality, weight, measure, nature, kind, value or other particulars of the contents of such Container(s) are as furnished by the Merchant and are unknown to the Carrier and the Carrier accepts no liability in respect thereof. The acknowledgement of the Carrier is confined to the number and apparent order and condition of the Container(s).

13. Merchant's Responsibility.
(1) The Merchant warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Merchant on receipt of this Bill and that such particulars and any other particulars furnished by or on behalf of the Merchant are correct.

(2) The Merchant shall indemnify the Carrier against all loss, damage and expenses arising or resulting from inaccuracies in, or inadequacy of, such particulars. The right of the Carrier to such indemnity shall in no way limit his responsibility and liability under this Bill to any person other than the Merchant.

(3) Containers, pallets or similar articles of transport supplied by or on behalf of the Carrier shall be returned to the Carrier in the same order and condition as handed over to the Merchant, normal wear and tear excepted, with interiors clean and within the time prescribed in the Carrier's Tariff or elsewhere. The Merchant of the Goods shall be jointly and severally liable for any loss of, damage to, or delay incurred during the period between handing over to the consignee and return to the Carrier.

14. Freight and Charges.
(1) Freight shall be payable, at Carrier's option, on gross intake weight or measurement, or gross discharge weight or measurement, or ad valorem basis, or package or customary freight unit basis or any other applicable rate as set forth in Carrier's Tariff. Freight may be calculated on the basis of the description of the Goods furnished by the Merchant, but Carrier may at any time, weigh, measure and value the Goods and open packages or customary freight units to examine contents. In case the Merchant's description is found to be erroneous and additional freight is payable, the Merchant shall be liable for any additional freight and expense incurred in examining, weighing, measuring, fumigating and valuing the Goods.

A00185

8

(2) Full freight to the port of discharge or in case of Through Transportation to place of delivery named herein and all advance charges against the Goods shall be considered completely earned on receipt of the Goods by the Carrier or Underlying Carrier as the case may be, whether the freight or charges be prepaid or be stated or intended to be prepaid or to be collected at port of discharge or destination or subsequently, and the Carrier shall be entitled absolutely, to all freight and charges, whether actually paid or not, and to receive and retain them under all circumstances whatever, the Ship and/or the Goods lost or not lost, or the voyage changed, broken up, frustrated or abandoned. Full freight shall be paid whether the Goods be damaged or lost, or packages or customary freight units be empty or partly empty.

(3) All freight and charges shall be paid in full and without any offset, counterclaim or deduction, in the currency named in this Bill or, at the Carrier's option, in its equivalent in local currency at bank demand rates of exchange in New York as of the date payment of freight shall be due hereunder. Any error in freight or in charges or in the classification herein of the Goods is subject to correction, and if on correction, the freight or charges are higher, Carrier may collect the additional amount.

(4) The Merchant of the Goods shall be jointly and severally liable to Carrier for the payment of all freight, Bunker Adjustment Factor (BAF), Currency Adjustment Factor (CAF), Terminal Handling Charge (THC), demurrage, detention, General Average, salvage and other charges, including but not limited to court costs, expenses and reasonable attorney's fees incurred in collecting sums due to the Carrier. Payment of ocean freight and charges to a freight forwarder, broker or anyone other than the Carrier, or its authorized agent, shall not be deemed payment to the Carrier and shall be made at payer's sole risk.

15. Lien. The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier under this Bill or any other contracts with the Merchant and expenses incurred by the Carrier for the account of the Merchant and for General Average and Salvage contributions to whomsoever due and for the cost of recovering the same and shall be for the account of the Goods and the Merchant jointly and severally and the Carrier shall have the right in its absolute discretion to dispose of the Goods and/or to sell the Goods by public auction or private treaty without notice to the Merchant.

16. Optional Stowage.
(1) The Goods may be stowed by the Carrier in Containers or similar articles of transport used to consolidate Goods.

(2) Goods stowed in Containers whether by the Carrier or the Merchant, may be carried on or under deck without notice to the Merchant. Goods (other than live animals) stowed in any covered-in space or loaded in Containers, vans or trailers carried on deck shall be deemed to be stowed under deck for all purposes, including General Average and the COGSA, the Hague Rules or other compulsorily applicable legislation

A00166

17. Deck Cargo. Goods which are stated herein to be carried on deck, whether or not carried on deck, are carried without responsibility on the part of the Carrier for loss or damage of whatsoever nature arising during carriage by sea whether caused by unseaworthiness or negligence or any other cause whatsoever.

18. Special Container.
(1) The Carrier shall not undertake to carry the Goods in refrigerated, heated, insulated, ventilated or any other special Container(s) nor to carry special Container(s) packed by or on behalf of the Merchant, as such; but the Carrier will treat such Goods or Container(s) only as ordinary goods or dry Container(s) respectively, unless special arrangements for the carriage of such Goods or Container(s) have been agreed to in writing between the Carrier and the Merchant and unless such special arrangements are noted on the face of this Bill and all special freight, as required, has been paid. The Carrier shall not accept responsibility for the function of special Container(s) supplied by or on behalf of the Merchant.

(2) As regards the Goods which have been agreed to be carried in special Container(s), the Carrier or its Sub-contractors shall not be responsible for control and care of the refrigeration units of such Container(s) when the Containers are not in the actual possession of the Carrier. The Carrier does not warrant the refrigerating machinery and the Carrier shall not be liable for any loss of or damage to the Goods caused by latent defect in the refrigeration equipment.

(3) If the Goods have been packed into refrigerated Container(s) by the Carrier and the particular temperature range requested by the Merchant is inserted in this Bill, the Carrier will set the thermostatic controls within the requested temperature range, and will exercise due diligence to maintain such temperature plus or minus three degrees C.

(4) If the cargo received by the Carrier is refrigerated Container(s) into which the contents have been packed by or on behalf of the Merchant, it is the obligation of the Merchant to stow the contents properly and set the thermostatic controls exactly. The Carrier shall not be liable for a loss of or damage to the Goods arising out of or resulting from the Merchant's failure in such obligation.

19. Rust Condensation, etc. It is agreed that superficial rust, oxidation or condensation inside the Container or any like condition due to moisture is not the responsibility of the Carrier, unless said condition arises out of Carrier's failure to provide a seaworthy Container to the Merchant prior to loading. If the Merchant requires special arrangements or care for the carriage of such Goods, he must request same in writing to the Carrier and said arrangements must be noted on the face of this Bill and all special freight, as required, must be paid by the Merchant.

A00787

20. Methods and Routes of Transportation.
(1) The Carrier may at any time and without notice to the Merchant:- (a) use any means of transport or storage whatsoever; (b) transfer the Goods from one conveyance to another including trans-shipping or carrying the same on another vessel than the vessel

10

named overleaf; (c) proceed by any route in his discretion (whether or not the nearest or most direct or customary or advertised route) and proceed to or stay at any place or port whatsoever once or more often and in any order; (d) load and unload the Goods at any place or port (whether or not any such port is named overleaf as the port of loading or port of discharge) and store the Goods at any such place or port; (e) comply with any orders or recommendations given by any government or authority or any person or body acting or purporting to act as or on behalf of such government or authority or having under the terms of the insurance on the conveyance employed by the Carrier the right to give orders or directions.

(2) The liberties set out in sub-clause (1) may be invoked by the Carrier for any purpose whatsoever including undergoing repairs, towing or being towed, adjusting instruments, drydocking Force Majeure and assisting vessels in all situations, and anything done in accordance with sub-clause (1) or any delay arising therefrom shall be deemed to be within the contractual carriage and shall not be a deviation.

21. Matters Affecting Performance. If at any time the performance of the contract evidenced by this Bill is or is likely to be affected by any Force Majeure hindrance, risk, delay, difficulty or disadvantage of whatsoever kind which can not be avoided by the exercise of reasonable endeavours, the Carrier (whether or not the transport is commenced) may without notice to the Merchant treat the performance of this Contract as terminated and place the Goods or any part of them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full freight and charges on Goods received for transportation, and the Merchant shall pay any additional costs of carriage to and delivery and storage at such place or port.

22. War Risk Expenses. The Carrier may at any time and without prior notice to the Merchant impose surcharges to cover all extra expenses (including but not limited to extra insurance premiums and costs of diversion) incurred by the Carrier as a result of the outbreak of war, hostilities, war-like operations, civil war, civil commotion, blockade, piracy or revolution regardless of whether the Ship sailed or not sailed or is underway at the time the expenses are incurred.

23. Dangerous Goods.
(1) The Merchant undertakes not to tender for transportation of any Goods which are of a dangerous, inflammable, radioactive, or damaging nature without previously giving written notice of their nature to the Carrier and marking the Goods and the Container or other covering on the outside as required by any laws or regulations which may be applicable.

(2) If the requirements of sub-clause (1) are not complied with, the Merchant shall indemnify the Carrier against all loss, damage or expense directly or indirectly arising out of such Goods being tendered for transportation or handled or carried by the Carrier.

A00168

11

(3) Goods which are or at any time become dangerous, inflammable, radioactive or damaging may, at any time or place, be unloaded, destroyed, or rendered harmless without compensation, and if the Merchant has not given notice of their nature to the Carrier under (1) above, the Carrier shall be under no liability to make any General Average contribution in respect of such Goods.

24. Regulations Relating to Goods. As a result of Merchant's failure to comply with such regulations or requirements of Customs, port and other authorities, Merchant shall bear and pay all amounts incurred by the Carrier in complying with same as well as all duties, taxes, fines, imposts, expenses or losses incurred or suffered or by reason of any illegal, incorrect or insufficient marking, numbering or addressing of the Goods, and indemnify the Carrier in respect thereof.

25. Notification and Delivery.
(1) Any mention in this Bill parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

(2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff, failing which the Merchant is liable to pay for the detention/demurrage charges at the rate stipulated in the Carrier's applicable Tariff.

(3) If the Merchant fails to take delivery of the Goods or part of them upon expiration of the Tariffs prescribed free time, the Goods shall be deemed to have been delivered to the Merchant and the Carrier may with or without notice, but subject to its lien, store or warehouse the unclaimed Goods at the sole risk and expense of the Merchant and the Carrier shall have a lien for all expenses incurred. Thereupon, the liability of Carrier in respect of the unclaimed Goods shall cease.

(4) The Merchant's attention is drawn to the provisions concerning free storage time and cargo and equipment demurrage contained in the Carrier's applicable tariff.

(5) Notwithstanding anything else to the contrary contained within this Bill, where in accordance with local legislation all import cargo is discharged into the custody of the port authority or customs and such agencies in turn are solely responsible for the correct release of the cargo to the rightful consignee upon presentation of the pertinent documentation and payment of relevant customs duties, taxes, dues and any other charges, then in such countries neither the Carrier nor its agents or Sub-contractors will be responsible or liable in the event of incorrect release of the cargo after its delivery to the port authority or customs by the Carrier.

26. Both-to-Blame Collision. If the (carrying) Ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default in the navigation or the management of the carrying Ship, the Merchant undertakes to pay the Carrier or, where the Carrier is not the owner and in possession of the carrying Ship, to pay to the Carrier as trustee for the owner and/or demise charterer of the carrying Ship, a

AOR 169

sum sufficient to indemnify the Carrier and/or the owner and/or demise charterer of the carrying Ship against all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of or damage to, or any claim whatsoever of the Merchant, paid or payable by the other or non-carrying ship or her owners to the Merchant and set-off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying Ship or her owner or demise charterer or the Carrier. The foregoing provisions shall also apply where the owners, operators, or those in charge of any ship or ships or objects, other than, or in addition to, the colliding ships or objects, are at fault in respect to a collision, contact, stranding or other accident.

27. General Average. General Average shall be adjusted, stated and settled in London or any other place selected by the Carrier and according to the York/Antwerp Rules 1994 except Rule Paramount thereof and as to matters not provided for by those Rules, according to the laws and usages in London. The General Average Statement in every instance shall be prepared by Average Adjusters selected by the Carrier. In average adjustments, disbursements in foreign currency shall be exchanged into any currency at the Carrier's option at the rate prevailing at time of payment and allowances for damage to cargo claimed in foreign currency shall be converted at the rate prevailing on the last day of discharge at the port of final discharge of such damaged cargo. Average agreement or bond and such additional security as may be required by the Carrier, must be furnished before the delivery of the Goods. Such cash deposit, agreement or other security as the Carrier or its agents may consider requisite to cover the estimated contribution of the Goods and any salvage and special charges thereon shall be made by the Goods, or the Merchant(s) to the Carrier if required before delivery. Any deposits shall be payable at Carrier's option in the currency to be indicated on each occasion by the Carrier and be remitted to the Average Adjusters. Refunds of credit balance shall be paid in the same currency. It is understood that in every instance the Merchant shall remain responsible until the statement of average has been settled. In case of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatever, whether due to negligence or not for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Goods, the Merchant(s) shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charge incurred in respect to the Goods. If the salving ship is owned or operated by the Carrier, salvage shall be paid so fully as if the salving ship was owned or operated by strangers.

28. Variation of the Contract, etc. No servant or agent of the Carrier shall have power to waive or vary any term of this Bill unless such waiver or variation is in writing and is specifically authorized or ratified in writing by the Carrier.

29. Law and Jurisdiction.
(1) Non-U.S. Trades: Except as provided in sub-paragraph (2) below, all claims arising hereunder must be brought and heard solely in the High Court of London, England to the exclusion of any other forum. Except as provided elsewhere in this Bill, English law shall apply to such claims.

A00770

(2) U.S. Trades: Notwithstanding anything in sub-paragraph (1) above, where the shipment covered by this Bill is to or from the U.S.A. (including its districts, territories and possessions), all claims arising hereunder must be brought and heard solely in the U.S. District Court for the Southern District of New York, or if that court is not competent to hear the matter, in any competent state or city court located in New York County, to the exclusion of any other forum. Except as otherwise set out herein, United States law shall apply to such claims.

(3) This Law and Jurisdiction Clause is intended solely for the Carrier's benefit and may be unilaterally waived by the Carrier, in whole or in part, before or after proceedings are commenced, provided that any such waiver is unequivocal and reduced to a writing signed by one of the Carrier's authorized officers.

A00171