Barry N. Gutterman, Esq. (BG6410)
Robert Briere Esq. (RB6080)
Barry N. Gutterman & Associates, P.C.
Attorneys for Defendants
Union Pacific Railroad Company
and Evergreen Marine Corporation
60 East 42nd Street, 46th Floor
New York, New York 10165
(212) 983-1466

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MITSUI SUMITOMO INSURANCE CO., LTD.<br><br>Plaintiffs<br><br>v.<br><br>EVERGREEN MARINE CORPORATION and UNION PACIFIC RAILROAD COMPANY<br><br>Defendants. | ECF Case<br><br>**07 CV 3874**<br>**(Judge McMahon)** |

**AFFIDAVIT OF LIVIA KUO (EVERGREEN'S CLAIM HANDLER) IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF UP AND EVERGREEN'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

State of Taipei        )
                       ) ss:
County of Republic of China )

Livia Kuo, declares the following facts to be true and correct and known to her personally.

1. I am a Claims Handler for Evergreen Marine Corporation ("Evergreen") and have held that position since before the shipment at issue in the above referenced case. As a Claims Handler, my primary duties are to evaluate and analyze any claims of shippers relating to shipments moved by Evergreen, the movement records, any and

1

2

          all contracts between the parties to the shipment, analyze amounts claimed and salvage amounts, investigate facts underlying the claims, and communicate with the parties to the shipmen and the claimant.

2. I was the Claims Handler who was responsible for evaluating the shipper's claims relating to the shipment at issue in the above captioned case. I have reviewed and am personally familiar with the following documents relating to the shipment: the shipper's claim, the movement records and the governing contracts including Evergreen's Waybill No. EISU 025643005828 covering the shipment and Service Contract SC 20454, UP's then applicable MITA 2-A and UP's then applicable Exempt Rail Transportation Agreement ("ERTA") with Evergreen. I make the statements herein based on that personal knowledge.

3. Evergreen was hired by shipper Asmo Co. Ltd. to transport a shipment of car parts from Shimizu, Japan to Statesville, North Carolina (the "shipment.")

4. Evergreen issued a through waybill No. EISU 025643005828 to its shipper Asmo Co., Ltd.. covering the entire transit. Attached hereto and marked collectively as Exhibit A are two true and correct copies of the waybill face pages, one signed and the other unsigned pertaining to the shipment.

5. Attached hereto and marked as Exhibit B are true and correct copies of the relevant terms of the reverse side of Evergreen's Waybill No. EISU 025643005828 pertaining to the shipment as per Evergreen's website.

6. Attached hereto and marked as Exhibit C are true and correct copies of the terms of the service contract in place at the time of the shipment between Evergreen and Denso Corporation which names Asmo Co., Ltd. and Asmo North Carolina, Inc. as

affiliates who are authorized to utilize said service contract and which was incorporated by reference into Waybill No. EISU 025643005828.

7. Mitsui's subrogor, Asmo Co. expressly agreed to the following terms in Evergreen's waybill that: Sub-contractors include "underlying carriers" including "any rail carrier." (Ex B, ¶ 1 (13), (14).)

"4. Sub-Contracting. (1) <u>The Carrier shall be entitled to sub-contract on any terms the whole or any part of the carriage</u>...(2) In contracting for the following exemptions and limitations of and exoneration from liability, the Carrier is acting as agent and trustee for all other persons named in this clause. It is understood and agreed that, other than Carrier, <u>no ...Sub-Contractor is, or shall be deemed to be liable with respect to the Goods as carrier, bailee or howsoever</u>. If, however, it shall be adjudged that any one other than the Carrier is carrier or bailee of the Goods or under responsibility with respect thereto, <u>all exemptions and limitations of and exoneration from liability provided by law or by terms hereof shall be available to such other</u>...."

(Exhibit B, ¶ 4.)

"...if the carriage called for in this Bill is a shipment to or from the United States, <u>the liability of the Carrier or its Sub-contractor shall be exclusively determined pursuant to COGSA which is contractually incorporated into this Bill</u>. The provisions in the Hague Rules and COGSA (except as may be otherwise specifically provided herein) shall also govern before the Goods are loaded on and after they are discharged form the Ship, provided, however, that the Goods at said times were in the custody of the Carrier or any Sub-contractor."

(Ex. B, ¶ 5(A), emphasis added.)

"Responsibility for Port to Port Shipments. Where loss or damage has occurred ... <u>during any prior or subsequent period of carriage by Underlying Carriers or period of custody by Sub-Contractors, the liability for the Carrier shall be determined in accordance with the appropriate Hague Rules and/or other Legislation as provided in the provisions of Clause 5A above of this Bill</u>."

(Ex. B, ¶ 5(B), emphasis added.)

"With respect to Through Transportation Where the place of receipt or place of delivery as set forth herein are inland points or ports not directly served by the Carrier, the responsibility of the Carrier with respect to the Through Transportation of the Goods shall be as follows: (1) <u>With respect to Through Transportation from, to or within the United States where the Goods are in the custody of a Sub-Contractor such Through Transportation will be governed by the provisions of Clause 5B above</u>. (2) In the event

3

Clause B is held inapplicable to such Through Transportation from, to or within the United States then Carrier's liability will be governed by and subject to the terms and conditions of the Sub-contractor's bill of lading or waybill and/or the ICC Uniform Bill of Lading together with the Subcontractor's Tariff which shall be incorporated herein as if set forth at length. <u>Notwithstanding the foregoing, in the event there is a private contract between the Carrier and a Sub-Contractor, responsibility for such Through Transportation will be governed by the terms and conditions of said contract which shall be incorporated herein as if set forth at length and copies of said contract(s) shall be available to the Merchant at the office of the Carrier upon request.</u>"

(Ex. B, ¶ 5, emphasis added). Clause 5(D) "Extent of Liability For Though Transportation" provides:

"<u>In any event, the liability of the Carrier shall under no circumstances whatsoever be greater than that of the Sub-contractor under said Sub-Contractor's contract with the Carrier, and the Carrier shall be entitled to all the rights, defenses, limitations and exemptions from liability contained therein.</u>"

(Ex. B, ¶ 5(D).) Clause 7 "Amount of Compensation and Limitation of Liability" provides in pertinent part that:

"In the event this Bill covers Goods moving to or from a port or final destination in the United States, <u>the Carrier's limitation of liability in respect to the Goods shall in no event exceed $500 per package</u> or, when the Goods are not shipped in packages, U.S. $500 per customary freight unit. In the event the foregoing would be held inapplicable under the local law of the jurisdiction in which legal proceedings are brought and if the Goods covered by this Bill are subject to the Hague Visby Amendments, then Carrier's liability in no event shall exceed the greater of 2 SDRs per kilo of gross weight of the Goods lost or damaged or 667 SDRs per package. The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods, and that higher compensation than that provided herein may not be claimed <u>unless the nature and value of such Goods has been declared by the Merchant before shipment and agreed to by the Carrier and inserted in this Bill and any applicable Ad Valorem freight rate, as set out in Carrier's tariff, is paid.</u>"

(Ex. B, Evergreen BOL, at ¶ 7(2), emphasis added.)

8. Asmo had the opportunity to ship under a full value liability rate. (Ex. B, ¶ 7(2).) Asmo declined that offer in favor of a cheaper negotiated service contract freight rate, and then procured insurance from Mitsui to cover the shipment.

9. UP did not issue a separate domestic bill of lading for the rail carriage in this case.

4

10. 165 packages of cargo specified on the face of the through bill for the subject shipment were damaged. (Ex A. Face page.)

11. The total weight of the cargo at issue according to the face of the through bill was 35,234 kilograms. (Ex A. Face page.)

I swear that the foregoing is true and correct and known to me personally and that if called upon to do so, I would and could testify thereto competently in a court of law. Sworn to under penalty of perjury under the laws of the U.S.A this March 4, 2008 in Republic of China.

_____
Livia Kuo, Claims Handler
Evergreen Marine Corporation