**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MITSUI SUMITOMO INSURANCE CO., LTD.<br><br>                    Plaintiffs<br><br>v.<br><br>EVERGREEN MARINE CORPORATION and UNION PACIFIC RAILROAD COMPANY<br><br>                    Defendants. | ECF Case<br><br>**07 CV 3874**<br>**(Judge McMahon)** |

**DEFENDANTS UNION PACIFIC RAILROAD COMPANY AND EVERGREEN**
**MARINE CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT**
**OF THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Barry N. Gutterman, Esq.
Barry N. Gutterman & Associates, P.C.
Attorneys for Defendants
Union Pacific Railroad Company
and Evergreen Marine Corporation
60 East 42nd Street, 46th Floor
New York, New York 10165
(212) 983-1466
Bngassc@aol.com

**Table of Contents**

Table of Contents…………………………..…..……………………………………...i

Table of Authorities…………………………………………………………………..ii

   I.   Relevant Facts………………………………………………………………….1

   II.   Points and Authorities………………………………………..…………………1

   A.   Summary Judgment Standards…………………………………………..………1

   B.   49 USC Section 10709 Governs UP's Carriage –
        The Carmack Amendment Does Not Apply………………….……………………..2

   C.   Evergreen's Through Bill Of Lading Terms ……………………………………….7

   D.   Maritime Law Mandates Enforcement of The Package Limit …………………..…8

   E.   The Shipment Moved Under  a Through Bill of Lading With No
        Separate Domestic Bill of Lading Issued by UP ………………………………...9

   F.   Evergreen is Not Governed by The Carmack Amendment…………………………...12

   G.   Even if Carmack Applies, The Through Bill of Lading's Offer of Full Liability
        Rates Satisfied Any Alternative Offer Requirement……………………………..14

   H.   UP'S MITA 2-A Terms Warrant the Same Result……………………………….17

   I.   The Package Limit Applied…………………………………………………..19

   J.   The Package Limit Clauses are Unambiguous………………………………….19

   III.   Conclusion…..………………………………………………….……………20

## Table of Authorities

**Cases:**

*Altadis USA, Inc. v. Sea Star Line, LLC et al.*,
458 F.3d 1288 (11th Cir. 2006) ......................................................9, 10, 11, 12

*Am. Home Assurance Co. v. Hapag Lloyd Container Line, GMBH*,
446 F.3d 313 (2nd Cir. 2006) ...............................................................12

*Am. Road Service Co. v. Consolidated Rail*,
348 F.3d 565 (6th Cir. 2003) ...............................................................12

*Am. Rock Salt Co., LLC. v. Norfolk Southern Corp.*
180 F.Supp.2d 420 (WDNY, 2001).  ...................................................3

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ........................2

*Austin, Nichols & Co., Inc. v. The Cunard Steamship Ltd.*,
367 F.Supp. 947 (SDNY 1973) ............................................................15

*Baish v. Gallina*,
346 F.3d 366 (2d Cir. 2003). ) ............................................................2

*Bally, Inc. v. M.V. "ZIM AMERICA,"*
1993 U.S. DIST. LEXIS 926  ...............................................................16

*Bay State Shippers, Inc. v. Atchison Topeka & Santa Fe Ry. Co.*,
1995 U.S. Dist. LEXIS 30154 (C.D. Cal.1995) ..................................5

*Canon U.S.A. v. Norfolk Southern Ry.*,
936 F. Supp. 968 (D. Ga., 1996) ........................................................11

*Canon USA, Inc. v. Nippon Liner Sys., Ltd.*,
2007 U.S. Dist. LEXIS 14356 (N.D. Ill. 1992)  ................................13

*Capital Converting Equip. Inc. v. LEP Transport, Inc.*,
750 F.Supp. 862 (N.D. Ill. 1990) ......................................................12

*Consolidated Rail Crop. v. Sobiech*,
710 F .Supp. 988 (SDNY 1989) .........................................................5

*Continental Ins. Co. v. M/V Olympic Melody*,
2002 U.S. Dist. LEXIS 4220 (SDNY 2002) .....................................15

*Cooperative Shippers, Inc. v. Atchison Topeka & Santa Fe Ry. Co.*,
840 F.2d 447 (7th Cir. 1988). ...........................................................5

*Dow Chemical Co. v. UP Corp.*,
8 F.Supp. 2d 940 (S.D. Texas 1998). ..................................................................4

*E.W. Bowman, Inc. v. Norfolk Western Ry. Co.*,
483 F.Supp. 1322 (W.D. Pa. 1980) .................................................................12

*F.D. Import & Export Corp. v. M/V Reefer Sun et al.*,
248 F.Supp. 2d 240 (2nd Cir. 2002). ................................................................7

*Fine Foliage of Florida, Inc. v. Bowman Transportation*,
698 F.Supp. 1566 (M.D. Fla. 1988) .................................................................11

*Gateway v. Burlington N. & Santa Fe Ry*,
2002 US Dist LEXIS 14556. ..............................................................................4

*Glen Hunter & Assoc., Inc. v. Union Pacific Co.*,
135 Fed. Appx. 849 (6th Cir. 2005) ..................................................................5

*Home Assurance Co. v. Hapag Lloyd Container Line, Gmbh*,
2004 U.S. Dist. LEXIS 13500  (SDNY 2004.) ...............................................17

*Interamerican Logistics, Inc. v. CSX Intermodal, Inc.*,
1996 U.S. Dist. LEXIS 22472 (N.D. Ill.1996)  ..............................................12

*Insurance Co. of N. Am. v. SEALAND DEVELOPER*,
1989 U.S. Dist. LEXIS 8462 (SDNY 1989). ..................................................20

*King Ocean Cent. America v. Prescision Cutting Services*,
717 So. 2d 507 at 513 (Fla. 1988) ...................................................................13

*Kyodo U.S.A., Inc. v. Cosco North America Inc.*,
2001 WL 1835158 (C.D. Cal. 2001). ........................................................12, 13

*Marine Office of America v. NYK Lines*,
638 F.Supp. 393 (N.D. Ill. 1985)  ..................................................................12

*Missouri Pac. R.R. Co. v. Elmore & Stahl*,
377 U.S. 134 12 L. Ed. 2d 194, 84 S. Ct. 1142 (1964). ). ..............................15

*Mitsui Marine & Fire Ins. Co. Ltd. v. Hanjin Shipping Co., Ltd.*,
279 Ga. App. 689 (2006 Ga.) . .......................................................................11

*Mori Seiki USA, Inc. V. M.V. Alligator Triumph*,
920 F.2d 444 at 448 (9th Cir. 1993) . .............................................................12

*Mutual Life Ins. Co. v. Hill*,
193 U.S. 551, 24 S.Ct. 538, 540, 48 L.Ed. 788 (1904) . ...................................20

*Nebraska Wine & Spirits v. BNSF*,
1992 U.S. Dist. Lexis 17095 (W.D. Mo. 1992) . ...........................................12

*Neptune Orient Lines v. Burlington N. and Santa Fe*,
213 F.3d 1118 (9th Cir. 2000) . ......................................................................10, 11

*New York, New Haven & Hartford R.R. v. Nothnagle*,
346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (1958). . .........................................2

*Nippon Fire & Marine Insurance v. Skyway Freight Systems, Inc.*,
235 F.3d 53 (2d Cir. 2000.) . ......................................................................17, 18

*Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing*,
167 F.3d 99 (2d Cir. 1999). . ......................................................................9, 14

*Norfolk Southern Ry. Co. v. James N. Kirby, Pty Ltd. et al*,
543 U.S. 14, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004) . ....................8, 9, 10, 11, 12, 19

*PCI Transp., Inc. v. Fort Worth * W.R.R. Co.*,
418 F.3d 535 (5th Cir. 2005). . ........................................................................4

*Project Hope v. M/V ibn Sina*,
240 F.3d 67 (2d Cir. 2001) . ......................................................................13, 16

*Quasar Co., Div. of Matsushita Electric Corp. v. AT&SF Ry. Co.*
632 F. Supp. 1106 (U.S. Dist. Ill., 1986.) . ........................................................3

*Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*,
462 F.Supp.2d 1098 (C.D. Cal. 2006) . ...........................................................6

*Rexroth Hydraudyne B.V. Ocean World Lines, Inc.*,
2007 WL 541958 (SDNY 2007) . ...................................................................13

*Schoenmann Produce Co. v. Burlington Northern & Santa Fe Ry. Co.*,
420 F. Supp. 2d 757, 759 (D. Tex. 2006). ........................................................4

*Seguros Commercial America S.A. de C.V. v. American President Lines, Ltd.*
910 F. Supp. 1235 (S.D. Tex. 1995). . .............................................................12

*Shao v. Link Cargo (Taiwan) Ltd.*,
986 F.2d 700 (4th Cir. 1993) . ...................................................................10, 12

*Sompo Japan Ins. Co. of Am. v. Union Pacific Railroad Co.*,
456 F.3d 54 (2d Cir. 2006) . ...................................................5, 6, 10, 12, 13, 14, 15, 16, 17

*Stolt Tank Containers, Inc. v. Evergreen Marine Corp.*,
962 F.2d 276 (2nd Cir. 1992) . ...........................................................................................18

*St. Paul Fire and Marine Ins. Co. v. M.C. Western Mariner et al.*,
1999 U.S. Dist. LEXIS 12888 (SDNY 1999) . ...................................................................18

*Swift Textiles Inc. v. Watkins Motor Lines Inc.*,
799 F.2d 697 (11th Cir. 1986) *cert den.*, 480 U.S. 935 (1987) . ...........................10, 11, 12

*Tamini Transformatori S.R.L. v. UP RR*,
2003 U.S. Dist. LEXIS 616 (SDNY 2003). . .......................................................................5

*Tokio Marine & Fire Ins. Co., Ltd. v. Union Pacific Railway Co.*,
2003 U.S. Dist. LEXIS 24803 (C.D. Cal. 2003) . .............................................................12

*Tokio Marine & Fire Ins. Co., Ltd. v. Nippon Yusen Kaisha et al.*,
25 F.Supp.2d 1071 (C.D. Cal. 1997) . .............................................................................12

*Tokio Marine & Fire Ins. Co. v. Hyundai Merchant Marine Co.*,
717 F.Supp. 1307 (N.D.Ill. 1989) . ...............................................................................6, 12

*Tokio Marine & Fire Ins. Co. Ltd. v. Mitsui O.S.K. Lines, Ltd et al.*,
2003 U.S. Dist. LEXIS 24803 . ….. ..................................................................................6

*Transatlantic Marine Claims Agency, Inc. v. M/V OOCL Inspiration*,
 137 F.3d 98 (2nd Cir. 1998). . .........................................................................................16

*Yamazen U.S.A., Inc. v. Chicago & Nw. Transp. Co.*,
790 F.2d 621 (7th Cir. 1986.) . .........................................................................................3

**Statutes and Rules:**

28 USC §1331 . ...................................................................................................................4

28 USC §1337(b) . ...............................................................................................................4

46 USC §13071. ................................................................................................................16

46 USC §30706. . ..............................................................................................................16

49 USC §702 . .....................................................................................................................3

49 USC §10709. ..............................................................2, 3, 4, 5, 6, 11, 12, 13, 14, 17, 19

49 Subtitle IV Part A...........................................................................................3

49 USC §§10101 et seq. . .................................................................................3, 5

49 CFR § 1090.2. ..................................................................................................3

49 CFR § 1039(b)(2) .............................................................................................5

## **Other:**

2002 U.S. Briefs 1028 at *9, 2004 U.S. S.Ct. Briefs LEXIS 651.......................................8

2002 U.S. Briefs 1028 at *4-5; 2004 U.S. S.Ct. Briefs LEXIS 274 ..................................9

2002 U.S. Briefs 1028 at * 17; 2004 U.S. S.Ct. Briefs LEXIS 376 ..................................9

2002 U.S. Briefs 1028 at *10, 2004 U.S. S. Ct. Briefs LEXIS 427 ..................................9

2002 U.S. Briefs 1028 at * 23, 2004 U.S. S.Ct. Briefs LEXIS 369 ..................................9

ICC Ex Parte Order No. 387, 367 ICC 9, 10-11 . ................................................5

ICC Ex Parte Order No. 390 ............................................................................15

## I.  Relevant Facts

In March of 2006, Evergreen was hired by Asmo Co., Ltd. ("Asmo") to transport a shipment of car parts from Shimizu, Japan to Statesville, North Carolina (the "shipment.") (Affidavit of Livia Kuo of Evergreen dated March 4, 2008 ("EV-C"), at ¶ 3.)  Evergreen issued a through waybill covering the entire transit which incorporated its bill of lading and tariff terms. (EV-C, ¶ 4.)  Evergreen subcontracted with UP to move the cargo from California to North Carolina under UP's Exempt Rail Transportation Agreement ("ERTA").  Affidavit of Patrick Chen of Evergreen dated March 4, 2008, ("EV-M") at ¶3); Affidavit of T.D. Sheldon dated March 3, 2008 (hereafter "TDS") at ¶¶ 4-6.)  The ERTA specified UP's then applicable Exempt Circular Master Intermodal Transportation Agreement ("MITA 2-A") would apply.  (TDS ¶ 6, Ex. A, ¶3, EV-M, ¶3.)  Evergreen carried the shipment over 5400 miles from Shimizu to Los Angeles where UP received it and issued two electronic data interchange "EDI" receipts or waybills to Evergreen for the movement. (EV-M, at ¶ 4; TDS, ¶ 5.)   The cargo was damaged in a derailment in Arkansas on UP's line. (TDS, ¶ 9.)  The relevant facts are set forth in UP's additional facts presented in the latter portion of its response to Plaintiff Mitsui Sumitomo Insurance Company's ("Mitsui") Rule 56.1 Statement, as well as UP's Rule 56.1 Statement filed in support of its cross-motion for summary judgment.

## II.  Points and Authorities

### A.  Summary Judgment Standards

UP and Evergreen both assert the affirmative defense that they are entitled to the limitations of liability.  (UP's Answer at 5th Affirmative Defense; Evergreen's Answer at Evergreen's First Affirmative Defense (that COGSA and the limitations in the Waybill apply.) (Maz. Aff. Exs. 2 and 3.)  UP and Evergreen are entitled to partial summary judgment for the $500

per package limitation of liability in the Evergreen Sea Waybill or alternatively, in the MITA 2-A, or alternatively, that if the $500 per package limitation is found to be inapplicable, that they are entitled to the alternative limitation of liability of 2 SDR per kilo of cargo.

A motion for summary judgment may be granted where the court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. Rule Civ. Pro., 56(C); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Baish v. Gallina*, 346 F.3d 366, 371 (2d Cir. 2003).

**B.     49 USC Section 10709 Governs UP's Carriage –
The Carmack Amendment Does Not Apply**

The MITA 2-A specifically states that it was entered into under 49 USC section 10709:

"This MITA and any agreements, price documents or contracts that reference this MITA have been made under 49 USC section 10709"

(TDS, ¶ 7, Ex. C, Item 110(D), EV-M, ¶5, Ex. 3, Item 110(D).) Section 10709 takes the transportation of the instant shipment entirely outside of federal regulation. In 1906, Congress enacted the Carmack Amendment[1] under the guidance of the former Interstate Commerce Commission ("ICC"). Carmack created a national scheme of liability against rail carriers to compensate shippers for cargo losses on interstate shipments. *See New York, New Haven & Hartford R.R. v. Nothnagle*, 346 U.S. 128, 131, 73 S.Ct. 986, 97 L.Ed. 1500 (1958). Seventy years later, to promote competition in the rail industry, the Railroad Revitalization and Regulatory Reform Act, Pub. L. No. 94-210, 90 Stat. 31 (1976) was enacted allowing the ICC to

---

[1] Hereafter "Carmack", Act of June 29, 1906, ch. 3591, 34 Stat. 584 (1906), now at 49 USC §11706 (as it relates to rail carriers).

exempt various rail services from federal regulation.  The later Staggers Rail Act[2] further

continued deregulation but imposed a limitation on the railroad's freedom to contract:

> 'No exemption order issued pursuant to this section shall operate to relieve any rail carrier
> from an obligation to provide contractual terms or liability and claims which are consistent
> with the provisions of section 11707. …"

*Yamazen U.S.A., Inc. v. Chicago & Nw. Transp. Co.*, 790 F.2d 621, 622-623 (7th Cir. 1986.) The

ICC then exempted all intermodal transit from federal regulation[3] but retained its jurisdiction

over such shipments. *Quasar Co., Div. of Matsushita Electric Corp. v. AT&SF Ry. Co.* 632 F.

Supp. 1106, 1111 (U.S. Dist. Ill., 1986.)  Railroads contracting to move exempt shipments under

a Staggers contract were required to offer shippers the election of shipping under Carmack.

*Yamazen,* at 623.  On January 1, 1996, the ICC was replaced by the Surface Transportation

Board ("STB") pursuant to the Interstate Commerce Commission Termination Act ("ICCTA").

49 USC §702 (1997 Supp.)  Congress also enacted 49 USC §10709 that year.[4]  The shipment at

issue was carried under UP's §10709 contract.  Section 10709 provides in pertinent part that:

> "(b) **A party to a contract entered into under this section shall have no duty in
> connection with services provided under such contract other than those duties
> specified by the terms of the contract**.
>
>  (c) (1) **A contract that is authorized by this section, and transportation under such
> contract, shall not be subject to this part , and may not be subsequently challenged
> before the Board or in any court on the grounds that such contract violates a provision
> of this part…"**

The "part" referred to is Title 49 Subtitle IV Part A, 49 USC §§ 10101 et seq. regulating

railroads.  *Am. Rock Salt Co., LLC. v. Norfolk Southern Corp.*,180 F.Supp.2d 420, 425

---

[2]   49 USC § 10502, the "Staggers Amendment" to the (former) Interstate Commerce Act,
formerly at 49 USC § 10505(e).

[3]   See 49 CFR § 1090.2 (COFC transport (i.e., "container on flat car" transport) is "exempt
from the requirements of 49 USC subtitle IV...")

[4] Enacted Jan. 1, 1996, Act Dec. 29, 1995, P.L. 104-88,§ 2, 109 Stat. 804.

(W.D.N.Y. 2001).  Because both Carmack and the Staggers Amendment fall within Part A,

contracts under §10709 are not subject to Carmack or to the Staggers Amendment.

> "Pursuant to 49 USC § 10709…**Any liability for loss under such contract flows directly from the terms of the contract and not the Carmack Amendment, which no longer governs the relationship**.  *See Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co. Ltd.* 1999 U.S. Dist. WL 1122998 (C.D. Cal., June 18, 1999).  The purpose of the statute is to allow carriers – in certain situations – **to avoid federal oversight and control of rail contracts**.  *See Dow Chemical Co. v. Union Pacific Corp.*, 8 F. Supp. 2d 940, 941 (S.D. Tex. 1998)."

*Gateway v. Burlington N. & Santa Fe Ry*, 2002 US Dist LEXIS 14556,*7, *8. (Emphasis added).

> "The very purpose of section 10709 is to allow contracting parties to avoid the entire federal regulatory scheme, of which the Carmack Amendment is a part."

*Dow Chemical Co. v. UP Corp.*, 8 F. Supp. 2d 940, 942 (S.D. Texas 1998). Carmack rates need

not be offered since the statute allows parties to contract for rail shipments with different rates

and conditions than Carmack requires. *Schoenmann Produce Co. v. Burlington Northern &

Santa Fe Ry. Co.*, 420 F. Supp. 2d 757, 759 (D. Tex. 2006). Section 10709 contracts and

Staggers Act contracts are distinguishable in several other ways.  Carmack, which applies if the

shipper elects Carmack under a Staggers Act contract, has a mandatory venue provision.[5]  In

contrast, §10709 permits parties to specify their venue.[6] Carmack cases are removable under 28

USC §1331 and 28 USC §1337(b). Section 10709, in contrast, "does not confer original

jurisdiction on district courts based on section 1331 or 1337 of title 28, United States Code."[7]  A

shipper alleging a breach of a Staggers Act contract must sue under Carmack.  In a suit under

§10709, Carmack does not apply. *Dow Chemical, supra*, 941.

Moreover, §10709 contract status is established where the contract states by its own terms

that it was entered under §10709. *See PCI Transp., Inc. v. Fort Worth * W.R.R. Co.*, 418 F.3d

---

[5] §11706(d).
[6] §10709(c)(2).
[7] §10709 (c)(2).

535, 541 (5th Cir. 2005).[8]  UP's contract with Evergreen was expressly made under §10709. As

§10709 makes clear, contracts thereunder cannot be challenged on the basis that they violate any

provision within 49 USC §§ 10101 et seq and the railroad has "no duty...other than those duties

specified by the terms of the contract." §10709(b).  Mitsui attempts to avoid this clear statement

of law by citing *Tamini Transformatori S.R.L. v. UP RR,* 2003 U.S. Dist. LEXIS 616 (SDNY

2003). However, the *Tamini* court incorrectly imported the alternative offer requirement of

Staggers into §10709 stating:

> "UP is certainly correct to the extent that if [it's contract] is a valid contract under 49 USC
> §10709, then the Carmack protections (including full liability) do not apply.  However, UP
> reads 49 USC §10709 in a vacuum, without regard to the other statutes concerning
> common rail carriers.  Specifically, UP ignores the fact that 49 USC § 10502(e) mandates
> that before an alternative contract is agreed to the statutory Carmack terms must be
> offered."

*Tamini*, supra, * 23-24.  The court cited three cases to support its holding, but <u>not one of those</u>

<u>cases involved a §10709 contract</u>![9]  In fact, because only the terms of the §10709 contract can

mandate of the parties' duties, and because §10709 contracts cannot be challenged on the basis

that they do not comport with Carmack or the Staggers Amendment, to require an alternative

offer of Carmack under a §10709 contract is plainly erroneous.  *Tamini* is a flawed decision.

Mitsui argues that *Sompo Japan Ins. Co. of Am. v. Union Pacific Railroad Co.*, 456 F.3d 54

---

[8] Citing *Ex Parte No. 387, 367* ICC 9, 10-11 (S.T.B. Oct. 8, 1982) implementing the
predecessor to §10709 (§10713) addressing which contracts are subject to the section and
clarifying that any contract thereunder "must specifically state that it is subject to this
section."(49 C.F.R. 1039(b)(2).) *See also Glen Hunter & Assoc., Inc. v. Union Pacific Co. et.
al.*, 135 Fed. Appx. 849, 854 (6th Cir. 2005).

[9] *Tamini* cited *at *24-25* the following cases - not one of which involved a §10709 contract*:
*Consolidated Rail Crop. v. Sobiech,* 710 F .Supp. 988, 990 (SDNY 1989); *Bay State Shippers,
Inc. v. Atchison Topeka* & Santa Fe Ry. Co., 1995 U.S. Dist. LEXIS 30154, No. 95 Civ., 5586,
1995 WL 865481, at * 4 (C.D. Cal. Nov. 30, 1995); *Cooperative Shippers, In.c v. Atchison
Topeka* & Santa Fe Ry. Co., 840 F.2d 447, 452 (7th Cir. 1988).

(2d Cir. 2006) (hereafter "*Sompo I*") and two decisions following it should govern. [10/11] However, those cases are inapposite since neither decision considered the effect of a §10709 contract. [12]  *Sompo I* is based on the premise that the railroad is subject to Carmack.  That premise does not arise in a §10709 contract case.

    *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*, 462 F.Supp.2d 1098 (C.D. Cal. 2006) (appeal filed Dec. 12, 2006) is directly on point. The court in *Regal-Beloit* enforced a forum selection clause in ocean carrier K-Line's through bill in UP and K-Line's favor.  Carmack's venue provision differed from the through bill of lading's venue provision.  However, the shipper argued UP and K-Line were subject to Carmack.  The court enforced the through bill of lading in UP and K-Line's favor, finding that Carmack was inapplicable because K-Line and UP's contract (also under the MITA) was a §10709 contract. *Id.,* 1104.  There was no requirement that a §10709 also be cited in the ocean carrier's through bill of lading as Mitsui suggests.

    Similarly, in *Tokio Marine & Fire Ins. Co. Ltd. v. Mitsui O.S.K. Lines, Ltd.*, 2003 U.S. Dist. LEXIS 24803 at * 7 the district court enforced a COGSA $500 through bill package limit in UP favor finding that Carmack did not apply because UP's contract with its shipper was made under §10709.  Id., *4, *7.  The contract in the instant case clearly falls within §10709 and neither Carmack or the Staggers Amendment apply.  Accordingly, UP and Evergreen are entitled

---

[10] *Sompo Japan Ins. Co. v. UP RR Co.*, No. 03-1604 (CM), 2007 WL 2230091 (SDNY, Aug. 2, 2007)(appeal filed). In that case, UP raised the section 10709 issue for the first time on remand. This court held that it was without authority to consider that argument due to the limited scope of the Second Circuit's remand order.  (Aff. of Barry N. Gutterman ("BNG") dated 3/06/08 at ¶ 1.)

[11]  *Sompo Japan Ins. Co.  v. UP RR Co.*, No. 02-9523 (DB) (on appeal) §10709 was neither considered nor commented on by Judge Batts. (BNG Affidavit ¶ 2.)

[12]  (BNG Affidavit, ¶¶ 1-2.)

to enforce the package limit.[13]

## C.  Evergreen's Through Bill of Lading Terms

Mitsui's subrogor (Asmo) and Evergreen agreed to the following through bill of lading terms.  Sub-contractors include "underlying carriers" including "any rail carrier." (EV-C, ¶ 7, Ex B, ¶ 1 (13), (14).)  Evergreen can sub-contract on any terms.  Subcontractors cannot be held liable for damages but, if they are, they are entitled to all of the protections and liability limits in the through bill of lading. (Id., ¶ 4 (1), (2).)  On shipments inbound to the U.S., Evergreen's and UP' liability is governed by COGSA for through delivery. (Id., ¶ 5(A).)  For through transport, ¶5(B) applies which makes ¶5(A) applicable (i.e., COGSA applies.)  In the event ¶5(B) is held not to apply, UP's contract or the ICC Uniform Bill of Lading ("UBOL") and UP's contract apply, and are deemed incorporated by reference.  (Id., ¶5(A).)  Moreover:

> "Notwithstanding the foregoing, in the event there is a private contract between the Carrier and a Sub-Contractor, responsibility for such Through Transportation will be governed by the terms and conditions of said contract which shall be incorporated herein as if set forth at length and copies of said contract(s) shall be available to the Merchant at the office of the Carrier upon request."

(Id., ¶ 5).  The through bill of lading expressly grants to Evergreen and to UP all of the benefits of UP's contract with Evergreen. (Id., ¶ 5(D).)  It also limits the carrier's liability to $500 per package unless the shipper declares a higher value and pays any additional freight charges. (*Id.*, ¶ 7(2).)  Where the law precludes application of the COGSA package limit, the liability limit is 2 special drawing rights "SDRs" per kilo of gross weight of lost or damaged cargo.  (*Id.*, ¶ 7(2).) Mitsui affirmed the through bill of lading by suing on it.  *F.D. Import & Export Corp. v. M/V Reefer Sun et al.*, 248 F.Supp. 2d 240, 248-49 (2nd Cir. 2002). [14]

---

[13]   See also, UP's Response to Mitsui's Rule 56.1 statement and UP's 56.1 statement filed in support of UP's cross-motion for summary judgment filed concurrently herewith.

[14] Mitsui complained the action involved "…intermodal carriage… under a through bill

**D.    Maritime Law Mandates Enforcement of the Package Limit**

Through bills of lading governing international shipments with "substantial" overseas carriage are maritime contracts governed by maritime law, even where losses occur during rail carriage. *Norfolk Southern Ry. Co. v. James N. Kirby, Pty Ltd. et al*, 543 U.S. 14 at 24, 27, 125 S. Ct. 385, at 395, 160 L. Ed. 2d 283 (2004)("*Kirby*").  COGSA permits its terms to be extended inland. 46 USC § 30701, section 7.  Through bills of lading extending COGSA inland have become an industry norm. *Kirby*, *supra*, at 25-26.  Such extensions accomplish the paramount goal of maintaining uniformity in international shipments.

> "The same liability limitation in a single bill of lading for international intermodal transportation often applies both to sea and to land...Such liability clauses are regularly executed around the world.... a single Himalaya Clause can cover both sea and land carriers downstream …Confusion and inefficiency will inevitably result if more than one body of law governs a given contract's meaning…. "should be judged by one law wherever it was made..."

*Kirby*, *supra*, 543 U.S. 14, 28.  In *Kirby*, a COGSA package limit was extended inland to cover rail carriage.  There was <u>no requirement</u> the railroad demonstrate that it had offered Carmack terms to the shipper.  Although *Kirby* was concerned with maritime law being undermined by state law, the same rationale safeguards maritime law from being displaced by Carmack.  The Supreme Court held that the through bill should apply equally to "all legs of the journey." *Kirby*, at 29.  Otherwise, the "purpose of COGSA, to facilitate efficient contracting in contracts for carriage by sea, would be defeated." *Id.*  Mitsui argues that *Kirby* did not discuss Carmack.  However, Carmack was, in fact, referenced in no less than five briefs filed with the Supreme Court.[15]  In addition, Carmack was discussed at oral argument.[16/17]  The Supreme Court Justices

---

off lading relating to substantial ocean carriage…" Cmpl., p. 1, ¶ 1, p. 3, ¶ 11.

[15] (1) 2002 U.S. Briefs 1028 at *9, 2004 U.S. S.Ct. Briefs LEXIS 651(filed by

were well aware of the laws governing U.S. railroads.  As the first line of *Kirby* pointedly proclaims: "This is a maritime case about a train wreck." *Kirby*, 543 U.S. 14, 18.  The Justices **unanimously held** that, where a substantial component of the transport is by sea, an ocean carrier's through bill is a maritime contract subject to maritime law, and it properly extends COGSA's package limit inland to cover rail carriage.  *Kirby*, 543 U.S. 14, 27.  Because the ocean carriage in the instant case was substantial, maritime law governs.  The only "alternative offer" maritime law imposes is COGSA's requirement that an ocean carrier offer its shipper full value liability terms in order to limit its liability.  *Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing*, 167 F.3d 99, 101 (2d Cir. 1999).  Evergreen satisfied that requirement when it offered Asmo the opportunity to ship under a full value liability rate.  [EV-C at ¶8, Ex. B, ¶ 7(2).]  Asmo declined that offer in favor of a cheaper freight rate, and procured insurance from Mitsui to protect its exposure. [EV-C¶ 8.]  The through bill of lading's $500 per package limit of liability is fully enforceable.

**E.     The Shipment Moved Under a Through Bill of Lading With No Separate Domestic Bill of Lading Issued by UP**

Carmack is also inapplicable because the shipment was made pursuant to an ocean through bill of lading with no separate domestic bill of lading issued by UP.  *Altadis USA, Inc. v. Sea Star Line, LLC and American Trans-freight (ATF), Inc.*, 458 F.3d 1288, (11th Cir. 2006) (hereafter "*Altadis*").  In *Altadis*, the Eleventh Circuit, repeatedly citing *Kirby*, reached the <u>opposite result</u> of

---

Respondents)*;* (2) 2002 U.S. Briefs 1028 at *4-5; 2004 U.S. S.Ct. Briefs LEXIS 274 (filed by Transportation Loss Prevention and Security Association); (3) 2002 U.S. Briefs 1028 at * 17; 2004 U.S. S.Ct. Briefs LEXIS 376 (filed by Professor Martin Davies); (4) 2002 U.S. Briefs 1028 at *10, 2004 U.S. S. Ct. Briefs LEXIS 427 (filed by Norfolk Southern); and (5) 2002 U.S. Briefs 1028 at * 23, 2004 U.S. S.Ct. Briefs LEXIS 369.

[16] *Norfolk Southern Ry Co. v. Kirby, Pty. Ltd. et al.*, 2004 U.S.TRANS LEXIS 52 at *23.

[17] *Id.*

*Sompo I.   Altadis* affirmed that on an international shipment with substantial ocean carriage, the

through bill is a maritime contract and Carmack does not apply so long as the over land carrier did

not issue a separate domestic bill of lading.  *Altadis*, at 1294.  In *Altadis*, a single through bill was

issued in Puerto Rico to cover a shipment of cigars by sea from Puerto Rico to Jacksonville,

Florida granting to its protections to subcontracting carriers and applying COGSA through

destination. The container was received by motor carrier ATF in Jacksonville for transport to

Tampa but it was stolen on ATF's line. Altadis sued. Sea Star and ATF claimed that Altadis failed

to timely sue under the through bill. Altadis argued that Carmack, which covers motor carriers,

offers a longer period to file suit. Altadis claimed that Carmack "trumped" the through bill's

extension of COGSA inland. *Altadis*, at 1293.  ATF countered that to be subject to Carmack, it

would have had to have issued a separate domestic bill of lading. The court held that ATF was

entitled to enforce the through bill, that under maritime law, COGSA was applied properly

extended through delivery and that Camack did not apply.  *Altadis, supra*, 1290.  The court noted

that its ruling was consistent with *Kirby.  Altadis*, at 43.  It also noted that, with one exception, the

circuit courts are in accord that a separate domestic bill of lading covering the overland leg must be

issued in order for Carmack can apply to the domestic carrier.

> "...[T]he cases do in fact require a separate bill of lading.  *See American Road Service Co.
> v. Consolidated Rail*, 348 F.3d 565, 568 (6th Cir. 2003)(The Carmack Amendment does not
> apply 'to a shipment under a through bill of lading unless a domestic segment of the
> shipment is covered by a separate domestic bill of lading.")(emphasis added); *Shao v. Link
> Cargo (Taiwan) Ltd.*, 986 F.2d 700, 703 (4th Cir. 1993)(same); *Capitol Converting
> Equipment v. LEP Transport*, 965 F.2d 391, 394 (7th Cir. 1992)(same); *Swift Textiles Inc. v.
> Watkins Motor Lines*, 799 F.2d 697, 701 (11th Cir. 1986)("The domestic leg of the journey
> ... will be subject to the Carmack Amendment as long as the domestic leg is covered by a
> separate bill or bills of lading.")

*Altadis*, at 1293.  The one noted exception was *Neptune Orient Lines v. Burlington N. and Santa

Fe*, 213 F.3d 1118, 1119 (9th Cir. 2000) which it dismissed as uninstructive stating:

"The Ninth Circuit's holding and discussion is limited to a single sentence, cites no authority for its position, and does not discuss the opposing case law."

*Altadis,* 1292, fn. 9.  *Neptune Orient's* facts are distinguishable. The issue on appeal in *Neptune Orient* did not concern the application of maritime law, nor the extension of COGSA to a railroad under a through bill.  The issue in *Neptune Orient* was whether the plaintiff would recover the "replacement cost" or "market cost" of a container of sneakers. The decision only touched upon Carmack in dicta.  More importantly, a §10709 contract was not involved.

Similarly, in *Mitsui Marine & Fire Ins. Co. Ltd. v. Hanjin Shipping Co., Ltd.,* 279 Ga. App. 689, 632 S.E. 2d. 467 (2006 Ga.), Mitsui paid its insured's claim for cargo damage resulting from a derailment on the land leg of an international import from Japan.  The shipper engaged a freight forwarder to make shipping arrangements with Hanjin.  Hanjin issued a through bill and sub-contracted with Norfolk Southern ("NS") to carry the cargo from Savannah to Alabama by rail.  Hanjin and NS contended their liability was limited to $500 per package under the through bill of lading.  The court followed *Kirby,* holding that the through bill was a maritime contract, and the freight forwarder was entitled to enforce the through bill although the shipper was not a party to that contract.  NS was also entitled to the enforce the through bill under maritime law consistent with *Kirby.*  Indeed, the vast majority of cases honor Himalaya clauses extending through bill of lading benefits to subcontracors.  In cases considering Carmack's application, the overwhelming majority hold that Carmack only governs inland carriers which issue a separate domestic bill of lading.[18] The vast weight of

---

[18] This is the law within the eleventh circuit.  *See e.g., Altadis USA, Inc. v. Sea Star Line, LLC and American Trans-freight (ATF), Inc*., 458 F.3d 1288, 1294 (11th Cir. 2006); *Canon U.S.A. v. Norfolk Southern Ry.*, 936 F. Supp. 968, 974 (D. Ga., 1996); *Fine Foliage of Florida, Inc. v. Bowman Transportation,* 698 F.Supp. 1566, 1571 (M.D. Fla. 1988); *Swift Textiles Inc. v. Watkins Motor Lines Inc.,*  799 F.2d 697 at 701 (11th Cir. 1986) *cert denied*, 480 U.S. 935 (1987).

authority stands in opposition to *Sompo I*. *Sompo I* is premised on the conclusion that the

Eleventh Circuit in *Swift Textiles Inc. v. Watkins Motor Lines Inc.*, 799 F.2d 697 (4th Cir. 1986)

*cert denied*, 480 U.S. 935 (1987) said the opposite of what it meant in articulating its holding.

However, in *Altadis,* the Eleventh Circuit not only relied on its prior holding in *Swift*, it

affirmed that *Swift* is consistent with *Kirby*.  UP did not issue a separate domestic bill of lading

for its rail carriage (EV-C, ¶ 9; TDS, ¶10.), and Carmack does not apply. *Altadis, Kirby* and the

weight of authority mandate enforcement of the package limit in the instant case.

### F.    Evergreen is Not Governed by The Carmack Amendment

Evergreen is not subject to the Carmack Amendment for the same two separate and

independent reasons: (1) its contract with UP was a §10709 contract; and (2) the through bill

is a maritime contract and no separate domestic bill of lading was issued by UP.  Mitsui cited

*Kyodo U.S.A., Inc. v. Cosco North America Inc.*, 2001 WL 1835158 (C.D. Cal. 2001) for the

---

This is the law within the ninth circuit. *Tokio Marine v. Union Pacific Railway Co.,* 2003 U.S. Dist. LEXIS 24803 at *11 (C.D. Cal. 2003); *Tokio Marine & Fire Ins. Co., Ltd. v. Nippon Yusen Kaisha et al.*, 25 F.Supp.2d 1071 at 1081 (C.D. Cal. 1997); *Mori Seiki USA, Inc. V. M.V. Alligator Triumph,* 920 F.2d 444 at 448 (9th Cir. 1993). This is the law within the eighth circuit. *Nebraska Wine & Spirits v. BNSF*, 1992 U.S. Dist. Lexis 17095 at * 18-19 (W.D. Mo. 1992).  This is the law within the seventh circuit. *Interamerican Logistics, Inc. v. CSX Intermodal, Inc.*, 1996 U.S. Dist. LEXIS 22472 at *7-8 (N.D. Ill.1996); *Capital Converting Equip. Inc. v. LEP Transport, Inc*., 750 F.Supp. 862, 863-64 (N.D. Ill. 1990), aff'd 965 F.2d 391 (7th Cir. 1992); *Tokio Marine & Fire Ins. Co. v. Hyundai Merchant Marine Co.,* 717 F.Supp. 1307 at 1309 (N.D.Ill. 1989); *Marine Office of America v. NYK Lines*, 638 F.Supp. 393 at 398-399 (N.D. Ill. 1985).  This is the law within the sixth circuit.  *Am. Road Service Co. v. Consolidated Rail*, 348 F.3d 565 at 568 (6th Cir. 2003). This is the law within the fifth circuit. *Seguros Commercial America S.A. de C.V. v. American President Lines, Ltd.* 910 F. Supp. 1235 at 1239 (S.D. Tex. 1995).  This is the law within the fourth circuit. *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700 at 703 (4th Cir. 1993) (hereafter "*Shao*").  This is the law within the third circuit.  *E.W. Bowman, Inc. v. Norfolk Western Ry. Co.*, 483 F.Supp. 1322 at 1324 (W.D. Pa. 1980).  This was also the position within the second circuit prior to *Sompo I. See e.g., Am. Home Assurance Co. v. Hapag Lloyd Container Line, GMBH*, 446 F.3d 313 at 318-319 (2nd Cir. 2006)(Granting a $500 per package limitation of liability to BNSF Railway Company under the ocean carrier's through bill of lading's Himalaya clause and citing *Kirby* just two months before *Sompo I*).

proposition that Evergreen is subject to Carmack. However, *Kyodo* did not involve a §10709 contract and nor did it involve any railroad contract such as the ERTA or the MITA 2-A. In addition, the Court in *Kyodo* erred in holding that an ocean carrier is subject to Carmack as the receiving carrier as discussed below. Mitsui also cited *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 74-75 & n. 7 (2d Cir. 2001) wherein an non-vessel operating common carrier ("NVOCC"), an ocean carrier, and a motor carrier were held jointly liable under Carmack. *Id.* at *75. *Project Hope* is clearly inapplicable as it did not involve a §10709 contract. In applying Carmack, the court only analyzed the motor carrier's liability and then extended Carmack to the ocean carrier and NVOCC without any explanation as to how such entities could fall within Carmack. The proper statement of law appears in *King Ocean Cent. America v. Prescision Cutting Services*, 717 So. 2d 507 at 513 (Fla. 1988):

> "In the Carmack Amendment's opening sentence, Congress limited its coverage to "common carriers providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter I, II or IV of chapter 105 of this title and … freight forwarder[s]," 49 USC section 1177(a)(1)(1992), thus excluding those carriers covered under subchapter III, water carriers…Further a civil action may be brought under the amendment only against the originating rail carrier, the delivering rail carrier, and the carrier alleged to have caused the loss or damage. *Id.* Section 11707(d)(2)(A)(i)-)iii). Therefore, by its own terms, the Carmack Amendment appears to apply only to inland carriers subject to the jurisdiction of the ICC…Therefore, we agree …that an ocean carrier's liability was not contemplated or covered under the Carmack Amendment."

*King, supra,* at 512-513.

Mitsui argues that Carmack applies, citing *Canon USA, Inc. v. Nippon Liner Sys., Ltd.*, 2007 U.S. Dist. LEXIS 14356 at *6-7 (N.D. Ill. 1992), where the plaintiff sought to impose Carmack on an NVOCC based upon *Sompo I*. The court found *Sompo I* inapplicable to an NVOCC and granted it the benefit of the $500 package limit extended inland under the through bill of lading. Similarly in *Rexroth Hydraudyne B.V. Ocean World Lines, Inc.*, 2007

13

WL 541958 (SDNY 2007), cited by Mitsui, the court declined to extend *Sompo I* to non-rail carriers stating:

> "The issue in this case is whether an NVOCC or other non-rail carriers are entitled to the benefits of COGSA package limitation under the parties' contracts.  Nothing in [*Sompo I*] sheds any light on that question…"

*Rexroth, supra,* at *7.

Evergreen arranged for the subcontracted rail carriage of the shipment by UP.  However, Evergreen did not provide the actual rail carriage of the shipment, is not a rail carrier, does not own railroad tracks, does not own locomotives, operates no trains, and is not licensed to operate as a railroad.  Evergreen is an ocean carrier, owning and operating seagoing vessels.  (EV-M, ¶ 3.) *Sompo I* clearly does not apply to Evergreen.  Moreover, Evergreen's contract with UP is a §10709 contract which takes the rail carriage entirely outside of Carmack as previously discussed above. Evergreen is not and cannot be subject to Carmack.  Evergreen's entitlement to the $500 package limit is clear.

**G**.    **Even if Carmack Applies, The Through Bill of Ladings's Offer of Full Liability Rates Satisfied Any Alternative Offer Requirement**

*Sompo I* held that a railroad may avail itself of a through bill's extension of COGSA only where it first offers alternative Carmack terms to the shipper.  Under Maritime law, COGSA's fair opportunity doctrine requires the ocean carrier to offer its shipper the opportunity to declare full value and pay a full value freight rate in order to impose a liability limit. *Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing*, 167 F.3d 99, 101 (2d Cir. 1999.)  Evergreen offered Asmo full value protection on this shipment. [EV-C,  ¶ 8, Ex. B, ¶ 7(2).]  Asmo made an informed business decision to limit the carrier's liability in exchange for a cheaper freight rate. [EV-C, ¶ 8, Ex. B¶ 7(2).]  Mitsui admits this offer satisfied COGSA.  Although Carmack does not apply, if this court determines that it does, the full value offer of the through bill of lading should be

14

deemed to satisfy any requirement that Carmack might impose. *Sompo I* held the railroad must offer the shipper terms "consistent with" Carmack. Neither *Sompo I* nor Carmack require an alternative offer "identical to" Carmack. The Staggers Act also states that the STB may not "require any specific level of rates…based on [Carmack]." 49 USC §10502(e).[19] The full value offer Asmo rejected was entirely consistent with a full value offer under Carmack. Had Asmo selected Evergreen's full value rates, it would have received full compensation. Thus, if there is an alternative offer requirement under Carmack, which is contested, it was satisfied by the full value offer in the through bill of lading. Asmo's declination of that offer should constitute a waiver and estopple, precluding Mitsui from arguing that Asmo was never offered a full value offer.[20]

COGSA and Carmack are strikingly similar in their statutory framework with regard to the required proof of damages and affirmative defenses. A shipper's burden to set out a prima facie case for damages under Carmack requires proof of delivery to the carrier in good condition, arrival in damaged condition, and the amount of damages caused by the loss. *Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138, 12 L. Ed. 2d 194, 84 S. Ct. 1142 (1964). The railroad must then shoulder to burden of proof that it was free from negligence and that the damage occurred from an excepted cause such as: an act of God, a public enemy, the act of the shipper himself such as insufficient packaging, public authority, or the inherent vice or defect of the goods. *Id.,* 138.

---

[19] The former ICC clarified that railroads could reduce their liability "[s]o long as shippers have a choice between <u>full and released value rates</u>…" ICC Ex Parte Order No. 390, codified at 49 CFR Part 1300 (Dec. 10, 1980).

[20] A defendant may be estopped by its inequitable conduct from arguing a defense in a COGSA action. *Austin, Nichols & Co., Inc. v. The Cunard Steamship Ltd.*, 367 F.Supp. 947 at 949 (SDNY 1973). A defendant may also waive a defense it may have under COGSA. *See gen., Continental Ins. Co. v. M/V Olympic Melody*, 2002 U.S. Dist. LEXIS 4220 at *9 (SDNY 2002.)

Under COGSA the shipper must also first prove delivery of goods to the carrier in good order, delivery in a damaged condition, and the amount of damages. *Transatlantic Marine Claims Agency v. M/V "OOCL Inspiration"*, 137 F. 3d 94, 98 (2d Cir. 1998); 46 USC §§ 13071. The burden then shifts to the defendant to prove that the damage occurred from an excepted cause other than the carrier's negligence, such as an act of God, a public enemy, dangers of the sea, inherent vice or defect of the goods, or default of the shipper such as insufficient packaging. *Bally, Inc. v. M.V. "ZIM AMERICA,"* 1993 U.S. DIST. LEXIS 926 at * 18 (SDNY); 46 USC § 30706. The two statutes require nearly identical proof of damages and offer nearly identical affirmative defenses.[21] The offer of full liability which was made in this case under COGSA was "consistent with" a full value Carmack offer.

In *Sompo I*, the court held that Carmack offers shippers a near strict liability scheme whereas COGSA requires proof of negligence. In fact, neither Carmack nor COGSA are purely strict liability nor pure negligence regimes. Both statutes require "good order" and "bad order" showings to establish a prima facie case. Both statutes shift the burden of proof to the carrier to show both freedom from negligence and that a statutory affirmative defense exists.[22] The distinction between an offer by the ocean carrier of full value liability under the through bill of lading versus an offer by the railroad of full value liability under Carmack is a distinction without a difference. Asmo rejected the through bill of lading's full value offer. To deprive UP of the package limit would provide Mitsui with a windfall which it's insured did not contract for,

---

[21] While COGSA allows ocean carriers to defend on the grounds of "due diligence" the exercise of due diligence relates only to making *the ocean vessel seaworthy* and is a condition only to the defense of an *error in navigation or management of the ocean vessel*. 46 USC §§ 30705-30706; 46 USC § 30706, *History & Ancillary Laws and Directives*. Mitsui complains here of damages occasioned during a derailment on land - not during ocean carriage.

[22] *Compare Project Hope v. M/V ibn Sina*, 240 F.3d 67, 74 (2d Cir. 2001) with *Transatlantic Marine Claims Agency, Inc. v. M/V OOCL Inspiration*, 137 F.3d at 98 (2nd Cir. 1998).

did not pay for, did not anticipate, and to which it was not entitled.  In any event, *Sompo I* does not apply because §10709 removes this carriage entirely from federal regulation.

**H.     UP'S MITA 2-A Terms Warrant the Same Result**

UP's MITA 2-A exactly mirrored the Evergreen package limit stating that:

> "UP's maximum liability for US inland loss or damages should be limited to $500 per package as described in the Ocean Bill of Lading on International Shipments where the Shipper has released the Shipment under an Intermodal or Ocean Bill of Lading to the ocean carrier with a per package or customary freight unit limitation of liability applicable by agreement and/or pursuant to 46 U.S.C. Section 1304(5)."

(TDS, ¶ 8 Ex. C at Item 310, (C)(10).) As such, even assuming *arguendo* that UP cannot avail itself of the through bill of lading terms, its own circular warrants the same result.  *See American Home Assurance Co. v. Hapag Lloyd Container Line, Gmbh,* 2004 U.S. Dist. LEXIS 13500 at *15 (SDNY 2004) which involved cargo losses caused by a derailment.  Seeking to limit its liability to $500 per package, the rail carrier relied on the following clause in its circular:

> "If a shipment moves under the terms of a through intermodal ocean bill of lading with BNSF as a participating rail carrier, the liability of BNSF will be no greater than the liability of the ocean carrier issuing the bill of lading"

*Am. Home,* at  *11.  The circular was referenced in the contract between the railroad and the intermediary.  The court enforced the package limit.  UP's circular in the instant case is referenced in its §10709 contract with Evergreen.  [EV-M, ¶ 3, 5, Ex. 3 at Item 110; TDS¶ 7, Ex. C at Item 110.]  A shipper is bound by railroad circulars between primary and secondary carriers.  *Am. Home, supra,* citing *Nippon Fire & Marine Insurance v. Skyway Freight Systems, Inc.,* 235 F.3d 53 (2d Cir. 2000.)  Mitsui complains that Asmo had no notice of ERTA or MITA 2-A's terms.  This argument is not tenable.  In fact, Asmo agreed that Evergreen could subcontract on any terms and that:

> "…in the event there is a private contract between the Carrier and a Sub-Contractor, responsibility for such Through Transportation will be governed by the terms and

conditions of said contract which shall be incorporated herein as if set forth at length and copies of said contract(s) shall be available to the Merchant at the office of the Carrier upon request."

(EV-C ¶ 7, Ex. B, ¶5(C)(2.)

In *Stolt Tank Containers, Inc. v. Evergreen Marine Corp.*, 962 F.2d 276 (2nd Cir. 1992), the beneficial owner of damaged containers was held subject to the liability provisions in a bill of lading issued by the carrier to an intermediary although its terms did not reference the owner. *Stolt, supra,* at 279-80. The court held the carrier was not required to give the owner actual notice of a liability limit in order to enforce it since such a requirement would "place far too heavy a burden on the carriers." *Id.,* 279, citing *Carman Tools*, *supra*, at 900-01. Asmo agreed it could request a copy of the subcontracting carrier's contract under the through bill of lading terms, yet it never once requested a copy of UP's ERTA or MITA from either Evergreen or UP. (EV-M, ¶ 3, TDS, ¶ 15.) MITA 2-A was also readily available for viewing by the public on UP's website at the time of the shipment. (TDS, ¶ 15.)

The package limit in the through bill has the exact same limit as under MITA 2-A. The Second Circuit has held that a shipper cannot argue that a secondary carrier's liability limit was "unknown" to it where the liability limit in its own contract with the primary carrier under a through bill is "exactly the same." *Nippon Fire & Marine v. Skyway Freight Systems*, 235 F.3d 53 at 62 (2d Cir. 2000). Asmo's procurement of insurance from Mitsui is evidence of its knowledge of the liability limit. *St. Paul Fire and Marine Ins. Co. v. M.C. Western Mariner et al.*, 1999 U.S. Dist. LEXIS 12888 at *25-26 (SDNY 1999) (A sophisticated shipper's decision to procure cargo insurance evidences its notice of the liability limit.) A subrogated insurer's attempt to argue that its insured did not have a fair opportunity to opt out of a contractual package limit is an improper attempt to shift off of itself the "burden of loss" which it "was paid to insure."

18

*Carman Tool & Abrasives,* at 901, n.10.  The principle embraced by the second circuit that

intermediaries act as the agents of cargo interests and bind them by their agreements with

downstream carriers is fully consistent with *Kirby* wherein the Supreme Court explained:

> "In holding that…an intermediary binds a cargo owner to the liability limitations it
> negotiates with downstream carriers…we merely ensure the reliability of downstream
> contracts for liability limitations."

*Kirby*, at 34.  Finally, a contract's status as a §10709 contract was also held to bind a cargo

owner in *Ins. Company of North America v. S/S American Argosy,* 732 F.2d 2921 (2d Cir.

1984), where the contract entered into by freight forwarders acting on behalf of shipper was held

to bind the cargo owners/shippers.  The same reasoning should apply in the instant case and

plaintiff cargo interests are bound by the terms and conditions of the MITA. UP and Evergreen

are entitled to enforce MITA-2A's package limit.

## I.    The Package Limit Applied

UP concedes the full 165 packages of cargo specified on the face of the through bill were

damaged.  UP and Evergreen's liability in this matter is thus limited to $82,500 based on the

$500 per package limitation. [TDS ¶12]  If COGSA does not apply, the through bill of lading

provides that liability is capped at 2 SDRs per kilo of cargo.  The total weight of the damaged

cargo was 35,234 kilograms.  (EV-C, ¶ 11, Ex. A, face page; EV-C, ¶ 11; TDS at ¶13.)  As of

April 5, 2006, the date of the derailment, that calculates to $102,129.27.[23]  (TDS at ¶13.)

## J.    The Package Limit Clauses are Unambiguous

Mitsui argues that because MITA-2A contains a maximum $250,000 per container limit of

liability and a $500 per package limit, an ambiguity exists. There is no ambiguity.  The container

---

[23]   See www.imf.com (archived data). Fed Evid. 201.

limit specifies the ceiling of UP's liability which be cannot surpassed generally.  However, <u>in the specific instance where the cargo is carried under an ocean through bill</u>, UP's liability is limited to the same $500 per package consistent with the through bill of lading.  A specific term takes precedence over one that is more general.  *Mutual Life Ins. Co. v. Hill*, 193 U.S. 551, 558, 24 S.Ct. 538, 540, 48 L.Ed. 788 (1904); *Ins. Co. of N. Am. v. SEALAND* DEVELOPER, 1989 U.S. Dist. LEXIS 8462 at *7.  Both the rail and ocean contracts clearly entitle UP and Evergreen to the $500 per package limitation of liability.

## III.  Conclusion

Mitsui's motion for partial summary judgment should be denied and UP and Evergreen's cross-motion for partial summary judgment should be granted.

Date: New York, New York
      March 7, 2008

                                    By:     /s/ <u>Barry N. Gutterman</u>
                                            Barry N. Gutterman, Esq. (BG6410)
                                            Barry N. Gutterman & Associates, P.C.
                                            60 East 42nd Street, 46th Floor
                                            New York, New York 10165
                                            Phone: (212) 983-1466
                                            Fax: (212) 983-1229
                                            Email: Bngassc@aol.com


                                            Attorneys for Defendant
                                            Union Pacific Railroad Company


To:     David L. Mazaroli (DM-2929)
        11 Park Place – Suite 1214
        New York, New York 10007-2801
        Phone: (212) 267-8480
        Fax: (212) 732-7352
        Attorneys for Plaintiff

UP2718.Opp.Cross.Motion