Barry N. Gutterman, Esq. (BG6410)
Robert Briere Esq. (RB6080)
Barry N. Gutterman & Associates, P.C.
Attorneys for Defendants
Union Pacific Railroad Company
and Evergreen Marine Corporation
60 East 42nd Street, 46th Floor
New York, New York 10165
(212) 983-1466

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MITSUI SUMITOMO INSURANCE CO., LTD.<br><br>Plaintiffs<br><br>v.<br><br>EVERGREEN MARINE CORPORATION and UNION PACIFIC RAILROAD COMPANY<br><br>Defendants. | **ECF Case**<br><br>**07 CV 3874**<br>**(Judge McMahon)** |

**AFFIDAVIT OF TERRY D. SHELDON IN SUPPORT OF UP AND EVERGREEN'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR**
**PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF**
**UP AND EVERGREEN'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

State of Texas  )
       ) ss:
County of Anderson )

Terry D. Sheldon, declares the following facts to be true and correct and known to him personally.

1. I am the Manager, Damage Prevention for Union Pacific Railroad Company ("UP") and have

  held that position since and before the shipment at issue. As Manager, Damage Prevention,

  my primary duties are to evaluate and analyze any claims of shippers relating to shipments

  moved by UP, the movement records, any and all contracts between the parties to the

shipment, to analyze amounts claimed and salvage amounts, investigate facts underlying the claims, and communicate with the parties to the shipment and the claimant.

2.  I responded to the shipper's claims relating to the shipment at issue in the above captioned case. I have reviewed and am personally familiar with the following documents relating to the shipment: the shipper's claim, the movement records, the governing contracts including Evergreen's Waybill No. EISU 025643005828 covering the shipment and incorporating Evergreen's then applicable bill of lading terms and tariff, UP's then applicable MITA 2-A and UP's then applicable Exempt Rail Transportation Agreement ("ERTA") with Evergreen. I make the statements herein based on that personal knowledge.

3.  Evergreen was hired by shipper Asmo Co. Ltd. to transport an international shipment of car parts from Shimizu, Japan to Statesville, North Carolina (the "shipment.")

4.  Evergreen instructed UP to transport the cargo from Los Angeles to Statesville under UP's Exempt Rail Transportation Agreement DER-UP-C-913A ("ERTA") by sending an electronic instruction to UP signifying that contract DER 000913 should apply, meaning UP's Exempt Rail Transportation Agreement DER-UP-C-913A. Attached hereto and marked as Exhibit A is a true and correct copy of the ERTA's terms.

5.  Evergreen carried the shipment over 5400 miles from Shimizu to Los Angeles for its shipper Asmo Co., Ltd. In Los Angeles, UP received the shipment and issued two electronic data interchange "EDI" receipts or waybills for UP's transport of the cargo from Los Angeles to Statesville under ERTA. See Exhibit B which collectively, are the two EDI's issued by UP for the shipment.

6.  The ERTA specified that UP's UP Exempt Circular 20-Series and successor issues thereto would apply to the shipment. (Exhibit A at ¶3, page 1.) UP's Master Intermodal Transportation

Agreement 2-A ("MITA 2-A") was the then applicable successor to Exempt Circular 20 series.

Exhibit C attached hereto is a true and correct copy of the relevant terms of the MITA-2A.

7.    UP's MITA 2-A states that it was entered into under 49 USC section 10709:

> "This MITA and any agreements, price documents or contracts that reference this MITA have been made under 49 USC section 10709"

[Exhibit C, Item 110(D).]

8.    UP's MITA 2-A exactly mirrored the Evergreen package limit stating that:

> "UPRR's maximum liability for US inland loss or damage shall be limited to $500.00 per package as described in the Ocean Bill of Lading on International Shipments where the Shipper has released the Shipment under an Intermodal or Ocean Bill of Lading to the ocean carrier with a per package or customary freight unit limitation of liability applicable by agreement and/or pursuant to 46 U.S.C. Section 1304(5)."

[Exhibit. C, Item 310 (C) (10).]

9.    The cargo at issue in this case was damaged in a derailment in Arkansas while on UP's line.

10.    UP did not issue a separate domestic bill of lading for the rail carriage in this case.

11.    165 packages of cargo specified on the face of the through bill of lading for the subject shipment were damaged in the derailment.

12.    UP's damages are limited to $500 per package or $82,500 for the 165 packages specified on the face of the through bill of lading.

13.    The total weight of the cargo at issue according to the face of the through bill was 35,234 kilograms. As of April 5, 2006, 1 SDR was equal to 1.4493 U.S. dollars. Therefore, 2 SDRs would equal 2.8986 U.S. Dollars. 2.8986 times 35,234 kilograms calculated to $102,129.27. I verified this by using the archived data base at the International Monetary Fund's website located at www.imf.org. Alternatively, UP's damages are limited to $102,129.27.

14.    UP admits liability to the plaintiff but contests the amount of damages.

15. Evergreen was a signatory to ERTA and was provided with a copy of the applicable ERTA and MITA 2-A contracts prior to the shipment at issue. However, Asmo never once requested a copy of UP's ERTA or MITA from UP before or during the shipment. The MITA-2A was at the time of the shipment, and prior to this shipment, readily available for public viewing on UP's website at www.up.com.

I swear that the foregoing is true and correct and known to me personally and that if called upon to do so, I would and could testify thereto competently in a court of law.



Terry D. Sheldon

Sworn to and Subscribed to
Before Me This 3ʳᵈ
Day of March, 2008

Mary D. Hinton

MARY G. HINTON
MY COMMISSION EXPIRES
January 17, 2011

UP2718.Sheldon Affidavit

4