David L. Mazaroli
Attorney for Plaintiff
11 Park Place – Suite 1214
New York, NY 10007-2801
Tel. (212)267-8480
Fax. (212)732-7352
e-mail: dlm@mazarolilaw.com
-----------------------------------------------------------------x
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | | |
|---|---|---|
| MITSUI SUMITOMO INSURANCE CO. LTD. | : | |
| Plaintiff, | : | 07 Civ. 3874 (CM) |
| - against - | : | **PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS** |
| EVERGREEN MARINE CORPORATION; UNION PACIFIC RAILROAD COMPANY; | : | |
| | : | |
| Defendants. | | |

-----------------------------------------------------------------x

PLEASE TAKE NOTICE that pursuant to Local Civil Rule 56.1( of the United States District Courts for the Southern and Eastern Districts of New York, plaintiff Mitsui Sumitomo Insurance Co. Ltd. ("Mitsui"), in further support of its motion for partial summary judgment and in opposition to defendants' cross motion for partial summary judgement, responds as follows and in numerical order to the Rule 56.1 Statement (numbered 47 thru 86) of defendants Union Pacific Railroad Company ("UP") and Evergreen Marine Corp. ("Evergreen").

References herein to the evidentiary record include the following abbreviations: Affidavit of David L. Mazaroli sworn to February 4, 2008 ("Maz. Aff."); Reply Affidavit of David L. Mazaroli ("Maz. Reply Aff."); Declaration of David Clifton ("Clifton Decl."); Declaration of Chikara Yokoi ("Yokoi Decl."); Deposition of Daniel

Hartmann ("Hartmann Dep."); Affidavit of Livia Kuo ("Kuo Aff"); Affidavit of Patrick Chen ("Chen Aff."); Affidavit of Terry D. Sheldon ("Sheldon Aff.").

## RESPONSES

47. It is undisputed that UP has admitted liability to plaintiff and has also admitted in its motion papers that "the full 165 packages of cargo…were damaged" (Defendants' Brief at p. 19). While this in effect renders moot any quarrel UP had with the quantum of damages, UP did state in its revised response to plaintiff's second request for admissions that it "denies that damages are $385,105.70" (Maz. Aff. Ex. 7 Admission No. 9).

48. Disputed in part. It is undisputed that the shipment in suit was foreign shipment originating outside the borders of the United States, i.e. in Japan, and was intended to be delivered in Statesville, North Carolina, and was therefore an international movement. It is also undisputed that for the shipment Evergreen issued a through sea waybill. Plaintiff disputes the contention that Evergreen was only an "ocean carrier" and that the through sea waybill was "an ocean carrier's" bill of lading. In the context of the intermodal transport Evergreen functioned as an ocean carrier with respect to the ocean voyage and Evergreen and UP functioned as rail carriers for the rail carriage segment of the through transport. (Maz. Aff. Ex. 11 (Hartmann Dep. ) pp. 32, 66, 87; Maz. Aff. Ex 16; Maz. Reply Aff. Exs. 17, 18; Clifton Decl. ¶¶ 8, 9)

49. Disputed in part. It is undisputed that Evergreen issued a through sea waybill. Plaintiff disputes the contention that there was a valid incorporation of the service contract as the terms of the sea waybill do not expressly state that the waybill is subject to the terms of the service contract. The reference to SC20454 as a "Notify

Code" does not incorporate the terms of the service contract into the waybill. (Kua Aff. Ex. B).

50. Undisputed that the services provided by Evergreen included ocean transport from Shimizu, Japan, to Los Angeles, a distance of roughly 5,400 miles.

51. Undisputed.

52. Undisputed that Evergreen subcontracted the rail movement from Los Angeles to Statesville to UP. It is also undisputed that UP and Evergreen contend that, as between the defendants, the booking was made under ERTA. However, since defendants have admitted that the terms of ERTA were not disclosed to the shipper, consignee or owner of the cargo, this is not a material fact for purposes of the motions. (Maz. Aff Ex. 7 Admissions No. 3, 4, 7, 8 and Ex. 8 Admission No. 47)

53. Undisputed, subject to Response No. 52.

54. Disputed in part. It is undisputed that UP generated electronic waybills for the shipment. However, these remained in electronic form and were not transmitted to the shipper, consignee or owner of the cargo. (Maz. Aff. Ex. 11 (Hartmann Dep.) pp. 50-52). Plaintiff disputes the contention that vis-à-vis plaintiff the rail carriage was under ERTA because defendants have admitted that the terms of ERTA were not disclosed to the shipper, consignee or owner of the cargo. (Maz. Aff Ex. 7 Admissions No. 3, 4, 7, 8 and Ex. 8 Admission No. 47).

55. Disputed in part as stated. It is undisputed that the ERTA document refers in relevant part to:

> …the rates, rules and regulations established by Railroad for such Container Double Stack Car or, if applicable, Container Conventional Flatcar and related services to the general shipping public and in effect on the date of the

applicable shipment including, but not limited to, Union Pacific Railroad Company Exempt Circular 20 series and successor issues thereto.

(Sheldon Aff. Ex. A). Defendants have not produced a copy of Circular 20 in this action.

56. Disputed. This statement is convoluted and unintelligible. According to the testimony of UP's Mr. Hartmann "MITA" is a successor issue to Circular 20. (Maz. Aff. Ex. 11 ("Hartmann Dep.) pp. 92-93)

57. It is undisputed that Paragraph D of Item 110 of MITA-2-A so states. However, this is not a material fact as defendants have admitted that the terms of MITA-2-A were not disclosed to the shipper, consignee or owner of the cargo. (Maz. Aff. Ex. 7 Admissions No. 1, 2, 5, 6).

58. It is undisputed that Paragraph C-10 of Item 310(C) of MITA 2-A so states. However, this is not a material fact as defendants have admitted that the terms of MITA-2-A were not disclosed to the shipper, consignee or owner of the cargo. (Maz. Aff. Ex. 7 Admissions No. 1, 2, 5, 6).

59. Undisputed.

60. It is undisputed that the signatories to ERTA were Union Pacific Railroad Company, on the one hand, and Evergreen America Corporation, as agent for Evergreen Marine Corp. (Taiwan) Ltd., Lloyd Triestino di Navigazione SpA and Hatsu Marine. (See Sheldon Declaration Exhibit A).

61. Undisputed. However, this is not a material fact as defendants have admitted that the terms of MITA-2-A were not disclosed to the shipper, consignee or owner of the cargo. (Maz. Aff. Ex. 7 Admissions No. 1, 2, 5, 6).

62. Undisputed. However, this is not a material fact since MITA 2-A required Evergreen "to notify any and all other parties involved in this transaction of all the provisions, restrictions, and limitations contained in this MITA…." and defendants have admitted that the terms of MITA-2-A were not disclosed to the shipper, consignee or owner of the cargo. (Sheldon Decl. Ex. A, Item 110 General Rules ¶ O; Maz. Aff. Ex. 7 Admissions No. 1, 2, 5, 6; Maz. Aff. Ex. 11 (Hartmann Dep.) p. 85).

63. Disputed. Evergreen is an intermodal common carrier who for compensation provided ocean carriage and rail carriage transportation services for the shipment in suit. Although for the shipment in suit UP owned the rail tracks, locomotives and rail cars, the train in question was a dedicated Evergreen train carrying only Evergreen intermodal units and was loaded by Evergreen at its intermodal rail terminal. (Maz. Aff. Exs. 12, 16 and Ex. 11 (Hartmann Dep.) pp. 14-16, 29-32, 57-58, 61, 73-74; Maz. Reply Aff. Exs. 17 and 18)

64. Disputed. As an intermodal carrier for compensation Evergreen provides multiple services for its customers, including ocean transportation and rail transportation. Accordingly Evergreen fits within the statutory definition of a rail carrier. *Id. See* 49 U.S.C. § 10102(5). In addition Evergreen operates an intermodal rail terminal which fits within the statutory deposition of a railroad. *See* 49 U.S.C. § 10102(6)(c).

65. Disputed. It is undisputed that UP owned the railroad tracks on which the train was moving at the time of the derailment. However, Evergreen owned or operated the intermodal marine/rail terminal at the discharge port in California where the shipments were transferred from the ocean vessel to the rail cars and this facility has railroad tracks. (Maz. Aff. Ex. 11 (Hartmann pp. 30-33; Maz. Reply Aff. Ex. 17)

66. Disputed. It is undisputed that UP owned the locomotive powering the train at the time of the derailment. However, Evergreen owned or operated the intermodal marine/rail terminal at the discharge port in California where the shipments were transferred from the ocean vessel to the rail cars and this facility has locomotives to move the cars within the facility. (Maz. Aff. Ex. 11 (Hartmann pp. 30-33; Maz. Reply Aff. Ex. 17)

67. Disputed. See responses no. 63-66.

68. Disputed in part. Any license which qualifies Evergreen to function as an intermodal carrier presumably covers the rail transportation services provided by Evergreen. See response 64.

69. Disputed in part as stated. Paragraph 1(13) of the Evergreen Sea Waybill states : "'Underlying Carrier' includes any water, rail, motor, air or other carrier utilized by the Carrier for any part of the transportation of the shipment covered by this Through Bill…" Paragraph 14 states "'Sub-contractor' includes owners and operators of vessels (other than the Carrier, stevedores, terminal operators, warehousemen, Underlying Carriers, ocean and rail transport intermediaries…" (Kuo Aff. Ex. B)

70. Undisputed with the objection that this is not a precise quote of the referenced text. The Court's attention is respectfully directed to Paragraphs 4(1) and (2) of the sea waybill. (Kua Aff. Ex. B)

71. Undisputed with the objection that this is not a precise quote of the referenced text. The Court's attention is respectfully directed to Paragraph 5(A) of the sea waybill. (Kua Aff. Ex. B)

72. Undisputed with the objection that this is not a precise quote of the referenced text. The Court's attention is respectfully directed to Paragraphs 5(B) of the sea waybill. (Kua Aff. Ex. B) This is not a material fact as the shipment in suit moved on door-delivery terms, i.e. it was not port-to-port shipment. (Id. Ex. A)

73. Undisputed with the objection that this is not a precise quote of the referenced text. The Court's attention is respectfully directed to Paragraphs 5(C)(1) and (2) of the sea waybill. (Kua Aff. Ex. B)

74. Undisputed with the objection that this is not a precise quote of the referenced text. The Court's attention is respectfully directed to Paragraph 5(D) of the sea waybill. (Kua Aff. Ex. B)

75. Disputed in part as the referenced section of the sea waybill is materially misquoted in part, presumably due to a word-processing error. The Court's attention is respectfully directed to Paragraph 7(2)) of the sea waybill. (Kua Aff. Ex. B)

76. Disputed. Defendants did not provide an opportunity, consistent with the Staggers Act, to receive full Carmack Amendment liability coverage as well as alternative terms. Defendants have admitted that there is no express reference to the Carmack Amendment in the sea waybill. Defendants have also admitted that MITA and ERTA were not disclosed to the shipper, consignee and owner of the cargo and in any event did not provide the option of full Carmack liability. (Kua Aff. Ex. B; Def. Rule 56.1 Resp. Nos. 23-26; No. 15 ("Undisputed that the Waybill does not expressly reference the Carmack Amendment").

77. Disputed. See response No 76. As defendants did not offer full Carmack Amendment liability coverage and alternative terms, there was no opportunity for Asmo to decline such an offer.

78. Disputed. With respect to the rail transportation there was no offer of alternative freight rates consistent with the requirements of the Carmack Amendment. The freight rates for the rail transportation, said to be "confidential" by UP, were not disclosed to the actual shipper of the cargo and there was no choice of specific alternative rates offered with respect the rail carriage. (Maz. Aff. Ex. 11 (Hartman Dep.) pp. 66-73)

79. Objected to as argument. It is undisputed, as indicated in the declarations of David Clifton and Chikara Yokoi that Asmo North Carolina, Inc. ("Asmo NC") arranged to have the shipment insured by Mitsui and that said insurance covered loss and damage to the cargo during transport. (Clifton Decl. ¶ 12; Yokoi Decl. ¶ 3). This is not a material fact as the existence of cargo insurance does not excuse defendants from their obligations to comply with the Staggers Act and the Carmack Amendment conditions precedent as outlined in the Second Circuit's *Sompo* decision.

80. Disputed as stated. It is undisputed that as a result of the derailment Asmo NC sustained losses and plaintiff, having paid Asmo NC $422,129.33 as outlined in Affidavit of Chikara Yokoi, sues herein as subrogated insurer to collect the amounts paid to cover the losses caused by the derailment. (Yokoi Decl. ¶¶ 7-9 and Ex. 3)

81. Disputed. This conflicts with the evidence that UP generated electronic waybills covering the interstate rail carriage as is admitted in defendants' response to

plaintiff's Rule 56.1 Statement no. 21. (Def. Rule 56.1 resp. no. 21; Def. Rule 56.1 Stat. No. 54; see also Maz. Aff. Ex. 1 ¶ 15,  Ex. 2 ¶ 15, Ex. 11 (Hartmann Dep. ) pp. 50-52)

82. It is undisputed that the entire shipment, i.e. the cargo carried in each of the 165 cartons, sustained damage as a result of the derailment.

83. Disputed.  This statement is objected to as a legal conclusion which relates to the underlying issue to be adjudicated by the Court.  For the reasons stated in plaintiff's pleadings and motion papers, plaintiff maintains that defendants are not entitled to limit their liability and that plaintiff is entitled to recover the full amount of its damages. (See plaintiff's main brief and reply brief)

84. Undisputed.

85. Undisputed. (www.imf.org)

86. Disputed. See response no. 83.


Dated:  New York, New York
         March 25, 2008


                 LAW OFFICES,
                 DAVID L. MAZAROLI

                 */s/David L. Mazaroli*
                 _____
                 David L. Mazaroli (DM 3929)
                 Attorney for Plaintiff
                 11 Park Place - Suite 1214
                 New York, New York 10007
                 Tel.: (212)267-8480
                 Fax.: (212)732-7352
                 E-mail: dlm@mazarolilaw.com
                 File Nos.: 7MSI-1491