UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MITSUI SUMITOMO INSURANCE CO., LTD.<br><br>        Plaintiffs<br><br>v.<br><br>EVERGREEN MARINE CORPORATION and UNION PACIFIC RAILROAD COMPANY<br><br>        Defendants. | ECF Case<br><br>**07 CV 3874**<br>**(Judge McMahon)** |

**DEFENDANT UNION PACIFIC RAILROAD AND EVERGREEN MARINE CORPORATION'S REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Barry N. Gutterman, Esq. (BG6410)
Barry N. Gutterman & Associates, P.C.
Attorneys for Defendants
Union Pacific Railroad Company
and Evergreen Marine Corporation
60 East 42nd Street, 46th Floor
New York, New York 10165
(212) 983-1466
Bngassc@aol.com

**Table of Contents**

Table of Contents………………………………...…..…………………. …………………………..i

Table of Authorities………………………………………………………………………………ii

    I.     Mitsui's Admissions - Undisputed Facts……………………………………………1

    II.    The Clear Language of 49 U.S.C. §10709 Controls – It Cannot Be Subject to 49 U.S.C. §10502 or 49 U.S.C. §11706……………………………………………...3

    III.   Kirby Mandates that UP and Evergreen Receive The Benefit of the $500 Per Package Limitation of Liability which the Shipper Agreed To Grant The Carrier And to All Subcontracting Carriers ……………………………………………...5

    IV.   Asmo Was Fully Aware of The $500 Per Package Limit of Liability……………...6

    V.    Mitsui Has Not Presented Any Evidence That Evergreen Was A Rail Carrier For This Movement……………………………………………………………………...8

    VI.   This Court Should Not Enter Summary Judgment For Mitsui against UP For The Full Amount of the Claim……………………………………………………….10

    VII.  Conclusion….………………………………………………………………...10

# Table of Authorities

**Cases:**

*Altadis USA, Inc. v. Sea Star Line, LLC et al.*,
458 F.3d 1288 (11th Cir. 2006) ..................................................................…1, 5, 8

*Am. Rock Salt Co., LLC. v. Norfolk Southern Corp.*
180 F.Supp.2d 420 (WDNY, 2001). ................................................................................3

*American Orient Exp. Ry v. Surface Transportation Bd.*,
484 F. 3d 554 (D.C. Cir. 2007)……………………………………………………..10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .......................................................7

*Bay State Shippers, Inc. v. Atchison Topeka & Santa Fe Ry. Co.*,
1995 U.S. Dist. LEXIS 30154 (C.D. Cal.1995) ................................................................3

*Consolidated Rail Crop. v. Sobiech*,
710 F .Supp. 988 (SDNY 1989) .....................................................................................3

*Cooperative Shippers, Inc. v. Atchison Topeka & Santa Fe Ry. Co.*,
840 F.2d 447 (7th Cir. 1988). .........................................................................................4

*Dow Chemical Co. v. UP Corp.*,
8 Fed. Supp. 2d 940 (S.D. Texas 1998). .........................................................................3

*Feliciano de law Cruz v. El Conquistador Resort and Country Club*,
218 F.3d 313 (1st Cir. 1995)……………………………………………………………..7

*Gateway v. Burlington N. & Santa Fe Ry*,
2002 US Dist LEXIS 14556. .........................................................................................3

*Indemnity Ins. Co. of North America v. K-Line*,
06 CIV 0615 (BSJ) slip. op. (S.D.N.Y. February 27, 2008)……………………………….9

*Nippon Express U.S.A. (Illinois) v. M/V Chang Jiang Bridge and Yang Ming Transport*,
2007 U.S. Dist. Lexis 92032 (S.D.N.Y. December 13, 2007),……………………………9

*Nippon Fire & Marine Insurance v. Skyway Freight Systems, Inc.*,
235 F.3d 53 (2d Cir. 2000.) . ..........................................................................................8

*Norfolk Southern Ry. Co. v. James N. Kirby, Pty Ltd. et al*,
543 U.S. 14, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004) . ...........................................1, 5, 8

*PCI Transp., Inc. v. Fort Worth * W.R.R. Co.*,
418 F.3d 535 (5th Cir. 2005). . .......................................................................................3

*Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*,
462 F.Supp.2d 1098 (C.D. Cal. 2006) . ...................................................................3, 4, 5

*Schoenmann Produce Co. v. Burlington Northern & Santa Fe Ry. Co.*,
420 F. Supp. 2d 757, 759 (D. Tex. 2006). ......................................................................3

*Sompo Japan Ins. Co. v. Norfolk Southern Ry. Co.*,
2008 WL 732011 (S.D.N.Y.)……………………..……………………………….…3

*Sompo Japan Ins. Co. v. UPRR Co.*,
No. 03-1604 (CM), 2007 WL 2230091 ………..…………………………………5, 6

*Sompo Japan Ins. Co. v. UPRR Co.*,
No. 02-9523 (DB), 2007 WL 4859462…………..………………………………… 5, 6

*Sompo Japan Ins. Co. of Am. v. Union Pacific Railroad Co.*,
456 F.3d 54 (2d Cir. 2006) . ................................................................................ ..1, 4, 5, 6

*Stolt Tank Containers, Inc. v. Evergreen Marine Corp.*,
962 F.2d 276 (2nd Cir. 1992) . ........................................................................................7

*St. Paul Fire and Marine Ins. Co. et al v. M.C. Western Mariner et al.*,
1999 U.S. Dist. LEXIS 12888 (SDNY 1999) . .............................................................7, 8

*Tamini Transformatori S.R.L. v. UP RR*,
2003 U.S. Dist. LEXIS 616 (SDNY 2003). . ...............................................................3, 4

*Tokio Marine & Fire Ins. Co. Ltd. v. Mitsui O.S.K. Lines, Ltd et al.*,
2003 U.S. Dist. LEXIS 24803 . ....................................................................................3, 4, 5

*Wilson v. New York City Housing Authority*,
2007 U.S. Dist. LEXIS 25258 at *28 ………..…………………………………………….1

**Statutes and Rules:**

49 USC §§10101 et seq. . .............................................................................................3, 4

49 USC §10709. .............................................................................................1, 3, 4, 5, 6, 8

49 USC §11706. .................................................................................................................3

Local Rule S.D.N.Y., Rule 56.1…………………………………………………..….3

I. **Mitsui's Admissions - Undisputed Facts**

The limitation of liability in Evergreen Marine Corporation's ("Evergreen") ocean bill of lading is fully enforceable. The shipment at issue is not subject to the Carmack Amendment ("Carmack") because the railroad and ocean carrier's contract was pursuant to 49 U.S.C. §10709, which takes them outside of the scope of Carmack and the decision in *Sompo Japan Ins. Co. of Am. v. Union Pacific Railroad Co.*, 456 F.3d 54 (2d Cir. 2006), hereafter "*Sompo I.*" *Kirby*[1] and *Altadis*[2] warrant the same result. The following key undisputed facts entitle Union Pacific Railroad Company ("UP") and Evergreen to partial summary judgment. The majority of these facts were unequivocally admitted. The remainder are admitted by the absence of any evidence to refute them. Local Rule S.D.N.Y., Rule 56.1[3]; *Wilson v. New York City Housing Authority*, 2007 U.S. Dist. LEXIS 25258 at *28 (failure to present evidence to rebut a fact supported by the moving party may be deemed an admission of that fact.)

1. The shipment was an international movement. (Fact 48.)
2. The shipment moved under an ocean through bill of lading. (Fact 48.)
3. The ocean carriage of 5400 miles was substantial. (Facts 50, 51.)
4. Evergreen and UP were parties to the ERTA. (Facts 52, 53, 54.)
5. Evergreen elected to ship this cargo under the ERTA. (Facts 52, 53, 54.)
6. The ERTA was subject to UP's then applicable rules circular, MITA 2-A. (Facts 55, 56.)[4]
7. The MITA 2-A was made under 49 U.S.C. §10709. (Fact 57.)
8. The MITA 2-A provides that UP's maximum liability for inland loss will be $500 per package on international shipments where the shipper released the shipment to the ocean

---

[1] *Norfolk Southern Ry. Co. v. James N. Kirby, Pty Ltd. et al*, 543 U.S. 14, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004) (hereafter "*Kirby*").

[2] *Altadis USA, Inc. v. Sea Star Line, LLC et al.*, 458 F.3d 1288 (11th Cir. 2006), (hereafter "*Altadis*.")

[3] "…(c) Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party *will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statements required to be served by the opposing party. (d) Each statement by movant or opponent* pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, *must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).*" (Emphasis added.)

[4] Mitsui purports to dispute this fact but has presented no evidence to refute UP's statement.

1

      carrier under an ocean bill of lading with a $500 per package limit of liability. (Fact 58.)
9. Evergreen and its shipper Asmo Co., Ltd. ("Asmo"), plaintiff Mitsui Sumitomo Insurance Company's ("Mitsui') insured, agreed to the following terms in the Evergreen through bill:

- Evergreen could subcontract any portion of the movement on any terms;
- Subcontracting carriers were not deemed liable under any theory;
- Subcontracting carriers would obtain the benefit of all limitations of liability to which Evergreen was entitled;
- Railroads are subcontractors and underlying carriers;
- In the case of carriage to the United States, COGSA exclusively governs the subcontractor and Evergreen;
- Where there is a private contract between Evergreen and the subcontracting rail carrier, the terms of that contract are incorporated into the Evergreen through bill as if they were set forth at length;
- Copies of any private contract between Evergreen and its subcontracting carrier are available at Evergreen's office for the shipper *upon the shipper's request*;
- On imports to the U.S., liability is limited to $500 per package or if local law invalidates that, to 2 SDRs per kilo of gross weight or 667 SDRs per package. (Facts 69, 70, 71, 73, 74, 75.)[5]

10. Full value cargo protection was offered by Evergreen to Asmo; Asmo declined that offer in lieu of a cheaper freight rate, and insured the cargo with Mitsui. (Facts 78, 79.)[6]
11. The MITA 2-A was available to view on the public website maintained by UP prior to and at all times during the shipment. (Fact 59.)
12. Evergreen had the ERTA and The MITA 2-A in its possession at the time of the shipment. (Fact 61.)
13. Asmo never requested a copy of the ERTA or the MITA 2-A from Evergreen. (Fact. 62.)
14. Evergreen did not perform the actual rail carriage of this shipment. (Facts 63, 64, 66, 67.)[7]
15. Evergreen is not licensed as a rail carrier. (Fact 68.)[8]
16. There were 165 packages comprising the shipment. (Fact 82.)
17. The total weight of the cargo was 35,234 kilograms. (Fact 84.)
18. As of 4/5/2006, 2 SDRs for 35,235 kilograms is calculated to $102,129.27. (Fact 85.)
    Clearly Asmo agreed that Evergreen and any of its subcontractors would be entitled to a

---

[5] Mitsui points the court to the actual contract paragraphs claiming there are some minor discrepancies in the quoted language but not disputing the actual terms of the agreement.

[6] With respect to the full value offer made by Evergreen to its shipper and the fact the full value offer was rejected (Facts 76, 77, 78), Mitsui presents no evidence to refute these facts. *Mitsui in fact never even responds to those facts with contrary evidence or any evidence.* Instead, Mitsui merely submits an argument that any offer so made was not an offer under Carmack.

[7] It is irrefutable that UP owned the tracks and locomotive equipment on which the shipment moved and that Mitsui did not move the shipment by rail.

[8] Mitsui presents no evidence to dispute this fact. Mitsui only states that Evergreen is "presumably" a licensed as a rail carrier.

2

$500 per package limit of liability. Asmo insured itself against its risk of loss and this court should not permit Mitsui to escape the deal that its insured entered into.

II.     The Clear Language Of 49 U.S.C. §10709 Controls – It
        Cannot Be Subject To 49 U.S.C. §10502 Nor 49 U.S.C. §11706

The vast weight of authority holds that contracts entered into under 49 U.S.C. §10709 are neither subject to Carmack nor any portion of the regulations contained within 49 U.S.C. §§ 10101 et seq.[9] Not only does the language of §10709 expressly so mandate this but every single case which has considered this topic has so held, except for the two decisions which Mitsui cites, *Tamini Transformatori S.R.L. v. UP RR,* 2003 U.S. Dist. LEXIS 616 (SDNY 2003) and Judge Chin's dicta in *Sompo Japan Ins. Co. v. Norfolk Southern Ry. Co.,* 2008 WL 732011 (S.D.N.Y. 2008). As discussed at length in UP's initial opposition papers, *Tamini* incorrectly applied 49 U.S.C. §10502 to an entirely deregulated contract. In *Sompo Japan Ins. Co. v. Norfolk Southern Ry. Co.,* Judge Chin's indication that he *would have* followed *Tamini* if the contract in that case had been made under §10709 is merely dicta, since he held that the contract in that case was not made under §10709. *Tamini* is as wrongly decided as it is unpersuasive in the instant case. Section 10709 requires the opposite result from that of *Tamini. Tamini's* holding was based on three decisions *not one of which involved a contract under §10709.*[10] UP's counsel is informed by

---

[9] *Am. Rock Salt Co., LLC. v. Norfolk Southern Corp.*,180 F.Supp.2d 420, 425 (W.D.N.Y. 2001); *Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co. Ltd.* 1999 U.S. Dist. WL 1122998 (C.D. Cal., June 18, 1999); *Dow Chemical Co. v. Union Pacific Corp., 8 F. Supp. 2d 940, 941-942 (S.D. Tex. 1998)*; *Gateway v. Burlington N. & Santa Fe Ry*, 2002 US Dist LEXIS 14556,*7, *8; *Schoenmann Produce Co. v. Burlington Northern & Santa Fe Ry. Co.*, 420 F. Supp. 2d 757, 759 (D. Tex. 2006)*; PCI Transp., Inc. v. Fort Worth * W.R.R. Co.*, 418 F.3d 535, 541 (5th Cir. 2005); *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*, 462 F.Supp.2d 1098 (C.D. Cal. 2006) (appeal filed Dec. 12, 2006); *Tokio Marine & Fire Ins. Co. Ltd. v. Mitsui O.S.K. Lines, Ltd.*, 2003 U.S. Dist. LEXIS 24803 at * 7.

[10] *Tamini* cited *at *24-25* the following cases - not one of which involved a §10709 contract*: Consolidated Rail Crop. v. Sobiech,* 710 F .Supp. 988, 990 (SDNY 1989); *Bay State Shippers,*

3

Norfolk Southern's counsel that Judge Chin's opinion will be appealed if Norfolk Southern's motion for reconsideration is denied. The issues in *Sompo I* relating to the enforcement of through bill of lading terms by subcontracting railroads and the issues in *Tamini* and the decision of Judge Chin relating to the effect of §10709, may ultimately be decided by the U.S. Supreme Court. UP urges this court not to follow *Tamini*. Instead, it should consider the specific language of §10709 and recognize that all contracts made thereunder are *entirely deregulated* and not subject to 49 U.S.C. §§ 10101 et seq. A railroad moving cargo under a §10709 contract cannot lawfully be required to offer the shipper alternative Carmack terms as a matter of statutory law.

*Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*, 462 F.Supp.2d 1098 (C.D. Cal. 2006) (appeal filed Dec. 12, 2006)("*Regal-Beloit*"), cited in defendants' initial brief, is directly on point. The district court therein enforced the forum selection clause in ocean carrier K-Line's through bill in UP's favor, <u>holding that Carmack was inapplicable because UP's contract with K-Line (also under MITA) was a §10709 contract</u>. *Id.,* 1104. *See also, Tokio Marine & Fire Ins. Co. Ltd. v. Mitsui O.S.K. Lines, Ltd.*, 2003 U.S. Dist. LEXIS 24803 at * 7 (holding that UP was entitled to COGSA's $500 through bill package limit. <u>Carmack did not apply because UP's contract with its shipper was made under §10709.</u> *Id*., *4, *7, hereafter "*Tokio Marine*".) It is undisputed that the contract in the instant case falls within §10709. Neither Carmack nor the Staggers Amendment apply. UP had no obligation to offer Asmo alternative Carmack terms. Asmo agreed to the $500 per package limitation of liability and UP and Evergreen are entitled to the benefit of that agreement.

### III. Kirby Mandates that UP and Evergreen Receive The Benefit of the $500 Per Package Limitation of Liability which the Shipper Agreed To Grant The Carrier And to All

---

*Inc. v. Atchison Topeka* & Santa Fe Ry. Co., 1995 U.S. Dist. LEXIS 30154, No. 95 Civ., 5586, 1995 WL 865481, at * 4 (C.D. Cal. Nov. 30, 1995); *Cooperative Shippers, Inc. v. Atchison Topeka* & Santa Fe Ry. Co., 840 F.2d 447, 452 (7th Cir. 1988).

4

**Subcontracting Carriers**

This international shipment with substantial ocean carriage of 5400 miles is subject to maritime law under both *Kirby* and *Altadis*. However, Mitsui ignores these cases and relies on *Sompo I,* and the two recent Southern District of New York decisions of Judges McMahon and Batts following *Sompo I.* [11] Those two decisions are currently on appeal to the Second Circuit. If affirmed, UP intends to petition to the U.S. Supreme Court for certiorari. As the U.S. Supreme Court granted certiorari in *Altadis* on the exact same issue which is on appeal in those two cases, it is anticipated that the high court will grant review if the Second Circuit affirms the district court and rules against UP. As discussed at length in UP's initial moving papers, COGSA expressly permits its terms to be extended inland. The U.S. Supreme Court supports the extension of COGSA inland to cover rail carriers as the most expeditious means, in international shipments, to secure the paramount goal of uniformity (and thus predictability) of law. Neither *Kirby* nor *Altadis* require the railroad to offer Carmack terms to the cargo shipper. COGSA has a requirement that an offer of full value protection be made to the ocean carrier's shipper. This requirement was satisfied when Evergreen offered Asmo the opportunity to ship the cargo under a full value liability rate. Asmo declined that offer in favor of a cheaper freight rate, and then procured insurance from Mitsui to protect its added exposure. Mitsui has failed to refute UP's evidence on this issue. The bill of lading's $500 per package limitation is enforceable under *Kirby* and *Altadis* as well as under §10709. See *Regal-Beloit* and *Tokio-Marine, supra.*

Mitsui's reliance on *Sompo I* is misplaced. *Sompo I* and the two decisions by Judge Batts and Judge McMahon are inapposite. Neither of those decisions considered the effect of a §10709

---

[11] *Sompo Japan Ins. Co. v. UPRR Co.*, No. 03-1604 (CM), 2007 WL 2230091 (SDNY, Aug. 2, 2007)(on appeal); *Sompo Japan Ins. Co. v. UP RR Co.*, No. 02-9523 (DB), 2007 WL 4859462 (Sept. 26, 2007) (on appeal).

contract.[12] Those decisions were based on the premise that the railroad was subject to Carmack. However, the premise simply does not and cannot arise in a §10709 contract case. Even if *Sompo I* was not inapposite, UP and Evergreen have demonstrated in its opposition papers that the full value offer which was made to Asmo by Evergreen, but rejected, should satisfy any requirement that a full value offer be made by the railroad. UP did not issue a separate domestic bill of lading. This fact was not refuted by Mitsui. UP recognizes that *Sompo I* held that the issuance of a separate domestic bill of lading was irrelevant as to whether COGSA's package limit would extend inland. However, the court should not overlook the vast weight of authority that holds that the lack of a separate domestic ocean bill of lading permits the through ocean bill of lading terms to be extended inland to the railroad.

### IV.     Asmo Was Fully Aware Of The $500 Per Package Limit Of Liability

Mitsui has admitted the following facts: that the application of the ERTA and the MITA 2-A was agreed to by Evergreen and UP; that Evergreen initiated the request to UP that the shipment move under the ERTA; that the ERTA and the MITA-2A were in Evergreen's possession before this shipment; that its insured agreed with Evergreen that Evergreen could sub-contract any portion of the movement with whomsoever it desired on any terms; that any private contract between Evergreen and the subcontractor would be available at Evergreen's office; and that Asmo could ask for a copy of the contract from Evergreen if it wanted to see the terms, but failed to do so. Ignoring these critical facts, Mitsui speculates that because the ERTA contains a confidentiality

---

[12] In *Sompo Japan Ins. Co. v. UP RR Co.*, No. 03-1604 (CM), 2007 WL 2230091 (SDNY, Aug. 2, 2007)(appeal filed), UP raised the section10709 issue for the first time on remand. This court held that it was without authority to consider that argument due to the limited scope of the Second Circuit's remand order. (Affidavit of Barry N. Gutterman ("BNG") dated 2/28/08 at ¶ 1.) In *Sompo Japan Ins. Co. v. UP RR Co.*, No. 02-9523 (DB), 2007 WL 4859462 (S.D.N.Y. September 26, 2007) (on appeal), §10709 was neither considered nor commented on by Judge Batts. (BNG ¶¶ 1-2.)

6

clause, it would not have been produced by Evergreen had Asmo requested it. Mere speculation or conjecture will not defeat a party's entitlement to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986); *Feliciano de law Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 313, 315 (1st Cir. 1995). Not only was the carrier not required to give Asmo actual notice of the liability limit in order to enforce it, *i.e. Stolt Tank Containers, Inc. v. Evergreen Marine Corp.*, 962 F.2d 276 at 279-80 (2nd Cir. 1992), the limitation which Asmo expressly agreed to with Evergreen is the exact same limitation contained in UP's contract. Under these circumstances, Mitsui's effort to make it appear that UP tried to hide the limitation of liability from Asmo is absurd.

Asmo claims that the EDI references to the governing rail contracts were vague. This is not true. Instead, they were known to both Evergreen and UP, and comport with standard business practices in the shipping industry.[13] Even more importantly, Asmo never had to refer to the EDI references for the governing rail contracts in the first instance because, by its own agreement, all Asmo had to do was ask Evergreen for the relevant governing contracts.[14] Asmo never made such request, and Mitsui cannot complain that the contract is unenforceable based on its speculation that Asmo might not be able to understand which rail contracts applied. This argument is even more specious since Asmo expressly agreed with Evergreen that the subcontracting carrier is entitled to a $500 per package limit, and that Asmo would not sue the subcontracting carrier for cargo loss or

---

[13] Affidavit of T.D. Sheldon dated 3/03/08 (hereafter "TDS") at ¶ 4; Affidavit of Patrick Chen of Evergreen, dated March 4, 2008, at ¶ 3.

[14] The case of *St. Paul Fire and Marine Ins. Co. v. M.V. Western Mariner et al*, 1999 U.S. Dist. LEXIS 12888 (S.D.N.Y. 1999) to which Mitsui cites has no relevance here. That case involved the ocean carrier's failure to explicitly state it was making an offer of full value terms under COGSA, which is a statutory requirement in order for the ocean carrier to avail itself of the package limit. In this case, Asmo agreed that it if wanted the terms of the private railroad contract with the ocean carrier, it would ask for them from Evergreen. However, Asmo never requested those terms.

damage.

Mitsui contends such contracts have not yet been produced in this litigation and this fact is relevant to their enforcement. Mitsui admits that UP offered to produce the ERTA to Mitsui's counsel with redactions.  Mitsui also admits that the MITA 2-A is available on UP's website. Whether the contracts have been produced herein is merely a discovery issue.  This has no bearing on whether the contracts are enforceable.  Mitsui disparagingly references a "signing bonus" which Evergreen received from UP. Evergreen's receipt of any financial incentives for conducting business with UP has nothing to do with the issue of whether the contracts are enforceable. Asmo was fully aware of the $500 per package limit of liability.  That Asmo insured its risk with Mitsui further evidences that knowledge.  *St. Paul Fire and Marine Ins. Co. v. M.C. Western Mariner et al., supra*. at *25-26).  Mitsui complains that Evergreen contracted with UP to supply Asmo with a copy of the MITA 2-A or else indemnify UP.  Such an obligation would only bear upon UP's rights against Evergreen and does not create any rights in Asmo. The package limitation that Asmo agreed to is the same package limitation as in the MITA 2-A.  A shipper cannot argue that a secondary carrier's liability limit was "unknown" to it where the liability limit in its own contract with the primary carrier under a through bill is "exactly the same."  *Nippon Fire & Marine v. Skyway Freight Systems*, 235 F.3d 53 at 62 (2d Cir. 2000).  Mitsui is bound, both by the terms of the through bill, and under the MITA 2-A, to $500 per package.

**V.    Mitsui Has Not Presented Any Evidence That Evergreen Was A Rail Carrier For This Movement**

Evergreen is not subject to Carmack for the same reasons that UP is not subject to Carmack.  First, §10709 takes this movement outside of the scope of Carmack. Second, under *Kirby* and *Altadis*, maritime law and COGSA governs, not Carmack. Third, Evergreen is not a rail carrier.  Mitsui has not presented any admissible evidence to raise a triable issue of fact that

8

Evergreen was a rail carrier for this movement. Instead, Mitsui refers to promotional materials on Evergreen's website (Exhibits 17 and 18 to the Mazaroli Reply Affidavit), wherein Evergreen advertises to the public generally that it is an ocean carrier with the capacity to interface with rail carriers. This representation is not an admission by Evergreen that it is a rail carrier for the subject movement. Mitsui also mischaracterizes UP and Evergreen's response to Mitsui's Fact No. 6 in its Rule 56.1 Statement. Fact No. 6 merely stated that Evergreen was engaged in the business of providing intermodal transportation services. This means that Evergreen was engaged in the business of providing some form of intermodal transportation services – it is not an admission that Evergreen was a rail carrier for the instant shipment.

Mitsui contends that because Evergreen sometimes utilizes an intermodal facility in Los Angeles, equipped with rail tracks, and that it utilizes a switching facility in Tacoma where containers are taken off of ships and placed onto switching tracks at an intermodal yard, that Evergreen is a rail carrier for this particular movement.[15] However, Mitsui admits that UP's locomotives and tracks operated by UP were used for the rail movement for this shipment (Defendants Undisputed Fact No. 65). The fact that the train on which the shipment moved was dedicated by UP for Evergreen shipments does not magically convert Evergreen into a rail carrier.

Mitsui's reference to the deposition of Don Hartmann, UP's 30(b)(6) witness, only reveals such irrelevant facts that; (1) the marine terminal placed the container on the railcar at origin on behalf of Evergreen. This does not make Evergreen a rail carrier; and (2) that Dan Hartmann did

---

[15] As support for Evergreen's position, see *Nippon Express U.S.A. (Illinois) v. M/V Chang Jiang Bridge and Yang Ming Transport,* 2007 U.S. Dist. Lexis 92032 (S.D.N.Y. December 13, 2007), wherein the stevedore was not held to be an underlying carrier as its element of transportation was de minimus and incidental to the stevedore's main function of loading and unloading vessels. Also see, as support for Evergreen's position, *Indemnity Ins. Co. of North America v. K-Line*, 06 CIV 0615 (BSJ) slip. op. (S.D.N.Y. February 27, 2008) cited by Mitsui in their Reply Memorandum of Law, copy attached as Exhibit "A".

9

not know whether Evergreen billed Asmo more for the rail segment of the transit than it paid UP. Mitsui does not refute the declarations of Evergreen's witnesses which conclusively demonstrated that Evergreen was not the rail carrier for this shipment. See the April 3, 2008 Declaration of Patrick Chen, ¶¶2(a) - (f).

Finally, the decision cited by Mitsui – *American Orient Exp. Ry. v. Surface Transportation Bd.*, 484 F. 3d 554 (D.C. Cir. 2007), is distinguishable as plaintiff had as its primary business the selling of trips on its luxury rail cars, which is not the situation in the instant case.

## VI. This Court Should Not Enter Summary Judgment For Mitsui For the Full Amount of the Claim

UP has disputed, and continues to dispute, the full value of plaintiff's claim. UP has not made any admissions as to the full value of the cargo. In the event that this court determines that the package limit is unenforceable, the issue of the full value of the cargo remains a triable issue. UP's response to Fact No. 45 (admission of UP liability) is not an admission for the full value. UP's Fact No. 82 (that there were 165 damaged packages of cargo in the container) is not an admission of the full value. Remaining for determination is the actual invoice value, the extent of damage to the 165 packages, the extent of damage to the cargo within them, whether any cargo was salvageable, whether Mitsui properly salvaged it, and the propriety and accuracy of the other components of damages. Not one fact is proffered in Mitsui's 56.1 Statement as to the full value of the cargo. Mitsui's only reference to a dollar figure (Fact No. 42), merely states that the insurance claim paid by Mitsui was $422,129.33. This is not evidence of the full value of the cargo.

## VII. Conclusion

For the foregoing reasons, Mitsui's motion for partial summary judgment should be denied and UP's and Evergreen's cross-motion for partial summary judgment should be granted.

Dated:  New York, New York
       April 4, 2008

          /s/ Barry N. Gutterman
          Barry N. Gutterman (BG 6410)
          Barry N. Gutterman & Associates, P.C.
          60 East 42nd Street - 46th Floor
          New York, New York 10165
          (212) 983-1466
          bngassc@aol.com
          Attorneys for Defendants
          Union Pacific Railroad Company and Evergreen
          Marine Corporation

To:    David L. Mazaroli (DM-2929)
        11 Park Place – Suite 1214
        New York, New York 10007-2801
        Phone: (212) 267-8480
        Fax: (212) 732-7352
        Attorneys for Plaintiff

UP2718.UP Reply.4.2.08

## DECLARATION OF SERVICE BY MAIL

I, Judd Hollander, declare.

I am and was at the time of service, over the age of 18 years and not a party to the within action. My business address is 60 East 42nd Street - 46th Floor
New York, New York 10165.

On April 4, 2008, I served the document(s) described as **DEFENDANT UNION PACIFIC RAILROAD AND EVERGREEN MARINE'S REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT** by depositing a true copy thereof enclosed in a post-paid wrapper, via regular mail, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York addressed to each of the foregoing persons at the last known address set forth after each name.

Law Office of David Mazaroli
11 Park Place – Suite 1214
New York, NY 100007
(212) 267-8480 (Phone)
(212) 732-7352 (Fax)
dlm@mazarolilaw.com

   Counsel for Mitsui Sumitomo Insurance Co. Ltd.

At the time of service, there was regular delivery of United States mail between the place of deposit and the place of address. I am familiar with the practice of Barry N. Gutterman & Assoc., P.C. for the collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with the ordinary course of business, the above-mentioned document(s) would have been deposited with the United States Postal Service on April 4 2008, on the same day on which it was placed with Barry N. Gutterman & Assoc., P.C. for deposit. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 4, 2008 at New York, New York.

                                                          _____
                                                          Judd Hollander