**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------x
                                         :

INDEMNITY INSURANCE COMPANY OF     :
NORTH AMERICA et al.,             :
                                           :

                Plaintiffs,     :
                                         :  06 Civ. 0615 (BSJ)
              v.                :  (LEAD)
                                           :

K-LINE AMERICA, INC. et al.,        :  Consolidated with:
                                         :

                Defendants.     :
                                         :
-----------------------------------------x
                                         :

ROYAL & SUN ALLIANCE INSURANCE PLC,  :
                                         :

                Plaintiff,      :
                                         :

              v.                :  06 Civ. 2557
                                         :

K-LINE AMERICA, INC. et al.,        :

                Defendants.     :
                                         :
-----------------------------------------x
                                         :

MITSUI SUMITOMO INSURANCE CO. LTD.   :
et al.,                            :
                                         :

                Plaintiffs,     :
                                         :  06 Civ. 2956
              v.                :
                                         :

K-LINE AMERICA, INC. et al.,        :

                Defendants.     :
                                         :
-----------------------------------------x
                                         :

PHILIPS PC PERIPHERALS, a division of :
PHILIPS NORTH AMERICA CORP., and    :
SHUR LINE, a division of NEWELL     :
OPERATING COMPANY,             :  06 Civ. 2962
                                         :

```
                        Plaintiffs,        :
                v.                          :
                                            :
M/V CHANG JIANG BRIDGE et al.,              :
                                            :
                        Defendants.         :
                                            :
----------------------------------------x
                                            :
FEDERAL INSURANCE COMPANY,                  :
                                            :
                        Plaintiff,          :
                                            :
                v.                          :    06 Civ. 3038
                                            :
K-LINE AMERICA, INC. et al.,                :
                                            :
                        Defendants.         :
                                            :
----------------------------------------x
                                            :
ACK CONTROLS, INC.,                         :
                                            :
                        Plaintiff,          :
                                            :
                v.                          :    06 Civ. 3040
                                            :
K-LINE AMERICA, INC. et al.,                :
                                            :
                        Defendants.         :
                                            :
----------------------------------------x
                                            :
NAVIGATORS MANAGEMENT CO.,                  :
                                            :
                        Plaintiff,          :
                                            :
                v.                          :    06 Civ. 3042
                                            :
UNION PACIFIC RAILROAD et al.,              :
                                            :
                        Defendants.         :
                                            :
----------------------------------------x
```

**BARBARA S. JONES**                         <u>Order</u>
**UNITED STATES DISTRICT JUDGE**

The above-captioned consolidated cases arise out of a 30-car train derailment that occurred in Oklahoma in April of 2005. Most of the Plaintiffs are insurers that have subrogated the claims of the cargo owners whose goods were damaged in the derailment.  Defendants here are various carriers with whom the cargo owners contracted to ship the goods.  Before the Court are motions to dismiss filed by Defendant Horizon Intermodal Express ("Horizon") against Plaintiffs Mitsui Sumitomo Insurance Co. Ltd., Bank of Philippine Islands, and Mitsui Sumitomo Insurance in Docket No. 06 Civ. 2956, and by Defendants K-Line America, Inc., and Kawasaki Kisen Kaisha, Ltd. (collectively, "K-Line") against various Plaintiffs in Docket Nos. 06 Civ. 2557, 06 Civ. 2962, 06 Civ. 3038, 06 Civ. 3040, and 06 Civ. 3042.[1]  These Defendants seek dismissal of most of the above-captioned complaints through the enforcement of contractual forum selection clauses.  For the reasons that follow, Defendants' motions are GRANTED.

## BACKGROUND

Defendants Horizon and K-Line contracted with various cargo owners to carry shipments from ports in Asia to numerous destinations within the United States.  These agreements were

---

[1] K-Line seeks dismissal of the complaints of Royal & Sun Alliance Insurance PLC in Docket No. 06 Civ. 2557, Shur Line in Docket No. 06 Civ. 2962, Federal Insurance Company in Docket No. 06 Civ. 3038, ACK Controls, Inc. in Docket No. 06 Civ. 3040, and Navigators Management Company in Docket No. 06 Civ. 3042.

memorialized in bills of lading, which are contracts that "record[] that a carrier has received goods from the party that wishes to ship them, state[] the terms of carriage, and serve[] as evidence of the contract for carriage." Norfolk S. Railway Co. v. Kirby, 543 U.S. 14, 18 (2004).  The bills of lading were through bills, i.e., "they covered the entire journey from start to finish, including both the ocean and land legs," and were intermodal, i.e., "contemplat[ing] multiple modes of transportation, including ocean and rail carriage," Sompo Japan Insurance Co. of America v. Union Pacific Railroad Co., 456 F.3d 54, 56 (2d Cir. 2006).  Both Horizon and K-Line subcontracted with Union Pacific for rail carriage of the cargo from Long Beach, California to Chicago, Illinois; the cargo was damaged when the Union Pacific train upon which it was carried derailed in Oklahoma on April 21, 2005.  Numerous actions have been filed based upon this derailment in this District and others.

The K-Line bills of lading contained, inter alia, the following language:

> 2.    (Governing Law and Jurisdiction)  The contract evidenced by or contained in this Bill of Lading shall be governed by Japanese law except as may be otherwise provided for herein, and any action thereunder or in connection with Carriage of Goods shall be brought before the Tokyo District Court in Japan, to whose jurisdiction Merchant irrevocably consents.

(Decl. of Sherry Johnson, Ex. B.)  In addition, the K-Line bills contained a clause, commonly known as a "Himalaya clause,"[2] that provided as follows:

> 5.    (Sub-Contracting;  Exemptions,  Immunities,
> Limitations, etc. of Participant(s))  (1) Carrier
> shall  be  entitled  to  sub-contract  on  any  terms
> whatsoever      Carriage,      including      without
> limitation,  the  loading,  unloading,  storing,
> warehousing,  handling  and  any  and  all  duties
> whatsoever  undertaken  by  Carrier  in  relation  to
> Goods  by  any  of  the  following:  (I)  any  Connecting
> Carrier . . . (III) sub-contractors, . . . agents
> and  independent  contractors . . . (2)  Merchant
> undertakes  that . . . [w]ithout  prejudice  to  the
> foregoing,  every  such  vessel  and  Such
> Participant(s)  shall  have  the  benefit  of  all
> provisions  herein  benefi[]ting  Carrier  as  if  such
> provisions  were  expressly  for  their  benefit;  and
> in  entering  into  this  contract,  Carrier,  to  the
> extent  of  those  provisions,  does  so  not  only  on
> its  own  behalf,  but  also  as  agent  and  trustee  of
> such  vessel  and  Participant(s).

(Id.)

The front side of Horizon's bills of lading contains a "JURISDICTION AND LAW CLAUSE" that provides that

> [t]he  Contract  evidenced  by  or  contained  in  this
> Bill  of  Lading  shall  be  governed  by  the  law  of
> Hong  Kong  and  any  claim  or  dispute  arising
> hereunder  or  in  connection  therewith  shall
> (without  prejudice  to  the  Carrier's  right  to
> commence  proceedings  in  any  other  jurisdiction)
> be  subject  to  the  jurisdiction  of  the  Courts  of
> Hong  Kong.

---

[2] A Himalaya clause is "a contractual provision extend[ing] to third parties the defenses, immunities, limitations or other protections a law or bill of lading confers on a carrier." Sompo Japan, 456 F.3d at 56-57 (internal quotations omitted).  Such clauses are "construed like any other contracts." Kirby, 543 U.S. at 31.

(Decl. of James W. Carbin, Ex. B.)  Additionally, on the reverse side[3] of the Horizon bills of lading is a provision that reads

> (A) This contract of carriage shall be governed by and construed in accordance with Hong Kong law.

> (B) Any dispute arising out of or in connection with the contract contained in or evidenced by the transportation agreement shall be referred to the exclusive jurisdiction of the Hong Kong Courts.  Save as aforesaid the Merchant shall not commence any action or legal proceedings (including but not limited to proceedings commenced for the purpose of obtaining security in respect of any claim).

(Decl. of Alissa M. Ryder, Ex. A.)  The Himalaya clause in the Horizon bills provided

> (1) The Carrier shall be entitled to sub-contract on any terms the whole or any part of the Carriage.

> (2)  The Merchant undertakes that no claim or allegation shall be made against any person or Ship whatsoever, other than the Carrier, including, but not limited to, the Carrier's servants or agents, any independent contractor and his servants or agents, and all others by whom the whole or any part of the Carriage, whether directly or indirectly, is procured, performed or undertaken, which imposes or attempts to impose upon any such person or Ship any liability whatsoever in connection with the Goods or the Carriage; and if any claim or allegation should nevertheless be made, to

---

[3] Horizon initially submitted copies of only the front side of its bills of lading.  It moved to supplement its motion to dismiss with the reverse side of the bills of lading, which Plaintiffs opposed.  Plaintiffs' responsive submission, though styled as an opposition to the motion, does not address the introduction of the reverse side except to describe it as "virtually illegible," and indeed relies on another portion of the reverse side to support their primary argument.  In any event, because the reverse side of the bills of lading provides the complete contract at issue in this case, the Court GRANTS Horizon's motion.

defend, indemnify and hold harmless the Carrier
against all consequences thereof. Without
prejudice to the foregoing every such person and
Ship shall have the benefit of all provisions
herein benefiting the Carrier as if such
provisions were expressly for its benefit and in
entering into this contract the Carrier, to the
extent of these provisions, does so not only on
its own behalf but also as agent or trustee for
such persons and Ships and such persons and Ships
shall to this extent be or be deemed to be
parties to this contract.

(Id.)

## DISCUSSION

Horizon and the K-Line Defendants seek the dismissal of the
complaints against them through the enforcement of the
aforementioned forum selection clauses. Plaintiffs argue
principally that the Carmack Amendment, a statutory scheme that
"create[s] a national scheme of carrier liability for goods
damaged or lost during interstate shipment under a valid bill of
lading," Sompo, 456 F.3d at 58 (quoting Ting-Hwa Shao v. Link
Cargo (Taiwan) Ltd., 986 F.2d 700, 704 (4th Cir. 1993)),
prohibits enforcement of the forum selection clause in these
cases. In addition, the Plaintiffs argue that even if the
Carmack Amendment does not apply here, that the forum selection
clauses here do not mandate the dismissal of the complaints
because of their permissive nature, that Defendants have waived
enforcement of the clauses through their actions during this
litigation, and that countervailing factors of efficiency and

- 7 -

economy militate against enforcement of the clause. Plaintiffs'
contentions are unavailing.

I.   The Carmack Amendment

All the Plaintiffs argue that the Carmack Amendment, 49
U.S.C. § 11706 et seq., and its specific venue provisions
prohibit the enforcement of the forum selection clauses in these
actions. Defendants contend that under the terms of the
statute, they cannot be liable parties, and that the Carmack
Amendment therefore does not apply. The Court agrees with
Defendants that the Carmack Amendment does not apply to them.

A.   The Scope of the Carmack Amendment

As noted previously, the Carmack Amendment was enacted "in
an effort 'to create a national scheme of carrier liability for
goods damaged or lost during interstate shipment under a valid
bill of lading.'" Sompo, 456 F.3d at 58 (quoting Ting-Hwa Shao
v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 704 (4th Cir. 1993)).
The Second Circuit has observed that "one of the major purposes
of [the Carmack Amendment] was to provide shippers in interstate
commerce with the right to litigate claims against carriers in
forums convenient for the shippers" by "codif[ying] the already
existing common law right of the shipper to proceed against a
carrier in any forum that had jurisdiction over the carrier and
the subject matter" and giving "the shipper the new right to
proceed against the initial carrier in a case where damage or

- 8 -

loss occurred while the shipment was in the hands of a subsequent carrier." Aaacon Auto Transport, Inc. v. State Farm Mutual Automobile Insurance Co., 537 F.2d 648, 653 (2d Cir. 1976). Thus, the Carmack Amendment "must be construed to apply not merely to [a carrier's] liability for monetary damages but to the carrier's liability to suit in the forum of the shipper's choice." Id. at 655. The Second Circuit has recently held that the Carmack Amendment "applies to the domestic inland portion of a foreign shipment regardless of the shipment's point of origin," Sompo, 456 F.3d at 68.

The Carmack Amendment imposes liability on carriers under two discrete provisions.

Section 11706 governs the liability of rail carriers,[4] and provides in relevant part:

> (a) A rail carrier providing transportation or service subject to the jurisdiction of the Board under this part shall issue a receipt or bill of lading for property it receives for transportation under this part. That rail carrier and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Board under this part[5] are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this

---

[4] A "rail carrier" is "a person providing common carrier railroad transportation for compensation." 49 U.S.C. § 10102(5).

[5] "Part" here is Part A of Subtitle IV of Title 49. The jurisdiction of the Surface Transportation Board over this Part is governed by 49 U.S.C. § 10501, which provides that "the Board has jurisdiction over transportation by rail carrier that is . . . only by railroad; or . . . by railroad and water, when the transportation is under common control, management, or arrangement for a continuous carriage or shipment."

subsection is for the actual loss or injury to the property caused by—

(1) the receiving rail carrier;

(2) the delivering rail carrier; or

(3) another rail carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading.

. . . .

(d)(1) A civil action under this section may be brought in a district court of the United States or in a State court.

(2)(A) A civil action under this section may only be brought—

(i) against the originating rail carrier, in the judicial district in which the point of origin is located;

(ii) against the delivering rail carrier, in the judicial district in which the principal place of business of the person bringing the action is located if the delivering carrier operates a railroad or a route through such judicial district, or in the judicial district in which the point of destination is located; and

(iii) against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred.

49 U.S.C. § 11706 (emphases added).

Section 14706 governs liability for various other carriers, and it provides in pertinent part

(a) General liability.—

    (1) Motor carriers and freight forwarders.-- A <u>carrier</u> providing transportation or service <u>subject to jurisdiction under subchapter I or III of chapter 135</u>[6] shall issue a receipt or bill of lading for property it receives for transportation under this part. That <u>carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105</u>[7] are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country . . . .

  . . . .

(d) Civil actions.—

    (1) Against delivering carrier.--A civil action under this section may be brought against a delivering carrier in a district court of the United States or in a State court. Trial, if the action is brought in a district court of the United States is in a judicial district, and if in a State court, is in a State through which the defendant carrier operates.

---

[6] The jurisdiction of the Surface Transportation Board under subchapter I of chapter 135 is over "transportation by motor carrier and the procurement of that transportation." 49 U.S.C. § 13501. Subchapter III provides for Board jurisdiction over "service that a freight forwarder undertakes to provide, or is authorized or required under this part to provide." 49 U.S.C. § 13531. A "freight forwarder" is "a person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business." 49 U.S.C. § 13102(8).
[7] Jurisdiction under chapter 105 is the previously discussed jurisdiction over rail carriers.

> (2) Against carrier responsible for loss.--A
> civil action under this section may be
> brought against the carrier alleged to have
> caused the loss or damage, in the judicial
> district in which such loss or damage is
> alleged to have occurred.

49 U.S.C. § 14706 (emphases added).

B.   The Applicability of the Carmack Amendment

Plaintiffs contend that Sompo's holding that the Carmack
Amendment applies to the inland portion of a foreign shipment
prohibits the enforcement of the forum selection clauses here.
However, their focus on the holding of Sompo does not address
the underlying statutory bases for liability provided by the
Carmack Amendment.  The Court finds that under the statute,
Defendants are not parties upon whom liability can be imposed in
these circumstances, and thus Sompo is inapplicable.

1.   Section 11706

Section 11706 of the Carmack Amendment provides for the
imposition of liability upon the "rail carrier" that issues a
bill of lading for property and transports the goods, and "any
other carrier" that "delivers" the property and "provid[es]
transportation subject to the jurisdiction of the [Surface
Transportation] Board" under Part A of Subtitle IV of Title 49
governing rail transportation.  Neither the K-line Defendants
nor Horizon are "rail carriers" by definition, nor do they meet
the statutory requirements for imposing liability upon "any

other carrier" under this section—neither K-Line nor Horizon
provide transportation subject to the Surface Transportation
Board's jurisdiction over rail transportation, nor did they
deliver the goods in question here.

2.   Section 14706

This section of the Carmack Amendment imposes liability
upon a "carrier providing transportation subject to jurisdiction
under subchapter I or III of chapter 135," i.e., transportation
by motor carrier and the procurement of that transportation, and
service by freight forwarders, who transports the goods and
issues a bill of lading, and "any other carrier" who delivers
the goods and provides transportation by motor carrier or rail,
or service as a freight forwarder.

None of the Defendants provides transportation by motor
carrier or rail as defined by the Carmack Amendment.  A "freight
forwarder" is defined as "a person holding itself out to the
general public (other than as a pipeline, rail, motor, or water
carrier) to provide transportation of property for compensation
and in the ordinary course of its business." 49 U.S.C. §
13102(8) (emphasis added).  The K-Line Defendants are water
carriers and therefore are, by definition, not freight
forwarders.  Horizon is a non-vessel operating common carrier
("NVOCC"), an entity that is distinct from a freight forwarder.
As the Second Circuit has noted,

> The job of a non-vessel operating common carrier
> ("NVOCC") is to consolidate cargo from numerous
> shippers into larger groups for shipment by an
> ocean carrier. A NVOCC-as opposed to the actual
> ocean carrier transporting the cargo-issues a
> bill of lading to each shipper. If anything
> happens to the goods during the voyage the NVOCC
> is liable to the shipper because of the bill of
> lading that it issued.
>
> A freight forwarder . . . , on the other
> hand, simply facilitates the movement of cargo to
> the ocean vessel. . . . Freight forwarders
> generally make arrangements for the movement of
> cargo at the request of clients and are vitally
> different from carriers, such as vessels,
> truckers, stevedores or warehouses, which are
> directly involved in transporting the cargo.
> Unlike a carrier, a freight forwarder does not
> issue a bill of lading, and is therefore not
> liable to a shipper for anything that occurs to
> the goods being shipped.

Prima U.S. Inc. v. Panalpina, Inc., 223 F.3d 126, 129 (2d Cir.

2000) (internal citations omitted).

3.   Plaintiffs' Other Arguments for Carmack Amendment Liability

Plaintiffs' argument based on Sompo's holding does not

address the statutory framework for liability as just described

above.   Importantly, in Sompo, the Circuit extended liability to

a rail carrier, an entity clearly within the scope of liability

under the statutory scheme.   In addition, they rely heavily on

Kyodo U.S.A. v. Cosco North America, Inc., No. 01-CV-499, 2001

WL 1835158 (C.D. Cal. July 23, 2001), in which the court found

an ocean carrier liable under the Carmack Amendment for damage

caused on the domestic inland leg of a shipment by motor

carriage.  However, there are important distinctions in Kyodo that Plaintiffs do not address.

There, the defendant ocean carrier issued the bill of lading that encompassed the motor carriage leg, and plaintiff there thus relied upon § 14706.  Section 14706 permits the imposition of liability upon a "carrier" that issues the bill of lading and provides transportation of the goods under the jurisdiction of the Surface Transportation Board; the defendant there fit squarely within the statutory language of the Carmack Amendment.  Section 11706, which covers rail carriage, is not as broad as § 14706.  Under § 11706, liability extends to the issuer of the bill of lading only if it is a "rail carrier," as opposed to the broader imposition of liability upon a "carrier" in § 14706.  While other carriers who provide transportation under the jurisdiction of the Board can be held liable under § 11706, they must be delivering carriers.

The shipments in question here involved ocean and rail carriage, and no party is a "freight forwarder"; accordingly § 11706 is the governing liability scheme, and that scheme does not encompass the situation here, where the K-Line Defendants and Horizon, though issuers of the bills of lading, are not "rail carriers" as defined by the statutory scheme.

II.  The Forum Selection Clauses

A.   Standards for Assessing the Enforceability of Forum
     Selection Clauses

     "Questions of venue and the enforcement of forum selection
clauses are essentially procedural, rather than substantive, in
nature," Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990);
thus, federal law governs with respect to this determination.

     Forum selection clauses are "prima facie valid and should
be enforced unless enforcement is shown by the resisting party
to be 'unreasonable' under the circumstances." M/S Bremen v.
Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).   "The party
claiming unreasonableness of a forum selection clause bears a
heavy burden; in order to escape the contractual clause, he must
show 'that trial in the contractual forum will be so gravely
difficult and inconvenient that he will for all practical
purposes be deprived of his day in court.'"   New Moon Shipping
Co., Ltd. v. MAN B&W Diesel AG, 121 F.3d 24, 32 (2d Cir. 1997)
(quoting M/S Bremen, 407 U.S. at 18).

     Forum selection clauses are "unreasonable"

          (1) if their incorporation into the agreement was
          the result of fraud or overreaching; (2) if the
          complaining party will for all practical purposes
          be deprived of his day in court, due to the grave
          inconvenience or unfairness of the selected
          forum; (3) if the fundamental unfairness of the
          chosen law may deprive the plaintiff of a remedy;
          or (4) if the clauses contravene a strong public
          policy of the forum state.

                              - 16 -

Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993) (internal quotations and citations omitted).

    However, "[t]he general rule in cases containing forum selection clauses is that [w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive."  John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers, 22 F.3d 51, 52 (2d Cir. 1994) (internal quotations omitted).  Thus, in order to enforce the forum selection clause, "[t]he choice of forum must be mandatory rather than permissive."  Id. at 53.

    "A mandatory forum selection clause grants exclusive jurisdiction to a selected forum.  On the other hand, a permissive forum selection clause only reflects the contracting parties' consent to resolve disputes in a certain forum, but does not require that disputes be resolved in that forum." Baosteel America, Inc. v. M/V "OCEAN LORD", 257 F. Supp. 2d 687, 689 (S.D.N.Y. 2003).  "For a forum selection clause to be deemed mandatory, jurisdiction and venue must be specified with mandatory or exclusive language.  However, in the situation where only jurisdiction is specified, the clause will generally not be enforced without additional language indicating the intent of the parties to make jurisdiction exclusive."  Central National-Gottesman, Inc. v. M.V. "GERTRUDE OLDENDORFF", 204 F.

Supp. 2d 675, 678 (S.D.N.Y. 2002) (internal citation omitted).
"Exclusive jurisdiction can be granted to a forum without the
use of specific language of exclusion (e.g., 'only', 'solely',
or 'exclusively')." Baosteel, 257 F. Supp. 2d at 689.

Accordingly, the Court will first determine whether the
clauses challenged here are mandatory or permissive. If the
clauses are determined to be mandatory, the Court will then
determine whether enforcement of the clauses would be
unreasonable under the circumstances here, or if Defendants
waived application of the clause through their actions in these
proceedings.

B. The Forum Selection Clauses

1. The K-Line Clause

Plaintiffs contend that the clause in K-Line's bills of
lading is permissive because it fails to use mandatory words or
prohibit litigation in other jurisdictions. And despite the use
of the word "shall" in the clause, they argue that the use of
that word alone does not make the clause mandatory if it does
not exclude the possibility of jurisdiction elsewhere. The
Court disagrees and finds that the clause, taken as a whole, is
a mandatory clause, conferring exclusive jurisdiction in the
Tokyo District Court.

Specifically, the clause provides that the "Bill of Lading
shall be governed by Japanese law," and that "any action

- 18 -

thereunder or in connection shall be brought before the Tokyo
District Court in Japan." Read together, these portions of the
K-Line forum clause denote not only the exclusivity of the
governing law, but also require that any action under the bill
be brought before a specific court. That the clause specifying
the venue does not use a word such as "exclusive" does not
prevent this reading. Indeed, other courts in this District
have read substantially identical language in other K-Line bills
of lading to be mandatory. See, e.g., TMC Co., Ltd. v. M/V
MOSEL BRIDGE, No. 01 Civ. 9860 (LAK), 2002 WL 1880722, at *1
(S.D.N.Y. Aug. 15, 2002); Chiyoda Fire & Marine Insurance Co. of
America v. M/V HYUNDAI FREEDOM, No. 97 Civ. 8474 (KMW), 1999 WL
694019, at *1 (S.D.N.Y. Jan. 28, 1999).

Plaintiffs' reliance on Hartford Fire Insurance Co. v.
Novocargo USA Inc., 156 F. Supp. 2d 372, 375 (S.D.N.Y. 2001),
where the court found a German forum selection clause to be
permissive rather than mandatory, is unavailing. In that case,
the court found that a forum selection clause stating that
"[a]ny dispute arising under and in connection with this Bill of
Lading shall be governed by German Law and determined by the
courts of Bremen," id. at 373-74, did not adequately demonstrate
an intent to make the Bremen courts the exclusive venue. Here,
in contrast to the insufficiently exclusive term "determined

by," the clause clearly states that "<u>any action</u> . . . <u>shall be</u>
<u>brought</u>" in the Tokyo District Court.

In addition to challenging the mandatory nature of the K-
Line forum clause, Plaintiffs also present a variety of
arguments as to why the clause should not be enforced; they fall
short of satisfying the "heavy burden" in showing the
unreasonableness of the clause.

Many of the Plaintiffs argue that litigating all of the
cases in a single forum would promote judicial economy and
fairness because the accident occurred within the United States,
and most of the relevant witnesses are located here.  They
contend that having to litigate claims from the same casualty in
two different fora would be unduly burdensome.  However,
efficiency and fairness concerns, without more, cannot generally
justify the nonenforcement of a mandatory forum selection
clause.  <u>See</u>, <u>e.g.</u>, <u>La Fondiaria Assicurazione, S.P.A. v. Ocean</u>
<u>World Lines, Inc.</u>, No. 02 Civ. 40 (JSM), 2002 WL 31812679, at *2
(S.D.N.Y. Dec. 12, 2002) ("[Defendant] argues that [Plaintiff]'s
forum selection clause should not be enforced because it would
violate principles of judicial efficiency and uniformity to have
[Defendant] litigate against Plaintiff in New York and then
travel to France to litigate against [Plaintiff] about the same
transaction.  Admittedly, it might be more efficient to dispose
of the entire case in one court, but that is not the standard

for overcoming a forum selection clause."); Street, Sound Around Electronics, Inc. v. M/V Royal Container, 30 F. Supp. 2d 661, 663 (S.D.N.Y. 1999) ("The possibility of multiple parallel proceedings was a contingency entirely foreseeable to plaintiff when it agreed to the forum selection clause.").

The case cited by Plaintiffs in support of their argument not to enforce the clause based on judicial economy, In re Rationis Enterprises, Inc. of Panama, No. 97 Civ. 9052 (RO), 1999 WL 6364 (S.D.N.Y. Jan. 7, 1999), is distinguishable. In re Rationis involved hundreds of plaintiffs and over $130 million in claims; the court accordingly noted that "[t]he unusual size and complexity of this matter render arguments of judicial economy and equity particularly strong in this case," id., 1999 WL 6364, at *3. The size and scope of this case pale in comparison and do not justify overriding the forum selection clause here.

Various Plaintiffs also argue that the K-Line Defendants waived their right to enforce the forum selection clause by filing third-party claims, engaging in extensive discovery, and otherwise "actively participating" in the litigation. In addition, they contend that Defendants induced them to litigate in this forum, and should accordingly be equitably estopped from enforcing the forum selection clause. The Court disagrees.

With respect to the waiver argument, Defendants note, and the record demonstrates, that every answer, cross-claim, and third-party complaint filed by the K-Line Defendants expressly assert the forum clause, as an affirmative defense, or note that the actions are taken without prejudice to their initial position as to the clause.  Active participation in the litigation does not constitute a waiver in light of these clear assertions from the onset and throughout the litigation.  As another court in this district has noted, "fil[ing] a cross-claim and implead[ing] a third-party defendant in this action, . . . [is] not inconsistent with the assertion of [a defendant's] right to litigate in [another] forum.  Having been sued in this forum, [a defendant has] a right to defend [itself] in the event the forum clause was not upheld without subjecting [itself] to waiver." Jockey International, Inc. v. M/V "LEVERKUSEN EXPRESS", 217 F. Supp. 2d 447, 455 (S.D.N.Y. 2002). See also, e.g., Ferraro Foods, Inc. v. M/V Izzet Incekara, No. 01 Civ. 2682 (RWS), 2001 WL 940562 (S.D.N.Y. Aug. 20, 2001) (enforcing a Turkish forum selection clause against a plaintiff even after defendant transferred the case into the S.D.N.Y., where defendant expressly reserved its right to invoke the forum selection clause).

Finally, some Plaintiffs claim that they were induced to commence proceedings in New York, and that the Court should

therefore equitably estop the enforcement of the forum selection clause.  The Court finds that Plaintiffs have not established facts that justify equitable estoppel here.

"Equitable estoppel is proper where the enforcement rights of one party would create injustice to the other party who has justifiably relied on the words or conduct of the party against whom estoppel is sought."  OSRecovery, Inc. v. One Groupe International, Inc., 462 F.3d 87, 94 n.3 (2d Cir. 2006).  Even taking as true various Plaintiffs assertions that they were "encouraged" to litigate here in the Southern District, the Court finds that Plaintiffs were not justified in assuming that Defendants' encouragement indicated their desire not to rely upon the forum selection clause.  First, Defendants clearly asserted their reliance on this clause in the first action filed against them in the Southern District prior to the commencement of any of the now-consolidated cases; counsel for that client represents many of the other Plaintiffs in this case.  And Defendants have clearly asserted their right to rely upon the clause at all stages of all subsequent proceedings.

Because of the Himalaya clause in the K-Line bill of lading, both K-Line America and Kawasaki Kisen Kaisha, Ltd. benefit from the forum selection clause.

2.   The Horizon Clause

Plaintiffs' challenge to the Horizon clause is substantially similar to the arguments made by the Plaintiffs challenging the K-Line clause.  However, as above, the Court finds that the Horizon clause, which provides that the bill of lading "<u>shall</u> be governed by the law of Hong Kong," <u>and</u> that "<u>any claim or dispute</u> arising hereunder or in connection therewith <u>shall</u> (without prejudice to <u>the Carrier's</u> right to commence proceeding in any other jurisdiction) <u>be subject to</u> the jurisdiction of the Courts of Hong Kong," excludes the possibility of jurisdiction elsewhere for suits brought against Horizon.

Although Plaintiffs contend that the parenthetical clause that would allow Horizon to commence proceeding elsewhere is invalid, <u>see</u> <u>LG Electronics, Inc. v. Fritz Transportation International</u>, No. C 00-4507 SI, 2001 WL 1843715 (N.D. Cal. Oct. 2, 2001) (declining to permit a defendant to exercise a similar option where venue was otherwise proper under the forum selection clause), the validity of that portion is not before this Court—Horizon seeks only the enforcement of the portion of the clause that vests exclusive jurisdiction in the Hong Kong Courts.  Indeed, the parenthetical exception emphasizes the exclusivity of the jurisdiction for cases outside of the exception.  Thus, the Court finds the Horizon forum selection clause to be mandatory, not permissive.

- 24 -

Plaintiffs here offer arguments about judicial economy and waiver that are substantially similar to those offered with respect to the K-Line clause; for the reasons above, those arguments are unavailing.  The Court notes that although Horizon did not reference the forum selection clause with specificity as K-Line did, it did assert in its answer that venue was improper, and such an assertion is sufficient as an affirmative defense. See Rogen v. Memry Corp., 886 F. Supp. 393, 396 (S.D.N.Y. 1995) (finding, despite no specific reference to a forum selection clause, that an assertion in the answer that the Southern District of New York was "not the proper venue for this action" precluded a finding of waiver).

## CONCLUSION

For the reasons above, the Court GRANTS all of Defendants' motions.  Thus, the complaint in No. 06 Civ. 2557 is dismissed as to K-Line America, Inc., Kawasaki Kisen Kaisha, Ltd., and K-Line; the complaint in No. 06 Civ. 2962 is dismissed as to Kawasaki Kisen Kaisha Co., Ltd. d/b/a "K" Line; the complaint in No. 06 Civ. 3038 is dismissed as to "K" Line America, Inc., Kawasaki Kisen Kaisha, Ltd., and "K" Line; the complaint in No. 06 Civ. 3040 is dismissed as to "K" Line America, Inc., Kawasaki Kisen Kaisha, Ltd., and "K" Line; and the complaint in No. 06 Civ. 3042 is dismissed as to "K" Line America, Inc.  The

complaint in 06 Civ. 2956 is dismissed as to Horizon Intermodal Express, Ltd. only.

This Order therefore resolves the following motions: Documents Nos. 92 and 112 in Docket No. 06 Civ. 615; Document 27 in Docket No. 06 Civ. 2557; Document 54 in Docket No. 06 Civ. 2956; Document No. 13 in Docket No. 06 Civ. 2962; Document No. 16 in Docket No. 06 Civ. 3038; Document No. 14 in Docket No. 06 Civ. 3040; and Document No. 18 in Docket No. 06 Civ. 3042.

**SO ORDERED:**


**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:     New York, New York
           February 27, 2008

- 26 -