David L. Mazaroli (DM-3929)
Attorney for Plaintiff
11 Park Place – Suite 1214
New York, NY 10007-2801
Tel. (212)267-8480
Fax. (212)732-7352
*e-mail: dlm@mazarolilaw.com*
-----------------------------------------------------------------x
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MITSUI SUMITOMO INSURANCE CO. LTD.          :

                     Plaintiff,          :          07 Civ. 3874 (CM)

      - against -          :          **JOINT PRETRIAL ORDER**

EVERGREEN MARINE CORPORATION;          :          **(NON-JURY)**
UNION PACIFIC RAILROAD COMPANY;
                                  :
                Defendants.          :
                                  :
-----------------------------------------------------------------x

       The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

     **I.**     **NATURE OF THE CASE**

       This action involves a $378,535.39 claim for damage and loss to a 165 carton shipment  of auto parts ("the Shipment") arising from a train derailment during the domestic land stage of door-to-door multimodal transport from Shimizu, Japan, to Statesville, North Carolina. Defendant Evergreen Marine Corp. ("Evergreen") issued a through sea waybill for the entire transport.  The shipment moved aboard an Evergreen ocean vessel from Shimizu to Los Angeles, California.  Upon arrival in California the Shipment was transferred to  defendant Union Pacific Railroad Company ("UP") for the rail transport to the inland destination. En route to North Carolina the UP train derailed in Arkansas causing damage and loss to the Shipment. UP has assumed the defense of

Evergreen and has admitted liability to plaintiff.     UP concedes that the derailment caused damage to the full 165 packages of cargo specified on the face of the through sea waybill.  UP contests the amount of plaintiff's damages.

The parties' cross-motions  for partial summary judgment on the issue of limitation of liability were fully submitted as of  April 4, 2008. Plaintiff, relying on *Sompo Japan Insurance Co. of North America v. Union Pacific Railroad Co*., 456 F.3d 54 (2d Cir. 2006), [1] and subsequent Southern District of New York decisions applying its rationale, including Judge Chin's decision in  *Sompo Japan Insurance Co. of America v. Norfolk Southern Railway Co.,* 07-2735 (DC), 2008 WL 732011 (S.D.N.Y. March 20, 2008),  contends that defendants' liability is unlimited and that plaintiff is entitled to recover the full amount of its damages plus prejudgment interest at the statutory rate of 9% per annum. In their motion defendants contend that *Sompo I* does not apply because the rail shipment at issue was made pursuant to 49 U.S.C. §10709, and that the Carriage of Goods by Sea Act ("COGSA") and its $500 per package limitation is contractually extended to cover rail transport and that  liability is limited to $82,500. If COGSA does not apply, defendants alternatively contend that their liability is limited to $102,129.27 based on 2 SDRs per kilogram.   The parties agree that plaintiff is entitled to prejudgment interest at the rate of 9% per annum from April 5, 2006.

## II.     NON-JURY TRIAL

UP has admitted liability and has assumed the defense of Evergreen.   The issue of limitation of liability has been submitted to the Court by plaintiff's motion and defendants' cross motion for partial summary judgment.  If the Court grants plaintiff's motion and rules that liability is not limited, a short trial on the issue of damages is estimated to last one   to one-and-a-half days.  If defendants' motion is granted,

---

[1] *Sompo* held that  the domestic rail portion of an international shipment originating in a foreign country and traveling under a through bill of lading is governed by the Carmack Amendment to the Interstate Commerce Act of 1887 ("Carmack"), Act of June 29, 1906, ch. 3591, 34 Stat. 584 (1906) (current version at <u>49 U.S.C. §  11706</u>)

defendants request that judgment be entered in favor of plaintiff for $82,500.00 if the $500 per package limitation  is deemed applicable, or $102,129.27 if the 2 SDR per kilogram limitation is deemed applicable,  plus prejudgment interest of 9% from  April 5, 2006.

### III.    STIPULATED FACTS

The parties stipulate that  following facts are undisputed and require no proof for purposes of the trial of this action, reserving the right to challenge the relevancy of such stipulated facts:

1.      This action includes a maritime claim within the meaning of Rule 9(h). This  Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1333 and 1337.

2.       Plaintiff Mitsui Sumitomo Insurance Co. Ltd. ("Mitsui") is a corporation organized under the laws of Japan with its principal place of business in Tokyo.

3.      Defendant Union Pacific Railroad Co. ("UP")  is a corporation organized under the laws of Delaware  with its principal place of business in Omaha, Nebraska.

4.      Defendant Evergreen Marine Corporation  ("Evergreen") is a corporation organized under the laws of, and with its principal place of business in, Taiwan.

5.      Plaintiff is the real party in interest with title and standing to bring this action.

6.      This action involves derailment damage and los**s** to a shipment of motors and motor parts for automobiles ("the Shipment") which moved in international intermodal transportation  from Shimizu, Japan, to Statesville, North Carolina.

7.      The transportation was considered intermodal (also referred to as "multimodal") because it included  ocean carriage from Shimizu to the port of Los Angeles and rail carriage from the discharge port  to the North Carolina destination.

8.    Asmo North Carolina, Inc. ("Asmo-NC"), plaintiff's subrogor,  was the owner of the shipment,  having purchased it from Asmo Co. Ltd. ("Asmo Japan")  on FOB terms.

9.    On or about March 14, 2006 defendant Evergreen contracted to provide the subject intermodal transportation.

10.    Although the booking with Evergreen was made by or on behalf of Asmo Japan, the freight charges for the transport were paid by Asmo-NC who as FOB purchaser had risk of loss and title to the shipment during the international transport.

11.    Evergreen was at all material times engaged in the business of providing, for compensation,  intermodal (also referred to as multimodal) transportation services for international cargo shipments.

12.    The intermodal transportation services provided by Evergreen for such international shipments  include ocean transportation from foreign ports to ports in the United States.

13.    At all material times defendant UP was engaged in the business of providing rail transportation services for compensation, including interstate rail carriage for international intermodal cargo shipments.

14.     Evergreen issued Sea Waybill EISU025643005523 dated on or about March 14, 2006.  The terms of the Evergreen sea waybill are set forth in Joint Exhibits AA and BB.

15.    The Evergreen Sea Waybill describes the shipment as "165 Cartons, Motor  & Motor parts for Automobile (sic)." It lists the place of receipt as Shimizu, CY,

the port of lading as Shimizu, Japan, the port of discharge as Los Angeles, CA, and the place of delivery as Statesville, N.C., Door.

16.     The Evergreen Sea Waybill was an intermodal through bill, meaning that it contemplated multiple modes of transportation, including the ocean carriage from Japan to the United States and the interstate rail carriage from the port of discharge to final destination.

17.     The shipment in question was an international shipment, i.e. it originated outside the borders of the United States.

18.     Evergreen carried the shipment by ocean vessel, i.e. the M/V EVER UNION, from Shimzu, Japan, to Los Angeles, California.

19.     At the port of Los Angeles the shipment was transferred from Evergreen's ship to Evergreen's designated rail carrier, UP, for the railroad transportation to North Carolina.

20.     The train assembled for the domestic land stage of the intermodal transport was a "dedicated" Evergreen train, i.e. although the locomotive units and rail cars were provided and/or operated by UP, the train was loaded by Evergreen and carried containerized shipments for Evergreen's customers.

21.     UP formulated electronic waybills covering the interstate rail carriage of each container in the shipment to final destination.

22.     Copies of the waybills were stored in electronic form in UP's EDI system. However, the electronic waybills were internal UP documents and were not issued or otherwise transmitted to the actual shipper, consignee, or owner of the shipment.

23.    The terms of the Exempt Rail Transportation Agreement ("ERTA") were not disclosed to the actual shipper, consignee or owner the shipment.

24.    The terms of a Master Intermodal Transportation Agreement ("MITA 2-A") were not disclosed to the actual shipper, consignee or owner of the shipment.

25.    Neither ERTA nor MITA 2-A state that the shipper has the option of full Carmack Amendment liability for international intermodal shipments such as the subject shipment, i.e. shipments which originate outside the borders of the United States.

26.    UP MITA 2-A provides that "Carmack liability coverage is not available for shipments that originate outside the borders of the United States of America."

27.    The signatories to ERTA were UP, on the one hand, and Evergreen America Corporation, as agent for Evergreen Marine Corp. (Taiwan) Ltd., Lloyd Triestino di Navigazione SpA and Hatsu Marine, on the other.

28.    The MITA 2-A was at the time of the shipment and prior to this shipment, readily available for public viewing on UP's website at www.up.com.

29.    Both the ERTA and the MITA 2-A were in Evergreen's possession prior to and at all times during the shipment.

30.    Asmo Co. Ltd., Evergreen's shipper, never requested a copy of ERTA or MITA 2-A from Evergreen.

31.    Evergreen subcontracted the rail movement from Los Angeles to Statesville to UP. UP and Evergreen contend that, as between the defendants, the booking was made under ERTA.

32.    The ERTA document refers in relevant part to:

…the rates, rules and regulations established by Railroad for such Container Double Stack Car or, if applicable, Container Conventional Flatcar and related services to the general shipping public and in effect on the date of the applicable shipment including, but not limited to, Union Pacific Railroad Company Exempt Circular 20 series and successor issues thereto.

33.    Paragraph D of Item 110 of UP'S MITA 2-A provides:

This MITA and any agreements, price documents or contracts that reference this MITA have been made under 49 USC section 10709.

34.    Paragraph C-10 of Item 310(C) of  UP's MITA 2-A provides:

UPRR's maximum liability for US inland loss or damage shall be limited to $500.00 per package as described in the Ocean Bill of Lading on International Shipments where the Shipper has released the Shipment under an Intermodal or Ocean Bill of Lading to the ocean carrier with a per package or customary freight unit limitation of liability applicable by agreement and/or pursuant to 46 U.S.C. Section 1304(5)

35.    On or about April 5, 2006, while UP was transporting the shipment by rail the subject motors and motor parts sustained damage as the result of a derailment which occurred at or near Higginson, Arkansas.

36.    As a  result of the derailment the rail cars carrying containers TRIU5559381 and UGMU8062288 left the tracks and the containers came to rest on their sides.

37.    As a result of the derailment containers TRIU5559381 and UGMU8062288 sustained damage.

38.    The  motors and motor parts carried in container TRIU5559381 sustained damage and loss as a result of the aforementioned derailment.

39.    The motor and motor parts carried in container UGMU8062288 sustained damage and loss as a result of the aforementioned derailment of the UP train.

40.    The derailment of the train was not caused by events which would give rise to a defense or exception to liability under the Carmack Amendment.

41.    The derailment was not caused by events which would constitute an "Act of God" defense or exception to liability.

42.    The derailment was not caused by events which would constitute an "Act of Public Enemy" defense or exception to liability.

43.    The derailment was not caused by events which would constitute an "Act of Public Authority" defense or exception to liability.

44.    The derailment was not caused by the fault of the shipper or owner of the shipment.

45.    As a result of the damage and loss caused by the derailment, part of the shipment in both containers was rendered unfit for intended usage.

46.    Plaintiff Mitsui was the insurer of the shipment pursuant to an open cargo policy which was in effect in 2006. At the time of the subject Shimuzu, Japan, to Statesville, North Carolina, intermodal transportation, Mitsui insured the Shipment against risk of loss and damage during transportation, including the type of damage and loss caused by the subject derailment.

47.    In or about April of 2006 Asmo-NC presented an insurance claim to Mitsui for damage and loss to part of the shipment caused by the derailment.

48.    The insurance claim of Asmo-NC was paid by Mitsui in the amount of $422,129.33.

49.    Mitsui, as subrogated cargo insurer, commenced this action against Evergreen and UP.

50.    Evergreen's defense was assumed by UP.

51.    UP has admitted liability to plaintiff.

52.    UP stated in its revised response to plaintiff's second request for admissions that it "denies that damages are $385,105.70."

53.    165 packages of cargo specified on the face of the through bill for the subject shipment sustained damage as a result of the derailment.

54.    The total weight of the cargo at  issue according to the face of the through bill was 35,234 kilograms.

55.    As of 4/05/2006, 2 SDRs per kilograms for 35,234 kilograms calculated to $102,129.27

56.    The Evergreen Sea Waybill does not expressly refer to the Carmack Amendment.

## IV.    PARTIES' CONTENTIONS (Non-Jury)

**Liability/Limitation of Liability :**    As outlined in the parties partial summary judgment submissions, UP has assumed the defense of Evergreen and has admitted liability to plaintiff.  The parties' factual and legal contentions with respect to the liability and limitation of liability issues have been set forth in detail in  the memoranda of law filed with regard to the motion and cross motion for partial summary judgment.

A.    Plaintiff's Proposed Findings of Fact and Conclusions of Law

Plaintiff's Proposed Findings of  Fact:

1.    Plaintiff proposes that the Court adopt Stipulated Facts ("SF") No. 1 thru 26, 35 thru 51, 53, 54 and 56 as findings of fact.  In addition plaintiff proposes the following findings of fact:

2.      The FOB invoice value of the Shipment was $455,464.55, which amount was paid by Asmo NC to the seller Asmo Co. Ltd. (Testimony of David Clifton ("Clifton"), Jeff Smith ("Smith"),  Bennie Ann Greiner ("Greiner"), PX-1, 2 and 3).

3.      The $455,464.55 invoice amount represents the fair market value of the entire Shipment. (*Id.* and PX-6, 7, 8,)

4.      The invoice value of the items in the Shipment which sustained damage or loss as a result of the derailment is  $382,415.06. This represents the principal amount of the loss suffered by Asmo-NC as a result of the derailment. (Clifton, Smith,  Greiner, PX-1, 2, 3, 6, 7, 8, 12, 14, 15).

5.      Of this amount $324,725.09 is the value of the items which were rejected as unfit for intended usage as a result of the derailment damage and $56,689.97 is the value of missing items as a result of the derailment.  The balance of the other items in the Shipment which were received by Asmo-NC did not sustain damage as a result of the derailment and were not rejected. (*Id.*)

6.      Plaintiff's damages also include the following incidental expenses reasonably incurred to mitigate the loss:

| | |
|---|---|
| Segregation costs: | $1,191.36 |
| Storage Charges: | $1,250.00 |
| X-ray fees: | $115.28 |
| Segregation for scrap sale: | $1,094.00 |
| Survey fees: | $3,246.89 |

(PX-5-9, 14, 15-21; Smith, Greiner, Clifton)

7.      The auto parts with an invoice value of $324,725.09  were intended for sale and/or distribution for installation in new automobiles. As a result of the derailment the auto parts could not be used for intended purposes due to reasonable concerns of Asmo-NC and its customers relating to safety, quality control, warranty, performance and

10

loss of reputation issues.  (PX-6-8, 12, 13, 18, 21, 22; SF36-39,45,53; Smith, Clifton, Greiner, Cox, Hartmann)

8.    As a result of the derailment the Asmo NC could not guarantee the integrity of the subject auto parts to its customers. (*Id.*)

9.    As a result of the derailment the subject auto parts retained no market value because they  could not, as a practical matter, be sold other than for scrap value. (*Id.*)

10.    These items were disposed of as scrap,  resulting in scrap proceeds  in the amount of  $10,777.20, which amount has  been deducted from plaintiff's claim. (PX-6-9, 16-19; Smith, Clifton, Greiner)

11.    Plaintiff and its subrogor acted reasonably in the inspection, segregation representative x-raying, and disposal of the damaged items and took reasonable steps to mitigate the loss resulting from the derailment. (PX-6-9, 12-22; Smith, Greiner, Cox, Clifton)

12.    After the derailment defendants were afforded the opportunity to inspect the damaged cargo during the operations conducted by UP to transload items from containers TRIU5559381 and UGMU8062288 to trailers and eventually to substitute containers.  In addition surveyors acting for defendants were given the opportunity to inspect the cargo. (PX-6-8, 33;  Hartmann)

13.    Plaintiff's damages as a result of the derailment total $378,535.39. (Clifton, Smith,  Greiner, PX-1, 2, 3, 5-9, 12, 14-21).

14.    As set forth in the submissions in support of plaintiff's motion for partial summary judgment, defendants did not offer, through the sea waybill, MITA 2-A, ERTA,

the electronic waybills, or otherwise, an opportunity for the cargo interests to receive full Carmack Amendment liability and full coverage for loss. (JX-AA, BB, SF 22-26)

15.    The sea waybill did not comply with conditions precedent for limitation of liability under either the Carmack Amendment or the Staggers Act. (JX-AA, BB)

16.    There was no valid incorporation by reference sufficient to comply with the conditions precedent for limitation of liability under Carmack or Staggers. (JX-AA, BB; SF 22-26)

17.    For the Shipment Evergreen provided rail transportation services for compensation. (SF-10, 11, 12, 16, 20; PX-30, 31; Hartmann)

Plaintiff's Proposed Conclusions of Law

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1333 and 1337. (SF-1)

2.    The Carmack Amendment applies to the domestic rail portion of an international shipment originating in a foreign country and traveling under a through bill of lading. *See Sompo Japan Insurance Co. of North America v. Union Pacific Railroad Co*., 456 F.3d 54, 75 (2d Cir. 2006). Any contractual provision purporting to extend COGSA's terms to said period is subordinate to, and is superceded by, Carmack. *Id.* at 73.

3.    In *Sompo* the Second Circuit made clear that Carmack applies in such circumstances even if there is no separate bill of lading or waybill for the land transport. *See Sompo*, 456 F. 3d at 62-63.

4.    As it did in *Sompo*, herein UP generated separate electronic waybills for the Shipment and this fact reinforces the position that the rail transportation is governed by Carmack. *Id.* at 56 & n. 4, 69 n. 14. (S.F. 21)

5.     Rail carriers who wish to limit their liability must offer the shipper the option of full Carmack coverage, which includes both the Carmack version of strict liability and full coverage for loss. *See Sompo,* 456 F.3d at 60.

6.     This condition precedent for limitation applies even to so-called exempt transportation subject to 49 U.S.C.§ 10502 or 49 U.S.C. § 10709. *See Sompo Japan Insurance Co. of America v. Norfolk Southern Railway Co.,* 07-2735 (DC), 2008 WL 732011 at *10-12 (S.D.N.Y. March 20, 2008).

7.     Having admitted and stipulated to liability, UP is liable to plaintiff for the claimed damage and loss to the Shipment.

8.     Evergreen fits within the statutory definition of a rail carrier and is also liable to plaintiff for the claimed damage and loss to the Shipment. (See Point II of Plaintiff's Reply Memorandum of Law)

9.     Defendants having admitted that the derailment did not arise due to circumstances which would give rise to a defense or exception to liability, the Court concludes that defendants are jointly and severally liable to plaintiff. *See Project Hope v. M/V IBN SINA*, 250 F.3d 67, 74-75 (2d Cir. 2001) (holding NVOCC and trucker jointly and severally liable under Carmack).

10.     The Carmack Amendment governs defendants' liability.

11.     The evidentiary record, including the stipulated facts, establishes that the damage and loss to the claimed items in the Shipment was proximately caused by  the derailment.  Accordingly, plaintiff has sustained the requisite burden of proof   to establish defendants' liability for the claimed damage and loss. *See Transatlantic Marine Claims Agency, Inc. v. M/V OOCL Inspiration*, 137 F.3d 94, 101 (2 Cir. 1998)(*prima facie* case can be proven by circumstantial evidence that damage arose in carrier's

custody); *Beta Spawn,* 250 F.3d 218, 224-25 (3rd Cir. 2001); *Arkwright Mutual Ins. Co. v. M/V Oriental Knight*, 745 F. Supp. 920, 924 (S.D.N.Y. 1990), *aff'd mem. op.*, 930 F. 2d 910 (2d Cir. 1991); *Logistics Insight Corp. v. JDL Trucking,* No. 04-40162, 2006 WL 374752 (E.D. Mich. Feb. 16, 2006).

11.    Plaintiff has proven its damages as a result of the derailment and is entitled to recover damages based on the invoice value of the claimed cargo plus incidental expenses. *See Jessica Howard Ltd. v. Norfolk S. Ry. Co.,* 316 F .3d 165, 169 (2d Cir.2003); *Atlantic Mut. Ins. Co. v. CSX Lines, L.L.C.,* 432 F.3d 428, 435 (2d Cir.2005); *Project Hope v. M/V Ibn Sina*, 250 F.3d 67, 76 (2 Cir. 2001). *Houmani v. Roadway Express*, No. 3:07CV 1552, 2008 WL 731497 2 (N.D. Ohio March 17, 2008)(purchase price represents fair market value).

12.    Failure to mitigate is an affirmative defense which must be pleaded and proven by the carrier defendants. *See, e.g., Sogem-Affirmet, Inc. v. M/V Ikan Selayang,* 1998 AMC 1366, 1388, 951 F.Supp. 429, 444 (S.D.N.Y. 1996); *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1291 (11 Cir. 2000).

13.    As defendants did not  plead the affirmative defense of failure to mitigate, the defense has been waived.  *See Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1291 (11 Cir. 2000).

14.    In any event defendants did not sustain the burden of proving that plaintiff failed to mitigate its damage. *See e.g. Sony Magnetic Products, Inc. v Meriventi O/Y*, 688 F. Supp. 1505 (S.D. Al. 1987)(discussing market reputation concerns in assessing carrier liability for cargo damage).

15.     Defendants did not comply with the conditions precedent for limitation of liability as outlined in the *Sompo* line of cases (and as set forth in detail in plaintiff's memoranda of law in support of its motion for partial summary judgment). Specifically they failed to offer the shipper the option of full Carmack coverage including both the Carmack version of strict liability and full coverage for loss or damage. Accordingly, UP and Evergreen are liable for the full amount of plaintiff's damages, without limitation of any kind. *See Sompo Japan Insurance Co. of America v. Union Pacific Railroad Co.*, 456 F.3d 54 (2d Cir. 2006); *Sompo,* 2007 WL 2230091 (S.D.N.Y. August 2, 2007)(appeal filed); *Sompo Japan Insurance Co. of America v. Union Pacific Railroad Co.,* 02-9523(DAB), 2007 WL 4859462 (SDNY Sept. 26, 2007) (appeal filed); *Sompo Japan Insurance Co. of America v Norfolk Southern Railway* Co., 07-2735(DC), 2008 WL 732011 (S.D.N.Y.  March 20, 2008).

16.     Plaintiff's claim is not governed by 49 U.S.C. § 10709. *See Sompo Japan Insurance Co. of America v Norfolk Southern Railway* Co., 2008 WL 732011. (See Point I (A) of Plaintiff's Reply Memorandum of Law)

17.      Even assuming *arguendo* that 49 U.S.C. § 10709 is relevant to plaintiff's claim, defendants are still liable for the full amount of plaintiff's damages, without limitation of any kind, because defendants did not offer full Carmack liability and alternative terms. *See Sompo Japan Insurance Co. of America v Norfolk Southern Railway* Co., 2008 WL 732011 at *10-12; *Tamini Trasformatori S.R.L. v. Union Pacifc R.R*., No. 02 Civ. 129(AGS), 2003 WL 135722 (S.D.N.Y. Jan. 17, 2003) (See Point I (B) of Plaintiff's Reply Memorandum of Law)

18.    Neither the UP/Evergreen confidential ERTA nor MITA 2-A are binding on plaintiff and there was no legally valid incorporation by reference or reasonable communication to the shipper sufficient to sustain defendants' limitation argument based on these documents. *See Sompo* (CM), 2007 WL 2230091 at *5; *Sompo* (DAB), 2007 WL 4859462 at *5; *Sompo v NSR*, 2008 WL 732011 at *12.

19.    Alternatively, based on the rule of *contra proferentum*, plaintiff is entitled to full recovery based on the $250,000 per container limitation. (See Point VI of plaintiff's memorandum of law in support of its motion for partial summary judgment)

20.    Plaintiff is entitled to judgment against UP for damages in the amount of $378,535.39.

21.    Plaintiff is entitled to judgment against UP and Evergreen, jointly and severally, for damages in the amount of $378,535.39.

22.    Plaintiff is entitled to prejudgment interest at the stipulated rate of 9% *per annum* from April 5, 2006. (See ¶¶ I and II, *supra*)

23.    Plaintiff is also entitled to recover its costs.

B.    Defendants' Proposed Findings of Fact and Conclusions of Law
Defendants' Proposed Findings of Fact:

1.    Defendants' propose that the Court adopt Stipulated Facts Nos. 1-11, 13-21, 25-39, 46-55 as Findings of Fact. In addition defendants propose the following findings of fact:

2.    Evergreen arranged for the subcontracted rail carriage of the shipment by UP but Evergreen did not itself provide the actual rail carriage of the shipment, is not

itself a rail carrier, owns no railroad tracks, owns no locomotives, operates no trains and is not licensed to operated a railroad. (EV-C ¶7).

3.      Evergreen is an ocean carrier, owning and operating seagoing vessels. (EV-C ¶7).

4.      The containers were received sealed by Evergreen. Plaintiff's evidence submitted did not sufficiently prove delivery to Evergreen of the contents of the containers in good condition.

5.      The Evergreen Waybill offered its shipper (plaintiff) the option of shipping under full value rates consistent with the Carmack Amendment. (EV-C ¶8, Ex. B, ¶7 (2)).

6.      Asmo declined the opportunity to ship under a full value liability rate (EV-C ¶8).

7.      Asmo shipped its cargo with Evergreen under the cheaper freight rate that did not provide full value liability terms (EV-C ¶8).

8.      UP did not issue a separate domestic bill of lading for the rail carriage. (TDS ¶9, EV-C, ¶9).

9.      The reference to contract DER 000913 refers to UP's Exempt Rail Transportation Agreement DER-UP-C-913A. (TDS, ¶4, Ed. B., EV-M. ¶3).

10.     The ERTA specified that UP's then applicable Exempt Circular 20 series would apply to the shipment (TDS, ¶6, Ex. A. ¶3. EV-M ¶3).

11.     At the time of the shipment the applicable Exempt Circular 20 series was Master Intermodal Transportation Agreement 2-A ("MITA 2-A"). (EV-M ¶3; TDS ¶6, Ex. C.)

12.     UP's EDI Waybills were transmitted to Evergreen (EV-M ¶3, TDS ¶5.)

13.     The movement at issue was under a contract entered into pursuant to 49 U.S.C. §10709. (TDS ¶7, Ex. C, Item 110(D), EV-M, ¶3, Ex. 3, Item 110).

14.     Plaintiff has failed to prove that it sustained damages of $385,105.70 (PX-27, DX-2)

Defendants' Proposed Conclusions of Law

1.     49 U.S.C. §10709 governs UP's carriage of the goods and the Carmack Amendment does not apply.  See Point II (B) of Defendants' Initial Memorandum Of Law and Point II of Defendant's Reply Memorandum.

2.     The through ocean bill of lading granted to Evergreen and to UP all of the benefits of UP's contract with Evergreen.

3.     Through bills of lading governing international shipments with substantial overseas carriage are maritime contracts governed by maritime law, even when losses occur during rail carriage. *Norfolk Southern Ry. Co. v. James Kirby Pty. Ltd., et. al.*, 543 U.S. 14, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004).  As such, Maritime Law mandates enforcement of the package limitation for UP and Evergreen.

4.     The Carmack Amendment is inapplicable because the shipment was made pursuant to an ocean through bill of lading with no separate domestic bill of lading issued by UP.  *See Altadis USA Inc., v. Sea Star Line, LLC and American Trans-Freight (ATF), Inc.,* 458 F.3d 1288 (11th Cir. 2006) and Point II(e) of Defendants' Initial Memorandum of Law

5.     Evergreen is not governed by the Carmack Amendment as its contract with UP is a §10709 contract, is a maritime contract, and no separate domestic bill of

lading was issued by UP.  See *King Ocean Cent. America v. Precision Cutting Services*, 717 So. 2d 507, 513 (Fla. 1988).

6.       The decision by the Second Circuit in *Sompo Japan Insurance Company of American v. Union Pacific Railroad Co.*, 456 F 3d 54 (2006) does not apply as it did not consider the effect of a §10709 contract.  Likewise, two decisions in *Sompo* did not consider the effect of a §10709 contract i.e. *Sompo Japan Insurance Company v. Union Pacific Railroad Company*, 2007 WL 2230091 (S.D.N.Y. 2007); *Sompo Japan Insurance Company v UPRR. Co.*, 2007 WL 4859462 (S.D.N.Y. 2007).

7.       Even if the Carmack Amendment is held to apply, the through ocean bill of lading's offer of full liability rates satisfied any alternative offer requirement. *See Nippon Fire & Marine Ins. Co. v. M.S. Tourcoing*, 167 F. 3d 99, 101 (2d. Cir. 1999)

8.       Plaintiff cargo interests are bound by the terms and conditions of the MTA 2-A which exactly mirrored the Evergreen package limitation, entitling UP and Evergreen to enforce the package limitation.  *See American Home Assurance Co. v. Hapag Lloyd Container Line, Gmbh*, 2004 U.S. Dist. Lexis 13500 (S.D.N.Y. 2004); *Nippon Fire & Marine v. Skyway Freight Systems*, 235 F. 3d 53 at 62 (2d Cir. 2000).

9.       Evergreen is not a rail carrier for the instant shipment.  See Point V of Defendants' Reply Memorandum and the decisions supporting said position at footnote 15, page 9.

10.       UP and Evergreen's liability is limited to $82,500 based on the $500 per package limitation.  If COGSA does not apply, the through ocean bill of lading provides that liability is capped at 2 SDRs per kilo of cargo and with the total weight of the cargo at 35,234 kilograms, this calculates to $102,129.27.

11.     Plaintiff is not entitled to full recovery based on the $250,000 per container limitation (See Point II (J) of Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment in Support of their Cross-Motion.)

### V.     ISSUES TO BE TRIED

1.     Liability/Limitation of Liability – UP has assumed the defense of Evergreen and has admitted liability.  The issues concerning limitation of liability and Carmack Amendment application are set forth in detail in the parties' summary judgment submissions.  Pending the Court's adjudication of the pending motion and cross motion, the parties respectfully submit that the following are the issues to be tried:

A.     Is the liability of UP and/or Evergreen  governed by the Carmack Amendment as set forth in the *Sompo* line of cases?

B.     Did defendants comply with the conditions precedent for limitation of liability?

C.     Does the MITA 2-A apply to the plaintiff?  If so, is the MITA 2-A a §10709 contract which is not subject to the Carmack Amendment?

D.     Were UP and/or Evergreen required to offer the shipper the option of full Carmack coverage, which includes both the Carmack version of strict liability and full coverage for loss, even if the rail transportation is deemed subject to  §10709?

E.     If the Carmack Amendment is held to apply, did Evergreen's Sea Waybill comply with any alternative offer requirement under the statute?

F.     Are UP and Evergreen entitled to the $500 per package limitation pursuant to maritime law?

G.     Is Evergreen a rail carrier for the subject shipment?

H.    Did UP issue a separate domestic bill of lading?

I.    What is the amount of plaintiff's damages?

## VI.    JOINT EXHIBITS

JX-AA          Evergreen Sea Waybill (front)

JX-BB          Evergreen Sea Waybill  terms and conditions

JX-CC          Transcript of Deposition of Daniel Hartmann

JX-DD-1 thru 11 Hartmann Deposition Exhibits

     JX-DD.1          Evergreen Sea Waybill

     JX-DD.2          Evergreen Sea Waybill (w freight rate)

     JX-DD.2B        Reverse of Sea Waybill

     JX-DD.3          Exempt Rail Transportation Agreement ("ERTA"

     JX-DD.3A        COFC Rates for ERTA

     JX-DD.4          First Addendum to ERTA

     JX-DD.4A        COFC Rates for ERTA Addendum

     JX-DD.5          MITA-2A

     JX-DD.6          EDI Waybill Cont. TRIU555938

     JX-DD.7          EDI Waybill Cont.  UGMU806228

     JX-DD.8          On-Line Cycle Inquiry Cont. TRIU555938

     JX-DD.9          On-Line Cycle Inquiry Cont.  UGMU806228

     JX-DD.10        Train Consist

     JX-DD.11        Derailment Master Spreadsheet

## VII.    PLAINTIFF'S EXHIBITS

PX-1.          ASMO Co. Ltd. Invoice w Attachment

PX-2.          ASMO Co. Ltd. Packing List

PX-3.          ASMO NC Payment Reference 9-25-06

PX-4.          Subrogation Receipt

PX-5.          MSI Statement of Adjustment

PX-6.        T.M. Cargo Survey Report

PX-7.        T.M Cargo Interim Report 10-4-2006 (0082-83)

PX-8.        T.M. Cargo Interim Report 12-18-2006 (0102-0107)

PX-9.        T.M. Cargo  Invoice $3,246.89

PX-10.       Evans Delivery Proof of Delivery Cont. EMCU9435249

PX-11.       Evans Delivery  Proof of Delivery Cont. EMCU1002854

PX-12.       Greiner e-mail Dec. 19, 2006 (0045)

PX-13.       ASMO NC letter Cox/Greiner 9-28-06 w attach (0073-74)

PX-14.       List of damage/loss to cargo items  (0075-0077)

PX-15.       ASMO NC Claim Cost Summary Report (0114)

PX-16.       Gordon Recyclers, Inc. letter Dec. 15, 2006 re scrap (0115)

PX-17.       Gordon Weightmaster Certificates (0116-0117)

PX-18.       E-mail Jeff Smith to Bennie  (Doc. 0182)

PX-19.       NDT Specialist, Inc. Invoice 609009 (0118)

PX-20.       American Storage Trailers Invoices

PX-21.       Denso statement (0121)


PX-22.       Photos of damaged cargo and containers
             (produced by UP's with Initial Disclosures)

PX-23.       E-mail Dee Hatch/M Pyron 5/25/06  (A00092)

PX-24.       UP's Response to Plaintiff's Request for Admissions (dated
             August 23, 2007).

PX-25.       Evergreen Response to Plaintiff's Requests for Admissions
             (dated August 1, 2007).

PX-26.       Evergreen and UP's Response to Plaintiff's Second
             Request for Admissions (dated October 12, 2007).

22

PX-27.        Evergreen and UP's Revised Responses to Plaintiff's Second Request for Admissions (dated October 26, 2007).

PX-28.        Evergreen's Supplemental Response to Plaintiff's Request for Production of Documents (dated November 9, 2007)

PX-29.        UP Response to Plaintiff's Request for Documents (dated August 23, 2007)

PX-30.        Excerpt from Port of Los Angeles internet website which discusses the on-dock railyard operated by Evergreen.

PX-31.        Excerpt from Evergreen's internet website discussing its intermodal rail interchange terminal at the Port of Tacoma.

PX-32.        CargoSurvey e-mail dated May 8, 2006 (0092)

PX-33.        Asmo-NC Preliminary Claim Submittal May 2, 2006

PX-34.        Amended Complaint

PX-35.        UP Answer to Amended Complaint

PX-36.        Evergreen Answer to Amended Complaint

PX-37         H.P. Global Transportation Freight Inspection Reports w photos produced by UP  (A00120-0127)

Plaintiff reserves the right to offer any exhibit listed by defendants and  other and further exhibits  for purposes of cross-examination and impeachment.


## VIII.  DEFENDANTS' EXHIBITS

DX-1   Service contract between Evergreen and Denso Corporation.

DX-2   Report of Gary Bellone.


Defendants reserve the right to offer any exhibit listed by plaintiff and  other and further exhibits  for purposes of cross-examination and impeachment.

IX.    **STIPULATIONS AND OBJECTIONS AS TO  EXHIBITS**

- Plaintiff objects to the admissibility of any affidavit on the grounds of hearsay.

- Except for said objection, the parties stipulate to the admissibility and authenticity of each of the exhibits listed in this pretrial order, reserving the right to object to the relevancy of any exhibit.

IX.    **PLAINTIFF'S WITNESS LIST**

Plaintiff expects to present testimony from the following witnesses:

David Clifton, President ASMO NC

Jeff Smith        Logistics Manager ASMO NC

Greg Cox        Quality Manager ASMO NC

Guy Godwin, Denso Engineering

Bennie Ann Greiner, surveyor TM Cargo, Inc.

Chikara Yokoi, Richard Salz, MSI Claims (USA) Inc.

Daniel Hartmann, UP,

Deposition transcript  (**page**:lines)  **7**:2-15;  **9**:8-13;  **10**:8-21;  **12**:10-13;  **15**:20-25;  **16**:1-11;  **29**:1-25;  **30**:1-25;  **31**:1-25;  **32**:1-25;  **33**:1-17;  **34**:15-21;  **35**:12-13;  **47**:15-25;  **48**:1-25;  **49**:1-19;  **50**:1-25;  **51**:1-25;  **52**:1-6;  **60**:9-25;  **61**:10-19;  **64**:10-25;  **65**:1-7;  **66**:1-25;  **67**:1-25;  **70**:4-25;  **71**:1-25;  **72**:8-25;  **74**:1-8;  **83**:11-17;  **85**:14-25;  **86**:15-18;  **87**:22-25;  **90**:7-21;  **96**:1-25;  **100**:12-18;  **101**:3-25

Expert Testimony:

Ms. Greiner is expected to present opinion testimony as a retained expert in addition to fact testimony.

Mr. Clifton and Mr. Cox are expected to present opinion testimony as non-retained experts in addition to fact testimony.

Plaintiff reserves the right to offer testimony from these witnesses by *de bene esse* deposition transcript and to call any witness listed by defendants and to offer other witnesses in rebuttal or for purposes of impeachment.

## X.    DEFENDANTS' WITNESS LIST

Defendants' expect to present testimony from the following witnesses:

Terry Sheldon, Manager, Damage Prevention for UP.

Patrick Chen, Supervisor in the Intermodal Department for Evergreen.

Livia Kuo, Claims Handler for Evergreen, regarding statements in her affidavit, to be submitted at trial in opposition to plaintiff's motion for partial summary judgment and in support of UP and Evergreen's cross-motion for partial summary judgment.   (Plaintiff objects to the admissibility of any affidavits on the grounds of hearsay)

Daniel Hartmann, Business Director International Intermodal for UP.

Mr. Bellone, surveyor Bell One Control Services, Inc.

Mr. Merhar,  surveyor J.C. Green Co.

## XI.    RELIEF SOUGHT

Plaintiff seeks to recover damages in the amount of   $378,535.39, plus prejudgment interest at the statutory rate of 9% per annum from the date of the derailment, and taxable costs.   The elements of plaintiff's damages are as follows:

| | |
|---|---|
| Invoice value of cargo loss/damage: | $382,415.06 |
| Segregation costs: | $1,191.36 |
| Storage Charges: | $1,250.00 |
| X-ray fees: | $115.28 |
| Segregation for scrap sale: | $1,094.00 |
| Less scrap proceeds: | ($10,777.20) |
| Survey fees: | $3,246.89 |
| Total: | $378,535.39 |

## XII.   OTHER MATTERS

Due to scheduled overseas travel plaintiff's counsel will be absent from the jurisdiction between September 5 and 22, 2008 and requests that trial not be scheduled during this period.

Dated:  New York, New York
       April 24, 2008

So Ordered:

_____
Honorable Colleen McMahon
United States District Judge

Barry N. Gutterman & Associates, P.C.

Law Offices,
David L. Mazaroli

*/s/David L. Mazaroli*
_____
David L. Mazaroli (DM-3929)
Attorney for Plaintiff
11 Park Place-Suite 1214
 New York, New York  10007
Tel: (212)267-8480
Fax: (212)732-7352
E-mail: dlm@mazarolilaw.com
File No.: 7MSI-1491

*/s/Barry N. Gutterman*
_____
Barry N. Gutterman (BG6410)
Attorneys for Defendants
Union Pacific Railroad Company,
Evergreen Marine Corp.
60 East 42nd Street, 46th Floor
New York, NY 10165
Tel. 212-983-1466
Fax: 212-983-1229